UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. _3:04cv 338-H_

FILED US
US DISTRICT COURT
WESTERN DISTRICT OF KY

04 JUN -4 AM 10: 22



JAMES H. O'BRYAN, Individually                                    PLAINTIFFS
and on Behalf of All Similarly Situated
Victims of Childhood Sexual Abuse
Committed by Roman Catholic Priests,
Clerics or Agents of the Roman Catholic
Church, and

DONALD E. POPPE, Individually
and on Behalf of All Similarly Situated
Victims of Childhood Sexual Abuse
Committed by Roman Catholic Priests,
Clerics or Agents of the Roman Catholic
Church, and

MICHAEL J. TURNER, Individually
and on Behalf of All Similarly Situated
Victims of Childhood Sexual Abuse
Committed by Roman Catholic Priests,
Clerics or Agents of the Roman Catholic
Church

vs.

HOLY SEE, in its Capacity as a Foreign State
(State of the Vatican City), and in its Capacity
as an Unincorporated Association and
Head of an International Religious Organization                   DEFENDANT

## CLASS ACTION COMPLAINT

\* \* \* \* \* \* \* \* \* \* \* \*

Come the Plaintiffs, individually and on behalf of all other similarly situated individuals,

by counsel, and for their complaint against the Defendant, Holy See, in its Capacity as a Foreign

State (State of the Vatican City), and in its Capacity as an Unincorporated Association and Head

of an International Religious Organization (hereafter "Holy See"), state and allege as follows:

## INTRODUCTION

A tragic pattern of widespread childhood sexual abuse and cover up has been exposed within the Roman Catholic Church. Childhood sexual abuse perpetrated by Roman Catholic clergy and agents in the United States, with the knowledge of the Holy See, its bishops, archbishops, and cardinals, and the cover up of that abuse in the United States mandated by the Holy See, are in flagrant violation of the laws of the United States, the common law of the states, federal common law and customary international law, including treaties and conventions adopted and signed by the Holy See. These laws make childhood sexual abuse a crime, impose duties to report known or suspected child abuse, require organizations and individuals to act in the best interests of children, and establish civil responsibility, all in an attempt to protect children from harm. It should come as no surprise that childhood sexual abuse is a violation of international human rights standards and conventions adopted by virtually all civilized nations.

The financial and emotional fallout from childhood sexual abuse committed by Roman Catholic clergy and agents, and the attendant cover up of that abuse within the United States, has had a devastating effect on the victims, their families, and the Church itself. In an effort to ensure the safety of American children in the future, and to provide compensation for the harm suffered by past victims, a number of legal claims have been brought and settled in the United States against local dioceses and archdioceses.

Unfortunately, however, these actions have not been directed at the root of the problem: the deliberate failure of the Holy See to take effective action to prevent childhood sexual abuse by its priests, clerics, bishops, archbishops, cardinals, agents, and employees. The Holy See has refused to require compliance with either the letter or the spirit of childhood sexual abuse laws in

the United States, including those that require reporting of such abuse, or with international standards of human rights for the protection of children.

Instead, the Holy See has mandated that all allegations of childhood sexual abuse be kept under a cloak of complete secrecy, even if that secrecy violated state, federal, or international law. In March, 1962, the Holy See privately circulated a document containing a set of procedural norms for dealing with the solicitation of sex in confession, clergy sex with minors, homosexual relations, and bestiality. This document—an official legislative text issued by the Congregation of the Holy Office and specifically approved by Pope John XXIII—imposes the highest level of secrecy on the handling of clergy sexual abuse matters. It is a reflection and written manifestation of the longstanding policies and directives of the Holy See regarding clergy sexual abuse, and imposed the Church's most extreme level of secrecy not only on those who handled such cases, but also on the document itself. This secret document was first discovered and made public in July, 2003 by news media in the United States and throughout the world. The policies of the Holy See expressed in this and other documents require bishops in the United States to, among other things, refuse to report childhood sexual abuse committed by priests to criminal or civil authorities, even where such failure to report would itself be a criminal offense.

The Church's desire to protect itself from scandal has consistently outweighed any desire to protect the children brought into contact with its priests, clerics and agents. The directives from the Holy See carried out in the United States have meant that the overall financial burden for its conduct has been borne by society in general, and by the Church's faithful parishioners in particular.

This action is rooted in a substantial and persistent pattern of conduct by the Holy See within the United States which has resulted in massive injury in this country—to individual victims, their families, their communities, and society as a whole. Sadly, this lawsuit is necessary for the protection of American children. Its sole purpose is to place blame and affix responsibility where it lies, and to bring closure to this tragic chapter in the life of the Roman Catholic Church in the United States.

## JURISDICTION, VENUE and SERVICE OF PROCESS

1.    Insofar as the Defendant is a "foreign state" within the meaning of 28 U.S.C. § 1603, this Court has both personal and subject matter jurisdiction over all matters in this action with respect to 28 U.S.C. § 1330, as a claim for relief with respect to a foreign state not entitled to immunity under §§ 1604-1607 of that title, including particularly 28 U.S.C. §§ 1605(a)(1), 1605(a)(2), and 1605(a)(5), which provide general conditions for non-immunity of a foreign state for any case:

- in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver; or
- in which the action is based upon a commercial activity carried on in the United States by the foreign state; or
- in which the action is based upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
- in which the action is based upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; or
- not otherwise encompassed above, in which money damages are sought against a foreign state for personal injury occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

2.     Insofar as the Defendant is a "foreign state" within the meaning of 28 U.S.C. § 1603, claims pursued herein are based upon a commercial activity carried on in the United States by the Defendant; acts performed in the United States in connection with a commercial activity of the Defendant elsewhere; and/or upon acts outside the territory of the United States in connection with a commercial activity of the Defendant elsewhere that caused a direct effect in the United States. The commercial activities of the Defendant encompass both a regular course of commercial conduct, including but not limited to fundraising activities, and particular commercial transactions or acts. Such activities carried on by the Defendant have substantial contact with the United States, including acts performed in the United States, funds raised from United States persons and sources and sent to the Defendant from organs, agencies and instrumentalities in the United States, explicit and implicit policy directives from the Defendant sent to its agents in the United States, and substantial consequences for persons within the United States resulting from the Defendant's actions.

3.     Insofar as the Defendant is a "foreign state" within the meaning of 28 U.S.C. § 1603, claims pursued herein, not otherwise encompassed above, seek money damages from Defendant for personal injury occurring in the United States and caused by the tortious acts or omissions of the Defendant or of any official or employee of the Defendant while acting within the scope of their office or employment within the United States. Such acts within the United States include the negligent direction and control of the Defendant's agents, organs, agencies or instrumentalities in the United States, as effectuated within the United States and resulting in a pattern of serious personal injury in the United States. The failure of the Defendant to control its agents, organs, agencies or instrumentalities in the United States as set out in this Complaint constitute a breach of mandatory obligations under United States and international law and is in

any event not a discretionary function of the Defendant or its agents under United States or international law. Nor do these claims against the Defendant, Holy See, in its capacity a "foreign state," arise out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, but rather arise out of the doctrine of respondeat superior, violations of customary international law, negligence, breach of fiduciary duty, and infliction of emotional distress.

Under no circumstances can the conduct of the Defendant, Holy See, including longstanding directives and refusal to comply with the criminal statutes of the various United States, mandating the reporting of childhood sexual abuse, be considered a "discretionary act or function." Further, the act of agents of the Defendant, Holy See, in covering up known criminal acts of childhood sexual abuse by its agents amounts to criminal conduct in the nature of aiding and abetting or criminal complicity of the crime of childhood sexual abuse, reckless endangerment, and obstruction of justice.

4. Insofar as the Defendant is a "foreign state" within the meaning of 28 U.S.C. § 1603, claims pursued herein, not otherwise encompassed above, also seek money damages from the Defendant, Holy See, for personal injury occurring in the United States and caused by, among other things:

- the tortious acts of the Defendant's agents, employees, organs, agencies or instrumentalities acting in the United States for which the Defendant is liable under recognized principles of respondeat superior and vicarious liability; and/or

- tortious acts and negligence of the Defendant and its agents in the United States in selecting, supervising, or otherwise controlling or failing to control its agents in the United States. Such acts of selecting, supervising and otherwise controlling or failing to control its agents and the negligence of its agents, as well as the resulting harm, occurred in the United States; and/or

- the tortious acts and negligence of the Defendant with respect to duties owed to Plaintiffs under United States law, duties which it breached by its actions and patterns of action and inaction in the United States, including its prescription, enforcement and

non-enforcement, and dissemination by managerial agents of Defendant, of directives and guidelines to be followed in the United States; and/or

- the tortious acts of the agents of the Defendant acting with the apparent authority of the Defendant and/or the negligence of the Defendant in enabling its agents to conceal their commission of tortious acts. Said apparent authority and/or opportunity for concealment arises from an agency relationship occurring in the United States, in addition to the injury occurring in the United States.

Such claims are not based on discretionary functions under United States or international law. Nor do these claims against the Defendant, Holy See, in its capacity a "foreign state," arise out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, but rather arise out of the doctrine of respondeat superior, violations of customary international law, negligence, breach of fiduciary duty, and infliction of emotional distress.

5.     Insofar as the Defendant is a "foreign state" for the purposes of the Foreign Sovereign Immunities Act ("FSIA"), as defined in 28 U.S.C. § 1603, the Defendant has implicitly or explicitly waived any rights under, and/or is estopped from raising, the Foreign Sovereign Immunities Act as a defense to suit by, among other things, failing to raise such defense over a period of decades in settling and acquiescing in settlements of childhood sexual abuse claims against or with respect to itself or its organs, agencies, or instrumentalities in the United States, over which it exercises absolute control and authority under its own CODE OF CANON LAW.

6.     Actions of the Defendant occurring in the United States include the transmission and receipt in the United States of policies, directives, orders or other direction or guidance, whether explicit or implicit.

7.     Actions of the Defendant with respect to claims set out in this Complaint present fundamental issues of human rights and the protection of children. Such actions have never been

given immunity by the United States government. Fundamental human rights violations have been subject to accountability in our courts in the period preceding adoption of the FSIA. There is no evidence that the Congress of the United States sought to immunize such fundamental human rights of children from accountability in our courts by the adoption of the FSIA.

8. Insofar as the Defendant is not a "foreign state" within the meaning of 28 U.S.C. § 1603, or if the Foreign Sovereign Immunities Act is not applicable to any category of claims in this Complaint because such claims preceded the enactment of the FSIA, or any period of retroactivity under FSIA, or if for any other reason the FSIA does not apply to this action, or any part of it, and insofar as the Defendant is an unincorporated association and headquarters of an international religious organization, this Court has subject matter jurisdiction over all such matters in this action with respect to 28 U.S.C. §§ 1331 and 1332.

9. Insofar as the Defendant is not a "foreign state," or to the extent that the Defendant, Holy See, is an unincorporated association and headquarters of an international religious organization, or if for any other reason the FSIA does not apply to this action, or any part of it, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because claims pursued herein allege violations of customary international law as codified in international treaties, including but not limited to the *Universal Declaration of Human Rights* and the *Convention on the Rights of the Child*. Customary international law, as well as treaties and acts of Congress, are the "supreme law of the land" pursuant to Article VI of the United States Constitution. Issues of interpretation and application of such customary international law provide federal question jurisdiction under § 1331.

10. Insofar as the Defendant is not a "foreign state," or to the extent that the Defendant, Holy See, is an unincorporated association and headquarters of an international religious organization, or if for any other reason the FSIA does not apply to this action, or any part of it, this Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy as to each individual Plaintiff exceeds the sum of $75,000, exclusive of interest and costs, and are between citizens of a state or states and a citizen of a foreign state.

11. For all claims herein upon which subject matter jurisdiction is based upon 28 U.S.C. § 1331 or § 1332, this Court has personal jurisdiction over the Defendant, Holy See, pursuant to KY. REV. STAT. § 454.210. The claims herein arise from the Defendant, Holy See's, acts, directly or by its agents: in transacting business in the Commonwealth of Kentucky; causing tortious injury by an act or omission in this Commonwealth; and/or causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth, and the Defendant, Holy See, regularly does or solicits business, or engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, and the tortious injury occurring in this Commonwealth arises out of that doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.

12. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims herein that that are so related to the claim or claims that form the basis of the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

14.     Insofar as the Defendant is a "foreign state" for the purposes of the Foreign Sovereign Immunities Act, as defined in 28 U.S.C. § 1603, service of process is effected pursuant to 28 U.S.C. § 1608(a).

15.     Insofar as the Defendant is not a "foreign state," and to the extent that the Defendant, Holy See, is an unincorporated association and headquarters of an international religious organization, or if for any other reason the Foreign Sovereign Immunities Act does not apply to this action, or any part of it, service of process is effected pursuant to KY. REV. STAT. § 454.210(3).   The Kentucky Secretary of State is deemed to be the statutory agent of the Defendant, Holy See, for such purpose.

## THE PARTIES

16.     Plaintiff, James H. O'Bryan, individually and on behalf of all similarly situated victims of childhood sexual abuse committed by Roman Catholic bishops, priests, clerics or agents, is an adult male citizen of the state of California.  Plaintiff, James H. O'Bryan, was a minor and resident of the Commonwealth of Kentucky and citizen of the United States at the time of the sexual abuse set forth herein below.

17.     Plaintiff, Donald E. Poppe, individually and on behalf of all similarly situated victims of childhood sexual abuse committed by Roman Catholic priests, clerics or agents, is an adult male citizen of the state of California.  Plaintiff, Donald E. Poppe, was a minor and resident of the Commonwealth of Kentucky and citizen of the United States at the time of the sexual abuse set forth herein below.

18. Plaintiff, Michael J. Turner, individually and on behalf of all similarly situated victims of childhood sexual abuse committed by Roman Catholic priests, clerics or agents, is an adult male citizen of the Commonwealth of Kentucky. Plaintiff, Michael J. Turner, was a minor and resident of the Commonwealth of Kentucky and citizen of the United States at the time of the sexual abuse set forth herein below.

19. The Defendant, Holy See, is the ecclesiastical, governmental and administrative ruler of the Roman Catholic Church. The Defendant, Holy See, is the composite of the authority, jurisdiction and sovereignty vested in the Pope and his delegated advisors to direct the activities of the worldwide Roman Catholic Church.

20. The Defendant, Holy See, has absolute and unqualified power and control over the Roman Catholic Church, including absolute and unqualified power and control over each and every priest, bishop, brother, sister, parish, diocese, archdiocese and instrumentality of the Church.

21. The Defendant, Holy See, exercises certain powers and engages in certain activities that are peculiar to sovereigns. The Defendant also exercises powers and engages in activities, including commercial activities, that are not peculiar to sovereigns but rather can be and are exercised and engaged in by private actors, including unincorporated associations and headquarters of international religious organizations.

22. The Defendant, Holy See, is a unique entity. It enters into treaties and conventions with other foreign states, including but not limited to the *Universal Declaration of Human Rights* (copy attached hereto as Exhibit A) and the *Convention on the Rights of the Child* (copy attached hereto as Exhibit B), maintains diplomatic relations with other foreign states, including the United States, and has observer status in the United Nations. The Defendant

occupies its own sovereign territory located within the city of Rome, Italy. At the same time, and wholly distinct and separate from its role and activities as a sovereign, it is an unincorporated association and head of the Roman Catholic Church, an international religious organization.

23. The Defendant, Holy See, engages in commercial activity in the Commonwealth of Kentucky, the United States and throughout the world.

24. The Defendant, Holy See, buys and sells real and personal property, and purchases and supplies goods and services.

25. The Defendant, Holy See, is supported through the contributions of its parishioners, which are received as part of a regular course of commercial conduct in the form of donations of money, real property and personal property.

26. A major source of funds for the Defendant, Holy See, is monies received from its parishioners in the form of tithing. The amount of money flowing to the Defendant from the United States is directly affected by the beliefs of its parishioners in the righteousness of the Defendant and its conduct.

27. The Defendant, Holy See, directs, supervises, supports, promotes and engages in providing religious and pastoral guidance, education and counseling services to Roman Catholics worldwide in exchange for revenues derived from its members and other financial contributors.

28. The Defendant, Holy See, engages in both commercial and religious activities through its agents, servants and employees, including but not limited to bishops, religious orders, priests, brothers, sisters and deacons.

29. The Defendant, Holy See, directs and mandates the morals and standards of conduct of the clergy of the Roman Catholic Church. The Defendant, Holy See, ostensibly does

this by and through its agents and instrumentalities, by enforcement of the CODE OF CANON LAW written and promulgated by the Defendant, Holy See.

30.     The Defendant, Holy See, creates, divides and realigns dioceses, archdioceses and ecclesiastical provinces.  It gives final approval to the creation, division and suppression of provinces of religious orders.

31.     The Defendant, Holy See, promotes the sacred liturgy, directs and coordinates the spreading of its faith and other acts necessary to promote the faith.

32.     The Defendant, Holy See, creates, appoints, assigns, reassigns and retires all clerics in the order of bishop.  It accords definitive approval to the election of the heads of religious orders and, through the religious superiors and the bishops of dioceses, it exercises the power to directly assign and remove individual priests and deacons.

33.     All bishops, priests and clergy, including religious order priests, vow to show respect and obedience to the Defendant, Holy See.  For example, when a priest is ordained, he kneels before his bishop and promises him and his successors obedience and respect. On the day a priest receives the fullness of the priesthood in his ordination to the episcopacy, he stands before his consecrators and the assembled people of God and promises his obedience and loyalty to the supreme Roman pontiff, the Defendant, Holy See.

34.     The Defendant, Holy See, examines and is responsible for the work and discipline and all those things which concern bishops, superiors or religious orders, priests and deacons.  In furtherance of this duty, the Defendant, Holy See, among other things, requires bishops to file a report, on a regular basis, outlining the status of and any problems with priests and clergy.

35.     The Defendant, Holy See, promulgates and enforces the laws and regulations regarding the education, training and standards of conduct and discipline for those who serve in

the governmental, administrative, judicial, educational and pastoral workings of the Roman Catholic Church worldwide.

36.     No priest, cleric, superior of a religious order, bishop, archbishop or cardinal may be removed from service or a position of leadership without the approval of the Defendant, Holy See; nor can any priest, cleric, superior of a religious order, bishop, archbishop or cardinal remain in service or a position of leadership over the objection of the Defendant, Holy See.

37.     The Defendant, Holy See, is directly and absolutely responsible for removing bishops, archbishops and cardinals from service and/or making them ineligible for positions of leadership in the various divisions and offices of the Roman Catholic Church by issuing instructions, mandates and dictates in the United States.

38.     The Defendant, Holy See, has the ultimate authority to give approval or disapproval to the settlement of legal claims, and the terms of such settlements, against its agents, including priests, clerics, superiors of religious orders, bishops and archbishops, arising out of childhood sexual abuse.

## THE CHURCH'S HISTORY
## OF CHILDHOOD SEXUAL ABUSE

39.     The problem of childhood sexual abuse committed by Roman Catholic clerics and others within the Defendant's control is almost as old as the Roman Catholic Church itself. The first formal legislation was passed at the Council of Elvira in Spain in 306 A.D. This council passed legislation condemning sexual abuse by the clergy, including sexual abuse of boys. The Council of Elvira was the first in a series of legislative attempts by the Church to curb its problem of childhood sexual abuse committed by its clergy.

40.    In the 11th century, a writing authored by Father Peter Damien, THE BOOK OF GOMORRAH, was presented to the Defendant, Holy See. This work encouraged punishment of priests and clerics who sexually molested and abused children, particularly boys.

41.    In 1917 the Defendant, Holy See, codified all of its rules, regulations and laws, including those applicable to the conduct of priests and clergy, in one document known as the CODE OF CANON LAW. This code specifically made it a crime for priests and clerics to have sexual relations or relationships with children under the age of sixteen, demonstrating that the Defendant, Holy See, was well aware of the centuries-old practice of childhood sexual abuse by Roman Catholic priests and clerics. Even today, in the current version of the Code (Vatican II), the sexual abuse of children by priests and clerics is expressly forbidden.

42.    The Defendant, Holy See, has known about the widespread problem of childhood sexual abuse committed by its clergy for centuries, but has covered up that abuse. Secret settlement agreements with victims were used to silence the victims and their families and to protect the abuser from criminal prosecution by United States authorities. This practice was designed to shield the Defendant, Holy See, from scandal, and has been mandated not only in the United States but throughout the world, including North and South America, Europe and Australia.

The Defendant, Holy See, is responsible for the historically verified practice of bishops moving sexually abusive priests to areas where allegations of the offender's abusive conduct were not known. The Defendant, Holy See, has never taken appropriate steps to remove sexually abusive priests from the ministry. The absolute power of the Defendant, Holy See, over its bishops in the United States was demonstrated in 2002, when the U.S. Conference of Catholic Bishops adopted a proposed policy designed to protect children from priest sexual abuse. The

bishops were powerless to implement this policy without approval from the Defendant, Holy See. The Defendant, Holy See, denied approval of key provisions sought by the U.S. bishops which would have required that its agents in the United States report all known or suspected child abuse to the civil authorities. The Defendant, Holy See, also refused to give the U.S. bishops the power to remove abusive priests from the ministry.

43.     While the "public" policy of the Defendant, Holy See, is to forbid childhood sexual abuse by priests and clerics within its control, the actual "private" or secret policy is to harbor and protect its abusive priests, clerics, bishops, archbishops, cardinals, agents, and employees from public disclosure and prosecution, in order to maintain its aura of infallibility and thereby ensure that its parishioners, followers and financial contributors will not lose faith and fail to contribute money and property to the Defendant, Holy See.

44.     The Defendant, Holy See, has mandated a multi-level policy of mandatory secrecy over all matters involving the administrative, legislative and judicial activities of the Vatican offices and departments under the direct authority of the Pope, as well as over all similar activity in the various dioceses throughout the world. The highest level of secrecy is the absolute secrecy mandated for all communications which take place in the sacrament of penance, commonly referred to as "confession." The highest level of secrecy outside the confessional is known as the "Pontifical secret," which is imposed on certain activities of the various departments or congregations of the Holy See. Violation of the Pontifical Secret results in certain penalties, including excommunication.

45.     In March, 1962, the Defendant, Holy See, privately circulated a document containing a set of procedural norms for dealing with the solicitation of sex in confession, clergy sex with minors, homosexual relations, and bestiality. This document imposed the highest level

of secrecy on the handling of clergy sexual abuse matters. This document is an official legislative text, issued by the Congregation of the Holy Office and was specifically approved by Pope John XXIII. This document is a reflection and written manifestation of the longstanding policies and directives of the Holy See regarding clergy sexual abuse, and imposed the extreme level of secrecy not only on those who handled such cases but also on the document itself. This secret document was first discovered and made public in July, 2003 by news media in the United States and throughout the world. The policy of the Defendant, Holy See, expressed in this and other documents, requires bishops in the United States, including the Commonwealth of Kentucky, to refuse to report childhood sexual abuse committed by priests to criminal or civil authorities, even though such failure is a criminal offense in most of the United States, including the Commonwealth of Kentucky.

46.     The canon laws of the Defendant, Holy See, require an official investigation and formal prosecution of known sexual offenders. However, these laws are enforced only in the rarest of circumstances. For example, over at least the last sixty (60) years, there has never been a single prosecution or official investigation of a priest or cleric within the Archdiocese of Louisville or any diocese in the Commonwealth of Kentucky, even after repeated allegations of childhood sexual abuse committed by various priests were made known to the three Louisville archbishops who served the Defendant, Holy See.

47.     At all times material hereto, and as part of both its course of commercial conduct and particular commercial transactions and acts, the Defendant directed its bishops in the United States to conceal from its parishioners and the general public the sexual abuse of children committed by its priests, bishops, clerics, agents and employees in order to avoid public scandal, and to perpetuate its Christian public image and ensure the continued receipt of funds from its

parishioners and other financial contributors, all in furtherance of the Defendant's commercial activities.

48.     The Plaintiffs and Class Members were each sexually abused as a child by one (or more) of the Defendant's clerics, agents or employees. The Defendant's directives to conceal the sexual abuse of children committed by its clerics, agents, and employees in order to maximize revenue by avoiding scandal was a substantial factor in bringing about each Class Member's abuse.

49.     At all times material hereto, the Defendant, Holy See, violated customary international law of human rights by ignoring, tolerating, disregarding, permitting, allowing, condoning and/or failing to report inhuman and degrading treatment such as the sexual abuse of minor children. This conduct constitutes a violation of various human rights conventions, including the *Universal Declaration of Human Rights* and the *Convention on the Rights of the Child*, which the Defendant signed and ratified, and the Defendant's violation of customary international law and conventions was a substantial factor in bringing about the Plaintiffs' injuries.

50.     At all times material hereto, the Defendant, Holy See, breached duties owed to the Plaintiffs under customary international law of human rights, the federal common law, the law of the fifty states, and the law of the Commonwealth of Kentucky, thereby causing injury to the Plaintiffs.

51.     At all times material hereto, the Defendant, Holy See's directives, which, among other things, prohibited the reporting of child sexual abuse to law enforcement authorities, constitute an act or acts of concealment or misleading or obstructive conduct under statutory law, common law, and customary international law.

52.     At all times material hereto, the Defendant, Holy See's concealment of its policy of harboring and protecting its abusive priests, clerics, bishops, archbishops, cardinals, agents and employees from public disclosure and prosecution constitutes an act or acts of concealment or misleading or obstructive conduct under statutory law, common law, and customary international law.

## CLASS DEFINITIONS

53.     Class I consists of all persons who have not previously brought claims against an agent or servant of the Defendant, Holy See, in the United States, including the Commonwealth of Kentucky, arising out of the childhood sexual abuse he or she suffered at the hands of a Roman Catholic priest, cleric, bishop, archbishop, cardinal, agent or employee, who have not received compensation from any agent, servant or instrumentality of the Defendant, Holy See, in the United States, including the Commonwealth of Kentucky, and who have not released any agent, servant or instrumentality of the Defendant, Holy See, from further liability.  Class I is represented by Plaintiffs James H. O'Bryan and Donald E. Poppe.

54.     Class II consists of all persons who have previously brought legal claims against an agent or servant of the Defendant, Holy See, in the United States, including the Commonwealth of Kentucky, arising out of the childhood sexual abuse he or she suffered at the hands of a Roman Catholic priest, cleric, agent or employee; who also have received compensation from an agent, servant or instrumentality of the Defendant, Holy See, in the United States, including the Commonwealth of Kentucky; and who also have released that agent,

servant or instrumentality of the Defendant, Holy See from further liability. Class II is represented by Plaintiff Michael J. Turner.

## ALLEGATIONS AND CLAIMS OF CLASS I

55. Plaintiffs, James H. O'Bryan and Donald E. Poppe, bring this action individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all victims of childhood sexual abuse committed by Roman Catholic priests, clerics or agents, who have not heretofore entered into a settlement agreement and release of any diocese, archdiocese, agent or instrumentality of the Defendant, Holy See, within the Commonwealth of Kentucky or the United States, and who now assert claims against the Defendant, Holy See.

56. Because the number of victims of childhood sexual abuse as set forth in the preceding paragraph are so numerous, joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe there are at least several thousand members of the class.

57. At all times material hereto, Defendant, Holy See, possessed and exercised the absolute right to control all its priests, clerics, bishops, archbishops, cardinals, agents and servants within the Commonwealth of Kentucky and the United States.

58. At all times material hereto, the Defendant, Holy See, had the absolute right to control the places of worship, educational facilities and instructors, and agents of the Roman Catholic Church within the Commonwealth of Kentucky and the United States.

59. At all times material hereto, these Plaintiffs were victimized by priests, clerics and other agents of the Defendant, Holy See, acting in furtherance of the purposes of the Defendant,

Holy See, doing the kinds of acts they were engaged to perform, including educating and/or counseling minor children in the Roman Catholic traditions, taking confession, and overseeing their roles as altar boys and servers, and who were motivated, at least in part, to further the purposes of the Defendant, Holy See.

60.     The Defendant, Holy See, by and through its agents, provided priests, clerics, bishops, archbishops, cardinals, agents and employees, who were committing acts of sexual abuse against minor children in Roman Catholic schools and parishes, the facilities and faculties to perform as Roman Catholic priests and clerics, and provided them the opportunity to continue their abusive conduct.

61.     The Defendant, Holy See, by and through its agents, certified and held sexually abusive priests, clerics and other agents out to the community of the faithful as fit and competent agents of the Defendant, Holy See, and as ministers of Christ. The priest and cleric perpetrators of childhood sexual abuse in the parishes and schools of the Roman Catholic Church in the Commonwealth of Kentucky and the United States, were acting as agents of the Defendant, Holy See, in ministering to the community of the faithful, including performing sacraments, taking confession, educating and counseling children on the word of God, and the law of the Roman Catholic Church, in providing aid, comfort and counseling, in exchange for financial contributions and support for the Defendant, Holy See.

62.     The Defendant, Holy See, by and through its agents, enabled priests and clerics who were committing acts of sexual abuse against minor children in Roman Catholic schools and parishes, to continue to perform as Roman Catholic priests and clerics by its refusal to report such abuse to civil or criminal authorities, by its refusal to unilaterally laicize known clergy

sexual abusers, and by its refusal to assist the bishops in the United States in their efforts to report suspected sexual abuse to authorities and to laicize known clergy sexual abusers.

63.    Plaintiff, James H. O'Bryan, was sexually abused, molested and assaulted by a Roman Catholic priest in the 1920s, while Plaintiff was under the care, custody, authority, control and influence of an abusive Roman Catholic priest, which authority was granted to him by the Defendant, Holy See.

64.    Plaintiff, Donald E. Poppe, was sexually abused, molested and assaulted by a Roman Catholic priest in the early 1960s, while Plaintiff was under the care, custody, authority, control and influence of an abusive Roman Catholic priest, which authority was granted to him by the Defendant, Holy See.

65.    The sexual molestation of Plaintiffs, James H. O'Bryan and Donald E. Poppe, occurred while the abusive Roman Catholic priest, agent servant or employee was acting in the scope of his employment, as part of an agency relationship with the Defendant, Holy See, and the misconduct was committed with the apparent authority arising from this employment and/or agency relationship. The sexually abusive Roman Catholic priest, agent servant or employee was executing the very duties which he was assigned to perform.

66.    Due to the nature of the duties of the Defendant's priests, clerics and agents and the vast disparity of power that existed within the aforesaid fiduciary relationship, the Defendant, Holy See, is liable for the negligent and/or wrongful conduct of its agents performing Defendant's activities and commercial activities, including a course of fundraising activities and particular acts of administering private education and counseling programs in exchange for money. These agents include the Roman Catholic Bishop of Louisville, Inc., and other Roman Catholic bishops, archbishops, and cardinals throughout the Commonwealth of Kentucky and the

United States, as well as the various orders and its priests and other agents and servants who committed childhood sexual abuse against the Plaintiffs as described in the causes of action herein under the law of direct and vicarious liability, including the doctrine of *respondeat superior*.

67.     As a direct and proximate result of the conduct of the Defendant, Holy See, as set forth herein, the Plaintiffs and other similarly situated individuals, have suffered serious mental distress, physical and mental pain and suffering from their childhood to the present and will continue to suffer serious mental distress and physical and mental pain and suffering for the remainder of their lives.


## CLASS I - COUNT I

## RESPONDEAT SUPERIOR LIABILITY


68.     The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 67 as if set forth fully herein.

69.     The conduct of the agents, servants, employees and ostensible agents of the Defendant, Holy See, in the United States set forth herein was committed in the course and scope of delegated duties and authority granted by the Defendant, Holy See, in the United States, thereby rendering the Defendant, Holy See, vicariously liable under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights for the conduct of those agents, servants, employees and ostensible agents under the doctrine of *respondeat superior* ("let the master answer").

## CLASS I - COUNT II

## VIOLATION OF CUSTOMARY INTERNATIONAL
## LAW OF HUMAN RIGHTS

70.    The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 69 as if set forth fully herein.

71.    The instructions, mandates and dictates of the Defendant, Holy See in the United States prohibiting the disclosure of the identity and existence of pedophiles and sexual predators under its control, thereby placing children in a position of peril, is a gross violation of well-established, universally recognized norms of international law of human rights. The customary international law of human rights has been codified in various international agreements, including but not limited to:

   a.    the *Universal Declaration of Human Rights*, in that the Defendant, Holy See, as a matter of policy, at all times practiced, ignored, tolerated, disregarded, permitted, allowed, condoned or failed to report childhood sexual abuse which the international community and the civilized world views as cruel, inhumane and degrading; and

   b.    the *Convention on the Rights of the Child*, in that the Defendant, Holy See, among other things, did not make the interests of minor children in its control their primary responsibility; did not conform to international standards for the safety and health of those children in considering the suitability of their priests, clerics, bishops, archbishops, cardinals, agents and servants; did not take all appropriate legislative, administrative, social and educational measures to protect those children from sexual abuse; did not prevent, identify, report, investigate, treat or

follow-up on instances of childhood sexual abuse of which it had knowledge; did not take all appropriate measures to ensure that school discipline was administered in a manner consistent with human dignity; and did not undertake to protect those children from sexual exploitation and abuse.

72.     The Defendant, Holy See, signed the *Universal Declaration of Human Rights* in 1948; the Defendant, Holy See, signed the *Convention on the Rights of the Child* in 1990.

73.     The worldwide acceptance of various international agreements, including the *Convention on the Rights of the Child*, demonstrates that some of their provisions have attained the status of customary international law. The *Convention on the Rights of the Child* provides that "in all actions concerning children . . . the best interests of the child shall be a primary consideration," Art. 3, that the signatories "shall take all appropriate legislative, administrative, social and educational measures to protect the child from all forms of physical or mental violence, injury or abuse, . . . , including sexual abuse," Art. 19, and that they "undertake to protect the child from all forms of sexual exploitation and sexual abuse," Art. 34.   These provisions codify longstanding legal human rights norms that reflect actual practices of states in prohibiting childhood sexual abuse, are not so novel as to be considered outside the bounds of what is customary, and are of universal concern.

The practices, instructions, mandates, and dictates of the Defendant, Holy See, in the United States prohibiting the disclosure of the identity and existence of pedophiles and sexual predators under its control and thereby placing children in positions of harm, whether undertaken under the color of law or only in its capacity as a private actor, are violations of customary international law, and are crimes to which the law of nations attributes individual responsibility.

## CLASS I - COUNT III

## NEGLIGENCE OF DEFENDANT, HOLY SEE

74.     The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 73 as if set forth fully herein.

75.     The Defendant, Holy See, by and through its agents, servants and employees, breached duties owed to the Plaintiffs under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights, including but not limited to:

a.      The duty to provide safe care, custody and control of the minor children entrusted by their parents to the Roman Catholic churches and schools under the absolute control of the Defendant, Holy See.

b.      The duty to warn parents who entrusted their children's care, custody and control to the churches and schools of the Roman Catholic Church that priests and other clerics were known pedophiles, sexual predators and perpetrators of childhood sexual abuse.

c.      The duty to report known or suspected perpetrators of childhood sexual abuse to authorities as required by statutory law, common law, and customary international law.

76.     The Defendant, Holy See, knew that its priests, clerics and agents in the United States, including the Commonwealth of Kentucky, were committing acts of childhood sexual abuse and engaging in dangerous and exploitive conduct as pedophiles, sexual predators and perpetrators of childhood sexual abuse, and that these priests, clerics, bishops, archbishops,

cardinals, agents, and employees created an unsafe condition on the premises of the aforesaid churches and schools, institutions to whom the custody and control of said minor children was placed.

77.     The acts and omissions of the Defendant, Holy See alleged herein, including the concealment of its policy of harboring and protecting its abusive priests, agents and employees from public disclosure and prosecution and directives prohibiting the reporting of child sexual abuse to authorities, as part of a regular course of commercial conduct and particular commercial transactions and acts, were a substantial factor in bringing about the damages suffered by the Plaintiffs as a result of childhood sexual abuse.

## CLASS I - COUNT IV
## BREACH OF FIDUCIARY DUTY

78.     The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 77 as if set forth fully herein.

79.     A special legal relationship existed between the Plaintiffs and the Defendant, Holy See, in the nature of a fiduciary relationship, which relationship was carried out by and through priests, clerics and administrators under the direct and absolute control of the Defendant, Holy See, in their capacity as paid educators and/or counselors of minor children in the private schools of the Roman Catholic Church in the Commonwealth of Kentucky and the United States.

80.     The Defendant breached fiduciary duties owed to the Plaintiffs under the common law of the states, the federal common law, the laws of the fifty states, the law of the

Commonwealth of Kentucky and customary international law of human rights, including but not limited to:

    a. The duty to warn parents, who entrusted their children's care, custody and control to the churches and schools of the Roman Catholic Church, that its priests, clerics and agents in those churches and schools were known pedophiles, sexual predators and perpetrators of childhood sexual abuse.

    b. The duty to report known or suspected perpetrators of childhood sexual abuse to authorities as required by statutory law, the common law, and customary international law.

## CLASS I - COUNT V

## TORT OF OUTRAGE/
## INFLICTION OF EMOTIONAL DISTRESS

81.     The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 80 as if set forth fully herein.

82.     The acts and omissions of the Defendant, Holy See alleged herein, including the concealment of its policy of harboring and protecting its abusive priests, agents and employees from public disclosure and prosecution and directives prohibiting the reporting of child sexual abuse to authorities, as part of a regular course of commercial conduct and particular commercial transactions and acts, thereby placing children in a position of peril, is conduct which is so outrageous and extreme in degree, as to go beyond all possible bounds of decency, so as to be regarded as utterly atrocious in a civilized society.

83.     Such atrocities form the bases of civil liability under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights.


## CLASS I - COUNT VI

### DECEIT

**(Claim Against the Holy See in its Capacity
as an Unincorporated Association and Head
of an International Religious Organization Only)**

84.     The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 83 as if set forth fully herein.

85.     The acts and omissions of the Defendant, Holy See, in its capacity as an unincorporated association and head of an international religious organization alleged herein, including the concealment of its policy of harboring and protecting its abusive priests, bishops, archbishops, cardinals, agents and employees from public disclosure and prosecution and directives prohibiting the reporting of child sexual abuse to authorities, as part of a regular course of commercial conduct and particular commercial transactions and acts, thereby placing children at an unreasonable risk of physical harm, constitutes the fraudulent misrepresentation or nondisclosure of a fact that the Defendant, Holy See, was under a duty to disclose, and upon which the Plaintiffs, and their parents, justifiably relied.

86.     Such acts and omissions form the bases of civil liability under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights.

## CLASS I - COUNT VII

### MISREPRESENTATION

**(Claim Against the Holy See in its Capacity
as an Unincorporated Association and Head
of an International Religious Organization Only)**

87.     The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 86 as if set forth fully herein.

88.     The acts and omissions of the Defendant, Holy See, in its capacity as an unincorporated association and head of an international religious organization alleged herein, including intentionally or negligently certifying and holding sexually abusive priests, clerics and other agents out to the community of the faithful as fit and competent agents of the Defendant, Holy See, and as ministers of Christ, as part of a regular course of commercial conduct and particular commercial transactions and acts, thereby placing children at an unreasonable risk of physical harm, constitutes a conscious or negligent misrepresentation upon which the Plaintiffs, and their parents, justifiably relied.

89.     Such acts and omissions form the bases of civil liability under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights.

## CLASS I - COUNT VIII

## INJUNCTIVE RELIEF

90. The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 89 as if set forth fully herein.

91. As a result of the violations under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights set forth herein, and in addition to monetary damages for those violations, the Plaintiffs seek orders:

    a. requiring that the Defendant, Holy See, cease its violations of the internationally recognized human rights of children;

    b. requiring the Defendant, Holy See, to report all allegations of childhood sexual abuse in each and every one of the United States;

    c. requiring that the Defendant, Holy See, conform its conduct to the mandates of the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights;

    d. requiring that Defendant, Holy See, act in ways that are in the best interests of children; and

    e. retaining jurisdiction in this Court for a period of no less than ten (10) years to ensure that the interests of children are not further compromised by the conduct of the Defendant, Holy See.

## ALLEGATIONS AND CLAIMS OF CLASS II

92. Plaintiff, Michael J. Turner, brings this action individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of victims of childhood sexual abuse committed by Roman Catholic priests, clerics or agents, who have settled a claim of childhood sexual abuse with a diocese, archdiocese, or other agent or servant of the Defendant, Holy See, in the Commonwealth of Kentucky or the United States and who now assert claims against the Defendant, Holy See.

93. Because the number of victims of childhood sexual abuse as set forth in the preceding paragraph are so numerous, joinder of all members is impracticable. While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe there are at least several thousand members of the class.

94. At all times material hereto, Defendant, Holy See, possessed and exercised the absolute right to control all its priests, clerics, bishops, archbishops, cardinals, agents and servants within the Commonwealth of Kentucky and the United States.

95. At all times material hereto, the Defendant, Holy See, had the absolute right to control the places of worship, educational facilities and instructors, and agents of the Roman Catholic Church within the Commonwealth of Kentucky and the United States.

96. At all times material hereto, these Plaintiffs were victimized by priests, clerics and other agents of the Defendant, Holy See, acting in furtherance of the purposes of the Defendant, Holy See, doing the kinds of acts they were engaged to perform, including educating and/or counseling minor children in the Roman Catholic traditions, taking confession, and overseeing

their roles as altar boys and servers, and who were motivated, at least in part, to further the purposes of the Defendant, Holy See.

97.    The Defendant, Holy See, by and through its agents, provided priests, clerics, bishops, archbishops, cardinals, agents and employees, who were committing acts of sexual abuse against minor children in Roman Catholic schools and parishes, the facilities and faculties to perform as Roman Catholic priests and clerics, and provided them the opportunity to continue their abusive conduct.

98.    The Defendant, Holy See, by and through its agents, certified and held sexually abusive priests, clerics and other agents out to the community of the faithful as fit and competent agents of the Defendant, Holy See, and as ministers of Christ. The priest and cleric perpetrators of childhood sexual abuse in the parishes and schools of the Roman Catholic Church in the Commonwealth of Kentucky and the United States, were acting as agents of the Defendant, Holy See, in ministering to the community of the faithful, including performing sacraments, taking confession, educating and counseling children on the word of God, and the law of the Roman Catholic Church, in providing aid, comfort and counseling, in exchange for financial contributions and support for the Defendant, Holy See.

99.    The Defendant, Holy See, by and through its agents, enabled priests and clerics who were committing acts of sexual abuse against minor children in Roman Catholic schools and parishes, to continue to perform as Roman Catholic priests and clerics by its refusal to report such abuse to civil or criminal authorities, by its refusal to unilaterally laicize known clergy sexual abusers, and by its refusal to assist the bishops in the United States in their efforts to report suspected sexual abuse to authorities and to laicize known clergy sexual abusers.

100.    Plaintiff, Michael J. Turner, was sexually abused, molested and assaulted by a Roman Catholic priest in the mid 1970s, while Plaintiff was under the care, custody, authority, control and influence of an abusive Roman Catholic priest, which authority was granted to him by the Defendant, Holy See.

101.    The sexual molestation of Plaintiff, Michael J. Turner, occurred while the abusive Roman Catholic priest, agent servant or employee was acting in the scope of his employment, as part of an agency relationship with the Defendant, Holy See, and the misconduct was committed with the apparent authority arising from this employment and/or agency relationship.  The sexually abusive Roman Catholic priest, agent servant or employee was executing the very duties which he was assigned to perform.

102.    As a direct and proximate result of the conduct of the Defendant, Holy See, as set forth herein, the Plaintiff and other similarly situated individuals have suffered serious mental distress, physical and mental pain and suffering from their childhood to the present and will continue to suffer serious mental distress and physical and mental pain and suffering for the remainder of their lives.

## CLASS II - COUNT I

## VIOLATION OF CUSTOMARY INTERNATIONAL LAW OF HUMAN RIGHTS

103.    The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 102 as if set forth fully herein.

104.    The instructions, mandates and dictates of the Defendant, Holy See in the United States prohibiting the disclosure of the identity and existence of pedophiles and sexual predators

under its control, thereby placing children in a position of peril, is a gross violation of well-established, universally recognized norms of international law of human rights. The customary international law of human rights has been codified in various international agreements, including but not limited to:

a. the *Universal Declaration of Human Rights*, in that the Defendant, Holy See, as a matter of policy, at all times practiced, ignored, tolerated, disregarded, permitted, allowed, condoned or failed to report childhood sexual abuse which the international community and the civilized world views as cruel, inhumane and degrading; and

b. the *Convention on the Rights of the Child*, in that the Defendant, Holy See, among other things, did not make the interests of minor children in its control their primary responsibility; did not conform to international standards for the safety and health of those children in considering the suitability of their priests, clerics, bishops, archbishops, cardinals, agents and servants; did not take all appropriate legislative, administrative, social and educational measures to protect those children from sexual abuse; did not prevent, identify, report, investigate, treat or follow-up on instances of childhood sexual abuse of which it had knowledge; did not take all appropriate measures to ensure that school discipline was administered in a manner consistent with human dignity; and did not undertake to protect those children from sexual exploitation and abuse.

105. The Defendant, Holy See, signed the *Universal Declaration of Human Rights* in 1948; the Defendant, Holy See, signed the *Convention on the Rights of the Child* in 1990.

106. The worldwide acceptance of various international agreements, including the *Convention on the Rights of the Child*, demonstrates that some of their provisions have attained the status of customary international law. The *Convention on the Rights of the Child* provides that "in all actions concerning children . . . the best interests of the child shall be a primary consideration," Art. 3, that the signatories "shall take all appropriate legislative, administrative, social and educational measures to protect the child from all forms of physical or mental violence, injury or abuse, . . . , including sexual abuse," Art. 19, and that they "undertake to protect the child from all forms of sexual exploitation and sexual abuse," Art. 34. These provisions codify longstanding legal human rights norms that reflect actual practices of states in prohibiting childhood sexual abuse, are not so novel as to be considered outside the bounds of what is customary, and are of universal concern.

The practices, instructions, mandates, and dictates of the Defendant, Holy See, in the United States prohibiting the disclosure of the identity and existence of pedophiles and sexual predators under its control and thereby placing children in positions of harm, whether undertaken under the color of law or only in its capacity as a private actor, are violations of customary international law, and are crimes to which the law of nations attributes individual responsibility.

## CLASS II - COUNT II

### NEGLIGENCE OF DEFENDANT, HOLY SEE

107. The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 106 as if set forth fully herein.

108. The Defendant, Holy See, by and through its agents, servants and employees, breached duties owed to the Plaintiffs under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights, including but not limited to:

    a.    The duty to provide safe care, custody and control of the minor children entrusted by their parents to the Roman Catholic churches and schools under the absolute control of the Defendant, Holy See.

    b.    The duty to warn parents who entrusted their children's care, custody and control to the churches and schools of the Roman Catholic Church that priests and other clerics were known pedophiles, sexual predators and perpetrators of childhood sexual abuse.

    c.    The duty to report known or suspected perpetrators of childhood sexual abuse to authorities as required by statutory law, common law, and customary international law.

109. The Defendant, Holy See, knew that its priests, clerics and agents in the United States, including the Commonwealth of Kentucky, were committing acts of childhood sexual abuse and engaging in dangerous and exploitive conduct as pedophiles, sexual predators and perpetrators of childhood sexual abuse, and that these priests, clerics, bishops, archbishops, cardinals, agents, and employees created an unsafe condition on the premises of the aforesaid churches and schools, institutions to whom the custody and control of said minor children was placed.

110. The acts and omissions of the Defendant, Holy See alleged herein, including the concealment of its policy of harboring and protecting its abusive priests, agents and employees

from public disclosure and prosecution and directives prohibiting the reporting of child sexual abuse to authorities, as part of a regular course of commercial conduct and particular commercial transactions and acts, were a substantial factor in bringing about the damages suffered by the Plaintiffs as a result of childhood sexual abuse.

## CLASS II - COUNT III
### BREACH OF FIDUCIARY DUTY

111. The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 110 as if set forth fully herein.

112. A special legal relationship existed between the Plaintiffs and the Defendant, Holy See, in the nature of a fiduciary relationship, which relationship was carried out by and through priests, clerics and administrators under the direct and absolute control of the Defendant, Holy See, in their capacity as paid educators and/or counselors of minor children in the private schools of the Roman Catholic Church in the Commonwealth of Kentucky and the United States.

113. The Defendant breached fiduciary duties owed to the Plaintiffs under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights, including but not limited to:

      a. The duty to warn parents, who entrusted their children's care, custody and control to the churches and schools of the Roman Catholic Church, that its priests, clerics and agents in those churches and schools were known pedophiles, sexual predators and perpetrators of childhood sexual abuse.

b.  The duty to report known or suspected perpetrators of childhood sexual abuse to authorities as required by statutory law, the common law, and customary international law.

## CLASS II - COUNT IV

## TORT OF OUTRAGE/
## INFLICTION OF EMOTIONAL DISTRESS

114.  The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 113 as if set forth fully herein.

115.  The acts and omissions of the Defendant, Holy See alleged herein, including the concealment of its policy of harboring and protecting its abusive priests, agents and employees from public disclosure and prosecution and directives prohibiting the reporting of child sexual abuse to authorities, as part of a regular course of commercial conduct and particular commercial transactions and acts, thereby placing children in a position of peril, is conduct which is so outrageous and extreme in degree, as to go beyond all possible bounds of decency, so as to be regarded as utterly atrocious in a civilized society.

116.  Such atrocities form the bases of civil liability under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights.

## CLASS II - COUNT V

### DECEIT

### (Claim Against the Holy See in its Capacity as an Unincorporated Association and Head of an International Religious Organization Only)

117.    The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 116 as if set forth fully herein.

118.    The acts and omissions of the Defendant, Holy See, in its capacity as an unincorporated association and head of an international religious organization alleged herein, including the concealment of its policy of harboring and protecting its abusive priests, bishops, archbishops, cardinals, agents and employees from public disclosure and prosecution and directives prohibiting the reporting of child sexual abuse to authorities, as part of a regular course of commercial conduct and particular commercial transactions and acts, thereby placing children at an unreasonable risk of physical harm, constitutes the fraudulent misrepresentation or nondisclosure of a fact that the Defendant, Holy See, was under a duty to disclose, and upon which the Plaintiffs, and their parents, justifiably relied.

119.    Such acts and omissions form the bases of civil liability under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights.

## CLASS II - COUNT VI

## MISREPRESENTATION

**(Claim Against the Holy See in its Capacity
as an Unincorporated Association and Head
of an International Religious Organization Only)**

120.   The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 119 as if set forth fully herein.

121.   The acts and omissions of the Defendant, Holy See, in its capacity as an unincorporated association and head of an international religious organization alleged herein, including intentionally or negligently certifying and holding sexually abusive priests, clerics and other agents out to the community of the faithful as fit and competent agents of the Defendant, Holy See, and as ministers of Christ, as part of a regular course of commercial conduct and particular commercial transactions and acts, thereby placing children at an unreasonable risk of physical harm, constitutes a conscious or negligent misrepresentation upon which the Plaintiffs, and their parents, justifiably relied.

122.   Such acts and omissions form the bases of civil liability under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights.

## CLASS II - COUNT VII

### INJUNCTIVE RELIEF

123. The Plaintiffs adopt, reiterate and incorporate by reference each and every allegation contained in paragraphs 1 through 122 as if set forth fully herein.

124. As a result of the violations under the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights set forth herein, and in addition to monetary damages for those violations, the Plaintiffs seek orders:

    a. requiring that the Defendant, Holy See, cease its violations of the internationally recognized human rights of children;

    b. requiring the Defendant, Holy See, to report all allegations of childhood sexual abuse in each and every one of the United States;

    c. requiring that the Defendant, Holy See, conform its conduct to the mandates of the common law of the states, the federal common law, the laws of the fifty states, the law of the Commonwealth of Kentucky and customary international law of human rights;

    d. requiring that Defendant, Holy See, act in ways that are in the best interests of children; and

    e. retaining jurisdiction in this Court for a period of no less than ten (10) years to ensure that the interests of children are not further compromised by the conduct of the Defendant, Holy See.

**WHEREFORE**, the Plaintiffs, James H. O'Bryan, Donald E. Poppe and Michael J. Turner, on behalf of themselves and all other similarly situated individuals, demand judgment against the Defendant, Holy See, for compensatory damages and, where applicable, punitive damages; for the injunctive relief sought herein; for their costs herein expended, including attorneys' fees; for trial by jury on any and all issues so triable; and for any and all further legal and equitable relief to which the Plaintiffs may appear entitled.

William F. McMurry
Ross T. Turner
WILLIAM F. McMURRY & ASSOCIATES
4801 Olympia Park Plaza, Suite 4800
Louisville, Kentucky 40241
(502) 326-9000

Marci A. Hamilton
36 Timber Knoll Drive
Washington Crossing, Pennsylvania 18977
(212) 790-0215

*Counsel for Plaintiffs*