UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-338-H

JAMES H. O'BRYAN, DONALD E. POPPE, and
MICHAEL J. TURNER, Individually and on Behalf
of All Similarly Situated Persons                                                    PLAINTIFFS

V.

HOLY SEE, in its Capacity as a Foreign State
(State of the Vatican City), and in its Capacity
as an Unincorporated Association and Head
of an International Religious Organization                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs James O'Bryan, Donald Poppe, and Michael Turner ("Plaintiffs") filed this

putative class action against the Holy See ("Defendant") in its Capacity as a foreign state and in

its capacity as an unincorporated association and head of an international religious organization,

alleging claims for liability under the doctrines of *respondeat superior*, violation of customary

international law of human rights, negligence, breach of fiduciary duty, infliction of emotional

distress, deceit, and misrepresentation.  Their claims arise from allegations of sexual abuse by

local Catholic priests many years ago.  Plaintiffs seek monetary and injunctive relief.

Defendant has moved to dismiss on the grounds of insufficient service of process,

insufficient process, lack of personal jurisdiction, lack of subject matter jurisdiction, and failure

to state a claim upon which relief can be granted.  Pursuant to the Court's order of May 27, 2005,

the Court will consider Defendant's motion to dismiss for insufficient service of process before

addressing the remainder of Defendant's motions.

I.

Plaintiffs attempted service of process on Defendant in three ways.  Plaintiffs first

attempted to serve Defendant under 28 U.S.C. § 1608(a)(3).  On August 24, 2004, the Clerk of

this Court sent a copy of the summons, complaint, and notice of suit, and a Latin translation of

each via DHL Worldwide Express with delivery notification, addressed in the following manner:

|                    |                                                    |
|--------------------|----------------------------------------------------|
| Company Name:      | Secretariat of State                               |
| Contact Name:      | Head of the Secretariat of State                   |
| Delivery Address:  | Section for Relations with States, Apostolic Palace|
| Country:           | Vatican City State                                 |
| Post/ZIP Code:     | 00120.                                             |

In five attempts, DHL was unable to deliver the documents.  Plaintiffs next attempted service

under 28 U.S.C. § 1608(a)(4).  On November 3, 2004, the Clerk of this Court sent two copies of

the summons and complaint and notice of suit, and a Latin translation of each via DHL

Worldwide Express with delivery notification, addressed to the Director of Special Consular

Services, U.S. Department of State, Washington D.C.  The State Department transmitted a letter

to the Clerk of this Court that included a certified copy of the diplomatic note it included with

Plaintiffs' materials.  The note indicated that Plaintiffs' documents were transmitted to

Defendant on December 13, 2004.  Plaintiffs' third attempt at service was pursuant to the

Kentucky long-arm statute, KRS § 454.210, under which the Kentucky Secretary of State sends,

via certified mail with return receipt requested and bearing the return address of the Secretary of

State, a copy of the summons and complaint to the defendant at the address listed in the

complaint.  The Secretary of State's return of service indicates that service was effected on June

18, 2004.

2

II.

The threshold question is whether Defendant is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608 *et seq.*  The United States government has recognized the Holy See as a foreign sovereign since January 10, 1984.  *See, e.g., Americans United for Separation of Church and State v. Reagan*, 786 F.2d 194, 197 (3d Cir. 1986)*, Dale v. Colagiovanni*, 337 F. Supp. 2d 825 (S.D. Miss. 2004) (there is no dispute as to whether the Vatican is a foreign state under the FSIA); *English v. Thorne*, 676 F. Supp. 761, 764 (S.D. Miss. 1987) (Vatican is a foreign state).  It is well established that such decisions are nonjusticiable.  *See Americans United*, 786 F.2d at 201-202 ("It has long been settled that the President's resolution of such questions constitutes a judicially unreviewable political decision . . .").  The Sixth Circuit has also recognized the nonjusticiability of the determination of an entity's status as a foreign sovereign.  In *United States v. Newman*, 899 F.2d 88, 96-97 (6th Cir. 1989), it said that the determination of whether an issue presents a nonjusticiable political question is "grounded on a respect for the separation of powers and a corollary concern that courts not engage in the brand of policy evaluation traditionally reserved to other branches of government."  *Newman*, 899 F.2d at 96-97 (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962)).

Plaintiffs make two arguments against the application of the FSIA to their claims.  First, they argue that an entity's sovereign status must be determined as of the time the conduct in question occurred, and second, that the Court may determine that the Holy See has a separate capacity as a church, and is therefore *not* a foreign sovereign for purposes of the FSIA in this separate capacity (thereby obviating the need for service in accordance with the provisions of the FSIA).  For the following reasons, the Court finds neither argument persuasive.

An Executive Branch decision to recognize an entity as a foreign sovereign applies retroactively and "validates all the actions and conduct of the government so recognized from the commencement of its existence." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 303 (1918); *see also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 417 (1964) ("established rule" is that "recognition operates retroactively to validate past acts"); *United States v. Pink*, 315 U.S. 203, 233 (1942) (recognition is retroactive in effect); *United States v. Belmont*, 301 US 324, 328-330 (1937) (recognition is retroactive).  Further, the FSIA itself is retroactive in application and applies to actions of foreign sovereigns prior to the passage of the FSIA.  *Republic of Austria v. Altmann*, 541 U.S. 677,  (2004) (holding that the FSIA applied retroactively to actions of the Austrian government in 1948).  Consequently, the FSIA would apply to all actions of the Holy See from the time of its commencement.

Plaintiffs cite no authority for the proposition that the Holy See may be sued in a separate, non-sovereign function as an unincorporated association and as head of an international religious organization.  They can point to no instance in which *any* sovereign's status has been disregarded on these grounds.  Indeed, to do so would entirely defeat the purpose of the FSIA. As Defendant rightly notes, under Plaintiffs' argument, potential claimants would be permitted to skirt the requirements of the FSIA merely by claiming that a sovereign was not acting as a sovereign in the "context" of a particular case, but rather was acting in some other "capacity." Such a rule would significantly undermine the uniformity that Congress expressly intended.  *See Davis v. McCourt*, 226 F.3d 506, 509 (6th Cir. 2000) ("Congress enacted the FSIA in part to create a uniform body of law by establishing federal courts as the preferred forum for cases involving foreign states."); *see also* H.R. REP. NO. 94-1487 (1976) at 32 ("In view of the

4

potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts.").  In light of the FSIA's goal of "encouraging foreign states and their instrumentalities to appear before United States courts and allowing the merits of cases involving foreign sovereigns to be considered completely and carefully," *Amernational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 976 (6th Cir. 1991), the Court will consider Plaintiffs' claims against Defendant only under the provisions of the FSIA.[1]

III.

As a foreign state, service in accordance with the provisions of the FSIA is the sole means of obtaining jurisdiction over the Holy See.  *See, e.g.*, *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("[t]he Foreign Sovereign Immunities Act provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (FSIA is "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country"); *Republic of Argentina v. Weltover*, 504 U.S. 607, 610 (1992) (FSIA establishes a "comprehensive framework for determining whether a court . . . may exercise jurisdiction over a foreign state."  The Sixth Circuit acknowledged the comprehensive nature of the FSIA in *Universal Consolidated Cos. v. Bank of China*, 35 F.3d 243, 245 (6th Cir. 1994), where it held "by making § 1330 [of the FSIA] the sole basis for jurisdiction over a foreign state, regardless of the nature of the action, Congress has provided

---

[1] It is worth noting that the Holy See's sovereign status does not guarantee its immunity from suit – that determination is made under 28 U.S.C. § 1605 on an individual basis.

5

that it is precisely the sovereign status of the defendant which determines the method in which

the defendant may be sued."

Section 1330(b) of the FSIA provides that "[p]ersonal jurisdiction over a foreign state

shall exist as to every claim for relief over which the district courts have jurisdiction under

subsection (a) where service has been made under section 1608 of this title."  Service of process

on a foreign state must be effected in strict compliance with the provisions of section 1608(a).[2]

*See, e.g.*, *Magness v. Russian Federation*, 247 F.3d 609, 611-613 (5th Cir. 2001) (the

"provisions for service under section 1608 are hierarchical, such that a plaintiff must attempt the

methods of service in the order they are laid out in the statute.").  Sections 1608(a)(1) and (2)

provide for service pursuant to a "special arrangement for service between the plaintiff and the

foreign state" or an "applicable international convention on the service of judicial documents,"

respectively.  Neither provision is applicable here.  Accordingly, Plaintiffs must serve Defendant

in accordance with section 1608(a)(3), which requires service by

> sending a copy of the summons and complaint and a notice of suit, together with a
> translation of each into the official language of the foreign state, by any form of
> mail requiring a signed receipt, to be addressed and dispatched by the clerk of the
> court to the head of the ministry of foreign affairs of the foreign state concerned.

28 U.S.C. §  1608(a)(3).  Plaintiffs bear the burden of showing validity of service.  *Youn v.*

*Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (burden of proving personal jurisdiction rests on

the party seeking to invoke the court's jurisdiction); *see also Neogen Corp. v. Neo Gen*

*Screening, Inc.*, 282 F.3d 883, 887-88 (6th Cir. 2002) (same).  Plaintiffs must make more than

just a "*prima facie* showing" of personal jurisdiction.  *Neogen*, 282 F.3d at 887.  Plaintiffs must

---

[2] In contrast, the Sixth Circuit and most other circuits have held that service on an "agency or
instrumentality" under § 1608(b) is subject to a substantial compliance standard.  *See, e.g.*, *Sherer v. Construcciones
Aeronauticas, S.A.*, 987 F.2d 1246, 1250 (6th Cir. 1993). Section 1608(b) is inapplicable here.

establish personal jurisdiction by a preponderance of the evidence.  *Serras v. First Tenn. Bank. Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989).

      The parties disagree whether the package was properly addressed to reach the Holy See's Secretary of the Section for Relations with States (the equivalent of a foreign minister), Archbishop Giovanni Lajolo.  The parties each submitted as an exhibit to their briefs the State Department profile of the Holy See,[3] which confirms that Archbishop Lajolo is the Holy See's equivalent of a foreign minister.  According to the State Department profile, the Secretariat of State is part of the Roman Curia and the Secretary of State (the equivalent of a prime minister) is Cardinal Angelo Sodano.  The Section for Relations with States is a division of the Secretariat of State.  Although Plaintiffs argue that the package was clearly addressed to the "Head of the Secretariat of State Section for Relations with States," the actual shipping label shows that the package was addressed to:

| | |
|---|---|
| Company Name: | Secretariat of State |
| Contact Name: | Head of the Secretariat of State |
| Delivery Address: | Section for Relations with States, Apostolic Palace |
| Country: | Vatican City State |
| Post/ZIP Code: | 00120. |

It is not obvious that the package was properly addressed to reach Archbishop Lajolo, and case law is clear that Plaintiffs must *strictly* comply with the requirements of section 1608(a). Improperly addressed documents do not strictly comply with the FSIA.  *See, e.g.*, *Magness*, 247 F.3d at 613 (service upon Russian prime minister rather than foreign minister, among other service problems, did not strictly comply with section 1608(a)(3)); *Gerritsen v. Consulado General de Mexico*, 989 F.2d 340 (9th Cir. 1993) (Service of a untranslated complaint upon the

_____

[3] The profile is available at http://www.state.gov/r/pa/ei/bgn/3819.htm.

President of Mexico by registered mail did not comply with § 1608(a)); *Shen v. Japan Airlines*, 918 F. Supp. 686, 691-692 (S.D.N.Y. 1994) (service upon "Japan Dept. Of Justice, Immigration Bureau," rather than to "head of the ministry of foreign affairs" did not strictly comply with § 1608(a)(3)); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153-54 (C.A.D.C. 1994) (service upon Bolivian Ambassador and Consul General in Washington, and Bolivian First Minister and Bolivian Air Force in La Paz did not strictly comply with § 1608(a)(3)); *Magnus Electronics, Inc. v. Royal Bank of Canada*, 620 F. Supp. 387 (N.D. Ill. 1985) (delivery of complaint to Argentine foreign minister by Argentine notary did not strictly comply with requirements of § 1608(a)(3)).

The requirement of strict compliance is particularly important here. That compliance is admittedly difficult and is made more so by the absence of any accommodation from the Holy See. The Court finds that Plaintiffs did not satisfy the requirements of section 1608(a)(3) because the documents were not served on the Holy See's foreign minister (the Secretary of the Section for Relations with States), Archbishop Lajolo. As it was addressed, the package appeared to be intended for the "Head of the Secretariat of State," Angelo Cardinal Sodano. Plaintiffs are not permitted to attempt service under section 1608(a)(4) until they have properly attempted service under section 1608(a)(3). Accordingly, Plaintiffs have not effected service upon the Holy See as required, and the Court lacks personal jurisdiction in this matter.

Such a defect is readily curable, however. Plaintiffs have made good faith attempts to perfect service under section 1608(a). Consequently, the Court will allow Plaintiffs an additional 60 days within which to perfect service. *See Finmar Investors Inc. v. Republic of Tadjikistan*, 889 F. Supp. 114 (S.D.N.Y. 1995) (court permitted plaintiff additional time to

perfect service under FSIA where petitioner had taken substantial steps toward full compliance);

*Lucchino v. Brazil*, 631 F. Supp 821 (E.D. Pa. 1986) (allowing plaintiff additional time to

perfect service under FSIA), *Magnus Electronics, Inc. v. Royal Bank of Canada*, 620 F. Supp.

387 (N.D. Ill. 1985) (court permitted plaintiff to cure defective service within a reasonable time);

*Resource Dynamics Int'l, Ltd. v. Gen. People's Comm.*, 593 F. Supp. 572 (N.D. Ga. 1984) (court

allowed plaintiff additional time to perfect service under FSIA).

IV.

Defendant also challenges the adequacy of Plaintiffs' notice of suit and the Latin

translations of the summons, complaint, and notice of suit.  As the Court has already determined

that service was inadequate under section 1608(a)(3) because the documents were improperly

addressed, it need not address the adequacy of the notice of suit and the Latin translations.

However, in the interest of judicial efficiency, the Court has examined both the notice of suit and

the competing declarations addressing the adequacy of the Latin translations of the complaint,

summons, and notice of suit.  The Court finds no significant problem with the content of the

notice of suit, as it provides the basic information required by the letter of section 1608(a) and 22

C.F.R. § 93.2.  Defendant's demand for detailed, treatise-like explanations of various court

documents and legal terms is unreasonable.

As for the adequacy of the Latin translations of the summons, complaint, and notice of

suit, the declarations of the parties' experts are diametrically opposed on this point.  The Court

finds that although strict compliance is the rule under section 1608(a), the translation into Latin

need not be perfect.  An apt reference is Rule 8(a)(2) of the Federal Rules of Civil Procedure,

which requires only that the complaint make a "short and plain statement of the claim showing

9

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the court noted in *Baxter v. Rose*, 305 F.3d 486, 490 (6th Cir. 2002), "in the case of a truly unclear complaint, the defendant can move for a more definite statement of the claim under Rule 12(e)." Assuming Plaintiffs properly serve Defendant within the allotted time, Defendant may seek such a clarification if it is still unclear as to the nature of Plaintiffs' claims.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record