UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-338-H

JAMES H. O'BRYAN et. al.                                                                        PLAINTIFFS

V.

HOLY SEE                                                                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiffs James O'Bryan, Donald Poppe, and Michael Turner ("Plaintiffs") filed this putative class action against the Holy See ("Defendant") in its Capacity as a foreign state and in its capacity as an unincorporated association and head of an international religious organization, alleging claims for liability under the doctrines of *respondeat superior* for acts of bishops and priests, violations of customary international law of human rights, negligence, breach of fiduciary duty, infliction of emotional distress, deceit, and misrepresentation. Plaintiffs' claims arise from sexual abuse by local Catholic priests many years ago. They seek monetary and injunctive relief.

This Court has previously ruled that the Holy See is considered a foreign state, and, therefore the Foreign Sovereign Immunity Act ("FSIA") governs any claims against it. Defendant now challenges the Court's subject matter jurisdiction under FSIA. Applying FSIA and its various exceptions present a number of novel, complex, and intertwined questions. The Court ultimately concludes that some of Plaintiffs' claims premised upon the acts and omissions of Holy See officials and employees within the United States fit within the federal court

jurisdiction under FSIA.

**I.**

Plaintiffs' factual and legal allegations are critical to the subsequent FSIA analysis. Their central thrust is that the "root [of the childhood sexual abuse] problem" is "the deliberate failure of the Holy See to take effective action to prevent childhood sexual abuse by its priests, clerics, bishops, archbishops, cardinals, agents, and employees." Plaintiffs say that the Holy See imposed a policy of secrecy surrounding incidents of childhood sexual abuse and failed to take steps to prevent abuse, punish offenders, or avoid recidivism by prior offenders. Plaintiffs make four specific allegations.

Plaintiffs allege first that the Holy See violated its international law obligations under the Universal Declaration of Human Rights and the Convention on the Rights of the Child. Second, Plaintiffs allege that Defendant, "by and through its agents, servants and employees," breached duties owed to Plaintiffs. Those duties included the duty to provide safe care, custody, and control to the minor children entrusted to Roman Catholic; the duty to warn parents of those children that the priests and other clerics to whom they entrusted their children were known perpetrators of childhood sexual abuse; and the duty to report known or suspected perpetrators of childhood sexual abuse to the appropriate authorities. Third, Plaintiffs allege that the Holy See breached fiduciary duties owed to Plaintiffs, including but not limited the duty to warn parents of children placed in the care, custody, and control of known perpetrators of childhood sexual abuse and the duty to report known or suspected perpetrators of child sexual abuse to the appropriate authorities. Fourth, Plaintiffs allege that Defendant's conduct constitutes an outrage and infliction of emotional distress. Fifth and sixth, in claims solely against the Holy See in its

capacity as an incorporated association and head of an international religious organization, Plaintiffs allege torts of deceit and misrepresentation. Plaintiffs also seek a variety of injunctive relief.

Plaintiffs actually represent two classes of persons. Class One consists of those who *have not* previously brought claims for childhood sexual abuse against a diocese, archdiocese, or other Roman Catholic body. Class Two consists of those who *have* previously brought such claims and who have released that body from further liability. With one exception, the claims of the two classes are identical. Only the Class One Plaintiffs seek to hold the Holy See responsible under the doctrine of *respondeat superior* for the conduct of its "agents, servants, employees, and ostensible agents" in the United States.

## II.

For most of our nation's history, it was our national policy to grant foreign states complete immunity from civil suits in United States courts. Beginning in 1952, this view began to change. Gradually, a view evolved that one could sue foreign states in United States courts under certain limited exceptions. The specific determinations were generally left to the State Department until 1976 when Congress enacted FSIA, which sought to codify the existing exceptions. Now, FSIA provides the sole basis for obtaining jurisdiction over a foreign state in United States courts. *Argentine Republic v. Amerada Hess Shipping Corporation*, 488 U.S. 428, 434 (1989).

Under FSIA, foreign sovereigns are presumptively immune from the jurisdiction of the United States courts. *See* 28 U.S.C. § 1604; *Byrd v. Corporacion Forestal Y Industrial de Olancho S.A.*, 182 F.3d 380, 388 (5th Cir. 1999). To assert subject matter jurisdiction over a

foreign sovereign, a court must meet one of FSIA's exceptions. *See* 28 U.S.C. § 1330(a); *see also* 28 U.S.C. § 1605. Plaintiffs have alleged that several exceptions to the FSIA apply: the waiver exception, the commercial activity exception, and the tortious conduct exception. *See* Complaint at 4-7. The first two are relatively straightforward and the Court discusses each in this Section. The tortious conduct exception requires a more lengthy discussion found in Section III.

### A.

Plaintiffs assert that the Holy See waived its FSIA immunity either "implicitly or explicitly" by "among other things" failing to raise a waiver defense over decades of settling and acquiescing in settlements of childhood sexual abuse claims. *See* Complaint at 6. The Court finds no evidence that it has done so in this suit. Indeed, the Holy See has vigorously advocated its immunity throughout this litigation.

Furthermore, under established law, Defendant has not implicitly waived immunity under FSIA. The implied waiver exception "must be construed narrowly." *See, e.g.*, *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1997). Generally, implied waiver of immunity under FSIA is found under only three circumstances:

> (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity.

*In re Republic of Philippines*, 309 F.3d 1143, 1151 (9th Cir. 2002). None of the circumstances discussed by the Ninth Circuit seems to apply here. Plaintiffs have not pled that Defendant has agreed to arbitration, that Defendant has agreed that "a contract is governed by the law of a particular country," or that Defendant has filed a pleading in this case without raising the defense

of sovereign immunity.  Therefore, the Court concludes that Plaintiff cannot meet the waiver exception to FSIA.

B.

Plaintiffs also argue that the Holy See is liable under FSIA's commercial activity exception.  The commercial activity exception contains three clauses, any one of which satisfies the exception:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the action is based upon [1] a commercial activity carried on in the United States by the foreign state; [2] or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; [3] or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  A "commercial activity" means "either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  Judge Michael Mosman of the United States District Court of the District of Oregon has authored a scholarly and exhaustively researched opinion examining the Holy See's liability under the commercial activity exception.  *See Doe v. Holy See*, 434 F.Supp.2d 925 (D.Or. 2006).  This Court generally endorses Judge Mosman's reasoning.  There are two distinctions, however, between this case and *Doe*.  First, the claim in *Doe* was related to the alleged tortious conduct of one priest; in this case, the claim encompasses a much broader range of alleged activities.  Second, the plaintiff in the *Doe* case sought liability against the Holy See under only the first and third clauses of the commercial activity exception; Plaintiff here seeks liability via all three clauses.

Like the court in *Doe*, however, the Court here concludes that the "true essence" of the claim here is not commercial.  *Id.* at 942 (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 363

(1993)). Plaintiffs' claims "clearly sounding in tort" and their complaint does not alleged "property damage, breach of contract for goods or services, product liability, copyright infringement, an indebtedness yet unpaid on a loan or other transaction, or any other theory whose true essence is commercial." *Doe*, 434 F.Supp. 2d at 942. Because the complaint fails to allege activities that are commercial in nature, the commercial activity exception does not apply.[1]

### III.

Section 1605(a) of the FSIA also provides an exception to foreign sovereign immunity for tortious acts of a foreign state or its agents. The tort exception provides:

> A foreign state shall not be immune from the juridiction of courts of the United States or of the States in any case not otherwise encompassed [by the commercial activity exception], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment.

28 U.S.C. § 1605(a)(5). A related subpart provides that the tort exception itself shall not apply to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A). The Court will discuss this "exception to the exception" in Section IV.

First, however, the Court must answer a number of questions to determine whether the tortious activity exception even applies. Does FSIA's geographic limitation restrict any claims in this case? Are the individual actors actually officials or employees of the Holy See as the tortious activity exception requires? And, if so, were those officials acting within the scope of

---

[1] No further discussion of the three prongs of the commercial activity exception is necessary because "the overarching principle explained in *Nelson* requires [the Court] to hold the activities alleged in this complaint are not commercial . . . ." *Id.* at 947.

their employment. The Court will address each question in turn.

### A.

No one disputes that the tortious activity exception is restricted to cases in which the personal injury, death, or damage to or loss of property occurs in the United States. 28 U.S.C. § 1605(a)(5). The actual personal injuries complained of in this suit – the sexual abuse of Plaintiffs and purported Class Members – meet that requirement. However, the analysis does not end here. The Seventh and D.C. Circuits have added the requirement that the tortious act or omission (in addition to the actual personal injury) must occur in the United States. *See Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 379 (7th Cir. 1985); *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1524 (D.C. Cir. 1984).[2] The Ninth Circuit has a slightly different rule, holding that "if plaintiffs allege *at least one entire tort* occurring in the United States, they may claim under § 1605(a)(5)." *Olsen v. Government of Mexico*, 729 F.2d 641, 646 (9th Cir. 1984) (emphasis added). The Sixth Circuit has not considered this additional requirement.

Subsequently, Chief Justice Rehnquist, speaking for a unanimous Supreme Court, discussed the issue in *Argentine Republic v. Amerada Hess Shipping Corp.*, *supra*. The Court did hold that § 1605(a)(5) is "limited by its terms . . . to those cases in which the damage to or loss of property occurs *in the United States*." *Id.* at 439 (emphasis in original). The Court then concluded that "[b]ecause respondents' *injury* unquestionably occurred well outside [the United States], the exception for noncommercial torts cannot apply." *Id.* at 441 (emphasis added). The

---

[2] The continued viability of the D.C. Circuit decision in *Asociacion de Reclamantes* is in some doubt. *See Burnett v. Al Baraka Investment and Development Corp.*, 292 F.Supp.2d 9, 19 n.4 (D.D.C. 2003).

Court then discussed the fact that a tort may have had effects in the United States, drawing a distinction between § 1605(a)(5) and § 1605(a)(2), under which a foreign state may be liable for commercial activities "outside the territory of the United States" that have a "direct effect" inside the United States. 28 U.S.C. § 1605(a)(2). It said that "Congress' decision to use explicit language in § 1605(a)(2), and not to do so in § 1605(a)(5), indicates that the exception in § 1605(a)(5) covers only torts occurring within the territorial jurisdiction of the United States." *Amerada Hess*, 488 U.S. at 441. While the Supreme Court's conclusions are not completely clear, its language suggests a view that both the injury and the tortious act or omission must occur in the United States. This is strong enough language for this Court to adopt the same view.

Here, Plaintiffs allege torts that occurred both outside and inside the United States. Plaintiffs concede that the *acts* of *Defendant itself* were all "committed outside the United States." *See* Plaintiffs' Response Brief at 27. Moreover, any omissions committed by the Holy See itself clearly occurred outside of the United States. Therefore, under FSIA's territorial requirements, the Holy See cannot be held liable for "its own" alleged torts (as opposed to those committed by its officials or employees), because those alleged torts all occurred outside of the United States. Holding otherwise would constitute a dramatic expansion of FSIA.

On the other hand, Plaintiffs allege that acts and omissions by agents of the Holy See inside the United States caused personal injuries. Specifically, Plaintiffs allege that Defendant's agents, officials, and employees failed to report known or suspected child abuse, failed to warn parishioners about known or suspected pedophiles in child-care positions, failed to provide adequate care to children entrusted to its churches and school, failed to maintain the premises of churches and schools in a reasonably safe condition, and failed to adequately supervise or

8

control known or suspected sexual predators. *Id.* at 17. These torts – both acts and omissions – alleged to have been committed by the "Defendant's agents, officials, and employees" *in the United States* all certainly occurred within the United States, and thus squarely fall under the tortious activity exception of FSIA.

**B.**

The critical question then becomes whether the agents discussed above – the United States-based archbishops, bishops, and other clergy of the Roman Catholic Church – are officials or employees of the Holy See as defined in FSIA. This is not an easy question to answer. FSIA allows actions against foreign sovereigns only where "money damages are sought against a foreign state for personal injury. . . occurring in the United States and caused by the tortious act or omission of that foreign state or of *any official or employee* of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5) (emphasis added).

The FSIA provides no definition of "official" or "employee." Whether the American Catholic archbishops, bishops, and other clergy are employees of the Holy See would appear to be a question of Kentucky state law. *See, e.g.*, *Randolph v. Budget Rent-A-Car,* 87 F.3d 319, 325 (9th Cir. 1996) (holding that the "question of whether Maghrabi was a Saudia employee is governed by California law"). *See also First Nat. City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 622 n.11 (1983) ("*Bancec*") ("where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances"). "Under Kentucky law the right to control is considered to be the most critical element in determining whether an agency relationship exists." *Grant v. Bill Walker Pontiac-GMC, Inc.*, 523 F.2d 1301, 1305 (6th Cir. 1975).

9

Under FSIA's burden-shifting structure, once a foreign state has made a prima facie showing of immunity, the plaintiff then bears the burden of coming forward with facts showing that one of the statutory exceptions to immunity applies. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). However, once the *asserted allegations* brings claims within the statutory exceptions to FSIA, the burden then shifts to the party asserting immunity to prove that the exceptions do not apply. *See Siderman v. Republic of Argentina*, 965 F.2d 699, 707-08 (9th Cir. 1992). The ultimate burden of persuasion remains with the foreign sovereign at all times. *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n.6 (5th Cir. 1989).

Here, Plaintiffs have alleged that the Holy See exercises substantial control over the Catholic archbishops, bishops, and other clergy based in the United States. Specifically, they assert that the Holy See has "absolute and unqualified power and control . . . over each and every priest, bishops, brother, sister, parish, diocese, archdiocese, and instrumentality of the Church." *See* Complaint at 11. These asserted allegations are sufficient to state a prima facie case that the Holy See exercises substantial control over the archbishops, bishops, and other Catholic clergy in the United States. Therefore, the burden shifts to the Holy See to prove that the exception does not apply.

The Holy See has declined to provide such evidence at this time, and therefore the Court concludes at this time that the Holy See does exercise control substantial enough to justify a conclusion that those persons are "employees" of the Holy See for the purposes of FSIA.[3]

---

[3] It is worth noting that the text of FSIA and accompanying case law does produce somewhat curious results in this analysis. Specifically, FSIA defines a "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality is futher defined as an entity which is, among other charcteristics, "neither a citizen of a State of the United States . . .

However, facts may emerge during the litigation that allow the Holy See to meet its burden, and thus the Court is willing to reexamine its ruling on this issue at an appropriate time.

### C.

Even if the bishops and clergy of the Roman Catholic Church are ultimately deemed to be officials or employees of the Holy See, the Court must address a final issue: whether those employees or officials were acting within the scope of their office or employment when they engaged in the conduct alleged here. For conduct to be within the scope of employment, the conduct must be "of the same general nature as that authorized or incidental to the conduct authorized." *Wood v. Southeastern Greyhound Lines*, 194 S.W.2d 81, 83 (1946).

To be sure, under Kentucky law, a priest's sexual misconduct is outside the scope of employment and thus his employer cannot be held liable for that misconduct. *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000). Plaintiffs' claims, however, are more nuanced than those in *Osborne*. Plaintiffs allege that Defendant's agents in the United States, pursuant to directives from Defendant Holy See, committed various acts and omissions in covering up and otherwise failing to properly address the issue of childhood sexual abuse in the Catholic Church and its entities. Those policies, Plaintiffs allege, led to their injuries. If, as Plaintiffs allege, these bishops, archbishops, and other clergy followed a written or unwritten policy established by the

---

nor created under the laws of any third country." 28 U.S.C. § 1603(b)(3). Under this definition, for instance, the Archdiocese of Louisville is certainly not an "agency or instrumentality" of a foreign state, because it is clearly a citizen of Kentucky, as it is organized as a Kentucky corporation. Therefore, while this Court concludes that, for instance, the Archbishop of Louisville is an "employee" of the Holy See for the purposes of Kentucky law, the entity over which he presides – the Archdiocese of Louisville – is not an agency or instrumentality of the Holy See. Although this result initially may seem incongruous, a hypothetical example may make it less so. Consider, for instance, a fully state-owned foreign bank which has an business entity incorporated in the United States and the president of that entity. Although that entity is not part of the foreign state under the definitions supplied by FSIA, the president of that entity may in fact still be effectively an employee of the foreign state, taking direction from the foreign government and following polices laid down by its leaders. That appears to be the case here.

Holy See, they certainly acted within the scope of their office or employment.

Plaintiffs' allegations seem to fit squarely within the *Wood* test: the negligent conduct asserted here is alleged to be not only "of the same general nature as that authorized," but in fact the actual authorized – indeed, the allegedly mandated – conduct.  Following the mandates of the Holy See is certainly conduct within the scope of the archbishops', bishops', and other clergy-members' employment.  It is unclear whether Plaintiffs allege other acts or omissions that were not part of an alleged Holy See policy.

### D.

In summary, the Court finds that the tortious activity exception does apply to claims arising from certain acts or omissions of archbishops, bishops and clergy of the Catholic Church that occurred inside the United States.  At least to the extent these persons acted pursuant to a Holy See policy, these persons were acting within the scope of their employment. Subsequent evidence may require the Court to revisit these conclusions and refine the precise acts or omissions subject to jurisdiction under FSIA.  However, the claims against the Holy See directly (i.e. as opposed to via its officials or employees) cannot be sustained because these actions or omissions occurred outside of the United States.

### IV.

Having concluded that some of Plaintiffs' claims meet the tortious conduct exception to FSIA's general rule of immunity, the Court must now consider a final issue.  This concerns "the exception within the exception."  FSIA will not allow a tort claim, even against officials or employees of the Holy See whose acts and injuries occur in the United States where those officials were exercising their discretionary function.  Called the discretionary function

exception, it exempts claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5)(A).

The discretionary function exception of the FSIA is modeled after the corresponding exception in the Federal Tort Claims Act ("FTCA") and is interpreted and applied consistent with FTCA law. *See, e.g., Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018, 1026 (9th Cir. 1987). This exception appears based upon the policy view that foreign states should be immune from the consequences of discretionary acts of employees, even within the scope of their employment. Courts have found that both the FTCA and FSIA exceptions are intended to preserve immunity "for decisions grounded in social, economic, and political policy." *In re Terrorist Attacks of September 11, 2001*, 349 F.Supp.2d 765, 794 (S.D.N.Y. 2005) (internal citations and quotations omitted). Consequently, the discretionary function exception preserves immunity for planning-level decisions, as opposed to operational-level decisions. *Id.* (citations omitted).

Defendant must satisfy two elements to avail itself of FSIA immunity under the discretionary function exception. First, the challenged action must be discretionary; that is, it must involve "an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *United States v. Gaubert*, 499 U.S. 315, 322 (1991). In the FTCA context, this prong means that if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the discretionary function exception does not apply. *Berkovitz*, 486 U.S. at 536. Second, and even if the challenged action did involve an element of judgment or choice, "a court must determine whether that judgment is of the kind the discretionary function

exception was designed to shield." *Id.*; *Gaubert*, 499 U.S. at 322-23. The Supreme Court explained this prong in *Berkovitz* in the following manner:

> The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.

*Berkovitz*, 486 U.S. at 536 (internal citations omitted).

To answer the questions posted by the two *Berkovitz* elements, the Court must define Plaintiffs' negligence claims by their constituent elements. These claims can be distilled into three principal omissions, as laid out in the Complaint: that (1) Defendants failed to *provide safe care* to children entrusted to their care; that (2) Defendants *failed to warn* parishioners that their children would be under the care of known or suspected pedophiles*;* and that (3) Defendants *failed to report* known or suspected child abuse to the appropriate authorities . *See* Complaint at 26. For the reasons that follow, only the first group of claims meets the discretionary function test and are exempt from suit.

The first claim seems to be essentially a negligent hiring claim: that the Defendant hired persons whom it knew or suspected were child sexual abusers and place them in positions where they could sexually abuse children. Applying the first prong of the *Berkovitz* test, such personnel decisions appear to involve a discretionary activity. Not surprisingly, courts have generally held that negligent hiring decisions are protected by the discretionary function exception. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 332-34 (1991) (holding that claims involving management decisions, including the "negligent selection of directors and officers," were barred by the discretionary function exception); *Vickers v. United States*, 228 F.3d 944, 950

(9th Cir. 2000) ("decisions relating to hiring . . . usually involve policy judgments of the type Congress intended the discretionary function to shield"). Although Defendant's hiring decisions may have indeed been negligent, the discretionary function exception to the FSIA protects such decisions. Therefore, Plaintiffs' negligence claim based upon the "duty to provide safe care, custody, and control" of minor children in Catholic schools and churches cannot proceed.

The second negligence claim is that Defendant failed to warn parishioners that their children would be under the care of known or suspected pedophiles, allegedly pursuant to a policy promulgated by the Holy See itself. Under the tests laid out in *Berkovitz* and *Gaubert*, the decision by the bishops, archbishops, and other clergy not to warn parishioners would appear to be a decision specifically prescribed by that policy. Therefore, their decisions do not satisfy the first prong of the *Berkovitz* test, because they did not involve "an element of judgment or choice." Therefore, the alleged failure of the Holy See's officials and employees to warn parishioners that their children would be under the care of known or suspected pedophiles is not a decision protected by the discretionary function exception.

Finally, Plaintiffs' claim that Defendant's officials and employees failed to report known or suspected perpetrators of child sexual abuse to the relevant state and local authorities. Like the failure to warn claim, Plaintiffs claim that the Holy See's employees and officials failed to report child sexual abuse to the appropriate authorities pursuant to a policy promulgated by the Holy See. Again, as alleged, this decision did not involve an "an element of judgment or choice" because an established policy required the action. Thus, liability for such decision is not barred by the discretionary function exception.

## V.

Several matters remain for discussion. First, Defendant Holy See asserts that the First Amendment bars Plaintiffs' claims. This Court has previously ruled that this litigation applies only to the Defendant as a foreign state, not as the head of an international religious organization. Foreign sovereigns do not enjoy rights derived from the United States Constitution. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 97 (D.C. Cir. 2002) ("Never has the Supreme Court suggested that foreign nations enjoy rights derived from the Constitution, or that they can use such rights to shield themselves from adverse actions taken by the United States"). Defendant Holy See cannot simultaneously seek the protections of the FSIA and the United States Constitution. Therefore, the First Amendment does not bar Plaintiffs' claims.

Second, Defendant asserts that Plaintiff's claims should be dismissed for lack of standing because Plaintiffs' injuries are not fairly traceable to the conduct of Defendant. At this stage of the litigation, Defendant's assertion is merely a conclusory statement without legal or factual support. Therefore, standing does not bar Plaintiffs' claims.

Third, Defendant asserts that the doctrine of international comity bars Plaintiffs' claims. The FSIA represents the position of the United States government on the doctrine of international comity. The FSIA is an exercise of Congress' "undisputed power to decide, as a matter of federal law, *whether and under what circumstances* foreign nations should be amenable to suit in the United States." *Universal Consol. Companies, Inc. v. Bank of China,* 35 F.3d 243, 246 (6th Cir. 1994) (emphasis added). The FSIA represents Congress' determination as to "whether and how foreign states may be sued in American courts." *Id.* The doctrine of

international comity is indeed an important one, but the FSIA is the proper framework for American courts to apply in cases where the doctrine is asserted. This Court has already addressed the FSIA, and thus any further discussion of the doctrine of international comity is unnecessary.

Fourth, Defendant asserts that the FSIA bars Plaintiff's fraud and misrepresentation claims. Defendant asserts this is the case based on the statutory language of the FSIA, which bars any claims under the FSIA "arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 1605(a)(5)(B). Fraud or misrepresentation claims *may* be made under the commercial activity exception. *See, e.g.*, *Gilson v. Republic of Ireland*, 682 F.2d 1022 (D.C. Cir. 1982). However, this Court has already determined that the commercial activity exception does not apply, and thus the language of section 1605(a)(5)(B) applies here. Thus, the plain language of FSIA bars Plaintiffs' misrepresentation and fraud claims. Plaintiffs have acknowledged as much, both in their Complaint and in their response to Defendant's motion to dismiss. *See* Plaintiffs' Response at 6 n.9 (stating that the fraud and misrepresentation claims "are no longer at issue"). Therefore, those counts are dismissed at this time.

Fifth, Defendant asserts in passing that Plaintiffs' international law claims must fail because (1) neither the Universal Declaration on Human Rights nor the Convention on the Rights of the Child creates a private right of action and (2) the Plaintiffs have failed to exhaust local remedies. *See* Defendant's Reply Brief at 7; Defendant's Response Brief at 33. Considering the former argument was brought only in the Reply Brief, this issue is not fully briefed. The Court will not consider it at this time.

**VI.**

In summary, this Court will dismiss the Plaintiffs' negligence claim that Defendant Holy See failed to provide safe care of children entrusted to the clergy. The Court also will dismiss Plaintiffs' deceit and misrepresentation claims. However, the Court will deny Defendant's motion to dismiss as to the failure to report and failure to warn negligence claims and as to all other claims asserted against the Holy See at this time. Therefore, the following claims remain against the Holy See: negligent failure to report, negligent failure to warn, breach of fiduciary duty (insofar as that breach involved the failure to report and the failure to warn), outrage and emotional distress, violations of the customary law of human rights, and claims under the doctrine of *respondeat superior*. The Court is open to reconsidering its decision that the United States-based bishops, archbishops, and other clergy of the Roman Catholic Church are employees of the Holy See for purposes of FSIA if further contrary evidence emerges during the litigation.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record