UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.: 3:04 CV 338-H

JAMES H. O'BRYAN, DONALD E. POPPE, and
MICHAEL J. TURNER, Individually and on Behalf
of All Similarly Situated Persons                                           PLAINTIFFS


        vs.


HOLY SEE, in its Capacity as a Foreign State
(State of the Vatican City), and in its Capacity
as an Unincorporated Association and Head
of an International Religious Organization                                   DEFENDANT


**DEFENDANT HOLY SEE'S MEMORANDUM IN SUPPORT OF
SECOND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.    The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.    State Court Action Against the Archbishop . . . . . . . . . . . . . . . . . . . . . . 7

       C.    News Media Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       A.    As Plaintiffs' Counsel Have Acknowledged, Turner's Claims
             are Subject to Dismissal Given the Ruling of this Court and
             the Sixth Circuit that Jurisdiction Can Only Lie Over Vicarious
             Liability Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             1.    Turner Fails to State a Claim Because He Does Not Allege
                   a *Respondeat Superior* Theory of Liability Based Upon the Acts
                   or Omissions of Putative Employees in the United States . . . . . . . . . . . . . 8

             2.    As Plaintiffs Have Conceded, Turner's Claims are
                   Subject to Dismissal Given His Prior Release of the Holy
                   See's Putative Employee in the United States . . . . . . . . . . . . . . . . . . . . . 9

             3.    Turner's Claims Must be Dismissed under the Doctrine
                   of *Res Judicata* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.    O'Bryan and Poppe's Claims Must be Dismissed for Failure to
             Comply with Kentucky's One-Year Statute of Limitations . . . . . . . . . . . . . . . 13

             1.    Neither O'Bryan Nor Poppe Complied with Kentucky's
                   One-Year Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             2.    For O'Bryan and Poppe, Kentucky's One-Year Statute of
                   Limitations Cannot Be Tolled for Fraudulent Concealment as
                   a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                   a.    O'Bryan and Poppe Cannot Invoke the *Secter* Tolling
                         Rule Because There was No Statutory Duty to Report
                         Child Sexual Abuse by Priests Until Years After the
                         Alleged Abuse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                         i.    The *Secter* Rule Applies Only Where There is a
                               Violation of a Statutory Duty to Report Sexual
                               Abuse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii.     There was No Statutory Duty to Report
at the Time of O'Bryan's Abuse in the 1920s. . . . . . . . . 17

iii.    There was No Statutory Duty Requiring Bishops
to Report Child Sexual Abuse by Priests at the Time
of Poppe's Abuse in the Early 1960s. . . . . . . . . . . . . . . . 17

    (a)    First-Generation Child Abuse Reporting
Statutes: Background. . . . . . . . . . . . . . . . . . . . . . 18

    (b)    The 1964 Kentucky Statute Did Not
Mandate the  Reporting of Child Sexual
Abuse. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    (c)    The 1964 Kentucky Statute Did Not
Mandate Reporting by Bishops or Diocesan
Personnel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    (d)    The 1964 Kentucky Statute Did Not
Mandate Reporting of Abuse by Priests.. . . . . . . 24

b.    Plaintiffs Cannot Toll the Statute of Limitations Because
There was No Possible Concealment of Any Cause of
Action Beyond April 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

c.    The Tort Exception's Misrepresentation Exclusion
Prohibits Plaintiffs' Attempt to Toll the Statute of
Limitations Based Upon Fraudulent Concealment. . . . . . . . . . . 27

d.    Because the Holy See is Not a "Resident" of Kentucky,
Plaintiffs Cannot Rely Upon KRS 413.190(2)'s
"Indirect Obstruction" Theory of Fraudulent Concealment . . . . . 28

e.    O'Bryan and Poppe Do Not Allege the Required Facts
Under Rule 9(b) Supporting a Theory of Fraudulent
Concealment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

f.    O'Bryan and Poppe Cannot Avail Themselves of the
Doctrine of Fraudulent Concealment Because They Did
Not Act with Due Diligence as a Matter of Law. . . . . . . . . . . . . 31

i.     The Complaint Nowhere Alleges Any Facts
Showing that O'Bryan and Poppe Acted with
Diligence in Filing Suit . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ii.    In Light of the 193 Cases Filed in the Jefferson
Circuit Court Against the Archbishop of Louisville
in  2002, O'Bryan and Poppe Did Not Act With
Diligence in Failing to File Suit Against the
Archbishop's Putative Employer Until More Than
a Year Later. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

iii.    In Light of the Media Attention Surrounding the
Louisville Archdiocese Case in Particular and
Clergy Sex Abuse in General, O'Bryan and Poppe
Did Not Act With Diligence. . . . . . . . . . . . . . . . . . . . . . . 33

iv. Plaintiffs Cannot Rely on *Crimen* to Show Due Diligence and, In Any Event, Plaintiffs Did Not Act With Diligence Given that They Allege that They Did Not File Suit Until Eleven Months After *Crimen* Was Reported in the Media.. . . . . . . . . . . . . . . . 34

C. All of Plaintiffs' Claims Fail as a Matter of Law. . . . . . . . . . . . . . . . . . . . . . . 35

1. Plaintiffs' Claims Must be Dismissed Because the Complaint Does Not Allege that the Holy See's Putative Employees in the United States Knew or Had Reason to Know of the Priests' Propensities to Commit Sexual Abuse.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

2. Plaintiffs' International Law Claims Fail as a Matter of Law Because Neither the Universal Declaration of Human Rights nor the Convention on the Rights of the Child Creates a Private Right of Action.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

3. Plaintiffs Have Abandoned Their Outrage Claim, Which, in Any Event, Fails as a Matter of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

4. Plaintiffs' Failure to Report Claim Fails as a Matter of Law.. . . . . . . . . 38

5. Plaintiffs' Fiduciary Duty Claim Fails as a Matter of Law. . . . . . . . . . . 40

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# TABLE OF AUTHORITIES

## CASES

*Adams v. Cooper Indus., Inc.*,
No. Civ.A. 03-476-JBC, 2006 WL 897234 (E.D. Ky. Apr. 4, 2006). . . . . . . . . . . . . . . 31

*Adams v. Ison*,
249 S.W.2d 791 (Ky. 1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29,31

*Akron Presform Mold Co. v. McNeil Corp.*,
496 F.2d 230 (6th Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Anderson v. Bd. of Educ. of Fayette County*,
616 F. Supp. 2d 662 (E.D. Ky. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,17,32

*Arbaugh v. Bd. of Educ.*,
591 S.E.2d 235 (W. Va. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Arlinghaus v. Gallenstein*,
115 S.W.3d 351 (Ky. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Arturet Velez v. R.J. Reynolds Tobacco Co.*,
429 F.3d 10 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 n.8

*Ashcroft v. Iqbal*,
— U.S. —, 129 S. Ct. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4,21 n.15,37

*Aslani v. Sparrow Health Sys.*,
No. 1:08-cv-298, 2009 WL 3711602 (W.D. Mich. Nov. 3, 2009). . . . . . . . . . . . . . . . . 37

*Assoc. of Bituminous Contractors, Inc. v. Andrus*,
581 F.2d 853 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Assoc. of Cleveland Fire Fighters v. City of Cleveland*,
502 F.3d 545 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Azerot v. Roman Catholic Bishop of Louisville*,
No. 2004-CA-000666-MR, 2005 WL 2899483 (Ky. App. Nov. 4, 2005).. . . . 27,33,34,35

*Ball v. Union Carbide Corp.*,
385 F.3d 713 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28,31,34

*Barren River State Boat Dock, Inc. v. K&R Mfg. Co.*,
167 S.W.3d 676 (Ky. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,16 n.13,18,21 n.15

*Billups v. Kinsella*,
No. 08-CV-3365, 2009 WL 4679947 (N.D. Ill. Dec. 4, 2009). . . . . . . . . . . . . . . . . . . . 35

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Booker v. GTE.net LLC*,
350 F.3d 515 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36,37

*Borne v. N.W. Allen County Sch. Corp.,*
    532 N.E.2d 1196 (Ind. App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Brown v. Sammons,*
    743 S.W.2d 23 (Ky. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,24

*Browning v. Levy,*
    283 F.3d 761 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Buckminster v. Arnold,*
    No. 3:08CV-131-H, 2008 WL 2168882 (W.D. Ky. May 23, 2008). . . . . . . . . . . . . 36,37

*Bybee's Ex'r v. Poynter,*
    77 S.W. 698 (Ky. App. 1903). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Campbell v. Upjohn Co.,*
    676 F.2d 1122 (6th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Caudill v. Arnett,*
    481 S.W.2d 668 (Ky. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 n.11

*Chrysalis House, Inc. v. Tackett,*
    283 S.W.3d 671 (Ky. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Canton v. Maynard,*
    766 F.2d 236 (6th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*City of E. Chicago v. E. Chicago Second Century, Inc.,*
    908 N.E.2d 611 (Ind. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*City of Lexington v. Edgerton,*
    159 S.W.2d 1015 (Ky. App. 1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Somerset v. Bell,*
    156 S.W.3d 321 (Ky. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cisneros v. Aragon,*
    485 F.3d 1226 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Cissell v. KFC Corp.,*
    No. 2006-CA-001596-MR, 2007 WL 3227571 (Ky. App. Nov. 2, 2007).. . . . . . . . . . . 38

*Cole v. Kelley,*
    438 F. Supp. 129 (C.D. Cal. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Combs v. Int'l Ins. Co.,*
    354 F.3d 568 (6th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Conley v. Gibson,*
    355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16 n.13

*Copeland v. Humana of Ky., Inc.,*
    769 S.W.2d 67 (Ky. App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Davidson v. Am. Freightways, Inc.,*
    25 S.W.3d 94 (Ky. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
  523 F.2d 389 (6th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,32,33

*DeNune v. Consol. Capital of N. Am., Inc.*,
  288 F. Supp. 2d 844 (N.D. Ohio 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Diminnie v. United States*,
  728 F.2d 301 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Divita v. Ziegler*,
  No. 2005-CA-001343-MR, 2007 WL 29390 (Ky. App. Jan. 5, 2007). . . . . . . . . . . . . 11

*Dodd v. Dyke Indus., Inc.*,
  518 F. Supp. 2d 970 (W.D. Ky. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Doe v. Brouillette*,
  906 N.E.2d 105 (Ill. App. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Doe v. Hartz*,
  52 F. Supp. 2d 1027 (N.D. Iowa 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Doe v. Suroor*,
  No. 3:05CV-728-H, 2007 WL 1467143 (W.D. Ky. May 17, 2007). . . . . . . . . . . . . . . 29

*EEOC v. Ky. State Police Dep't*,
  80 F.3d 1086 (6th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Egerer v. Woodland Realty, Inc.*,
  556 F.3d 415 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Emberton v. GMRI, Inc.*,
  299 S.W.3d 565 (Ky. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,16,31,32

*Evans v. Pearson Enter., Inc.*,
  434 F.3d 839 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Fischer v. Metcalf*,
  543 So.2d 785 (Fla. Dist. Ct. App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39 n.23

*Fisher v. Lynch*,
  531 F. Supp. 2d 1253 (D. Kan. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.6

*Flores v. S. Peru Copper Corp.*,
  414 F.3d 233 (2d Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Floyd v. Roman Catholic Diocese Of Owensboro*,
  No. 2007-CA-002011-MR, 2008 WL 2550661 (Ky. App. June 27, 2008). . . . . . . . . . 31

*Francis v. Roman Catholic Bishop of Louisville*,
  No. 03-CI-004331, slip op. (Nov. 26, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Friedman v. Estate of Presser*,
  929 F.2d 1151 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Gailor v. Alsabi*,
     990 S.W.2d 597 (Ky. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Garcia v. Commonwealth*,
     185 S.W.3d 658 (Ky. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gibson v. Am. Bankers Ins. Co.*,
     289 F.3d 943 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 n.13

*Godby v. Commonwealth*,
     187 S.W.3d 857 (Ky. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gomez v. Great Lakes Steel Div.*,
     803 F.2d 250 (6th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Goodman v. United States*,
     324 F. Supp. 167 (M.D. Fla. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Hall Street Assoc., LLC v. Mattel, Inc.*,
     552 U.S. 576 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hammond v. United States*,
     388 F. Supp. 928 (E.D.N.Y. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Hargis v. Baize*,
     168 S.W.3d 36 (Ky. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Harrison v. Edison Bros. Apparel Stores, Inc.*,
     924 F.2d 530 (4th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hazel v. Gen. Motors Corp.*,
     863 F. Supp. 435 (W.D. Ky. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,25,27,31,33

*Hensley Mfg. v. ProPride, Inc.*,
     579 F.3d 603 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Herm v. Stafford*,
     663 F.2d 669 (6th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Hill v. Dep't. of Labor*,
     65 F.3d 1331 (6th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hoover v. Langston Equip. Assoc., Inc.*,
     958 F.2d 742 (6th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Hughes v. Vanderbilt Univ.*,
     215 F.3d 543 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26,33,34

*In re Merrill Lynch Tyco Research Sec. Litig.*,
     No. 03 CV 4080(MP), 2004 WL 305809 (S.D.N.Y. Feb. 18, 2004). . . . . . . . . . . . . . . 8 n.7

*Issa v. Provident Funding Group, Inc.*,
     No. 09-12595, 2010 WL 538298 (E.D. Mich. Feb. 10, 2010). . . . . . . . . . . . . . . . . . 29

*Jackson v. City of Columbus*,
     194 F.3d 737 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Johnson Controls, Inc. v. Exide Corp.,*
   136 F. Supp. 2d 945 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Jones v. Bock,*
   549 U.S. 199 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kansas State Bank & Tr. Co. v. Specialized Transp. Serv., Inc.,*
   819 P.2d 587 (Kan. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39 n.23

*Kelly v. Marcantonio,*
   187 F.3d 192 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Ky. Laborers Dist. Health & Welfare Trust v. Hill & Knowlton, Inc.,*
   24 F. Supp. 2d 755 (W.D. Ky. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Kilduff v. United States,*
   248 F. Supp. 310 (E.D. Va. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Knaus v. Great Crossings Baptist Church,*
   No. 2009-CA-000141-MR, 2010 WL 476046 (Ky. App. Feb. 12, 2010) . . . . . . . . . 25,31

*Kosak v. United States,*
   465 U.S. 848 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Krugh v. Miehle Co.,*
   503 F.2d 121 (6th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,20,23

*Loose Leaf Warehouse v. Howard,*
   305 Ky. 500 (Ky. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Louisville Safety Council, Inc. v. Hack,*
   414 S.W.2d 877 (Ky. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lukovsky v. City and County of San Francisco,*
   535 F.3d 1044 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Luttrell v. Commonwealth,*
   554 S.W.2d 75 (Ky. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 n.15

*Marquay v. Eno,*
   662 A.2d 272 (N.H. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39 n.23

*McDermott Int'l, Inc. v. Wilander,*
   498 U.S. 337 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McDonald's Corp. v. Ogborn,*
   — S.W.3d —,  2009 WL 3877533 (Ky. App. Nov. 20, 2009) . . . . . . . . . . . . . . . . . . . . 36

*McGinnis v. Roman Catholic Diocese of Covington,*
   No. 2002-CA-001610-MR, 2003 WL 22111094 (Ky. App. Sept. 12, 2003) . . . . . . . . . 31

*Metz v. United States,*
   788 F.2d 1528 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Midland Mgmt. Corp. v. Computer Consoles Inc.,*
   837 F. Supp. 886 (N.D. Ill. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Miller v. Thacker*,
    481 S.W.2d 19 (Ky. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,35

*Mooney v. Cent. Motor Lines*,
    222 F.2d 572 (6th Cir. 1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moyers v. Roman Catholic Bishop of Louisville*,
    No. 2004-CA-001886-MR, 2005 WL 3116116 (Ky. App. Nov. 23, 2005). . . . . . . . . . . 33

*Munday v. Mayfair Diagnostic Lab.*,
    831 S.W.2d 912 (Ky. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,16,29

*Nair v. Oakland County Cmty. Mental Health Auth.*,
    443 F.3d 469 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.1

*Nat'l Parks Conserv. Ass'n v. Tenn. Valley Auth.*,
    480 F.3d 410 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.1

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,
    336 F.3d 495 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.4

*Noble v. Chrysler Motors Corp.*,
    32 F.3d 997 (6th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*O'Bryan v. Holy See*,
    556 F.3d 361 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,10 n.8,36,38

*Ott v. Midland-Ross Corp.*,
    523 F.2d 1367 (6th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16 n.13

*Overstreet v. Thomas*,
    239 S.W.2d 939 (Ky. 1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Owen of Georgia, Inc. v. Shelby County*,
    648 F.2d 1084 (6th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24 n.16

*Payne-Barahona v. Gonzales*,
    474 F.3d 1 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Perry v. S.N.*,
    973 S.W.2d 301 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Phillips Petroleum Co. v. Johnson*,
    155 F.2d 185 (5th Cir. 1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Pinney Dock & Transport Co. v. Penn Cent. Corp.*,
    838 F.2d 1445 (6th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Polk v. Wimsatt*,
    689 S.W.2d 363 (Ky. App. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rauch v. Day & Night Mfg. Corp.*,
    576 F.2d 697 (6th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,14

*Reese v. Gen. Am. Door Co.*,
    6 S.W.3d 380 (Ky. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Renkel v. United States,*
    456 F.3d 640 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Renteria v. United States,*
    452 F. Supp. 2d 910 (D. Ariz. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Richardson v. DLC, Inc.,*
    No. 2005-CA-001635-MR, 2007 WL 490911 (Ky. App. Feb. 16, 2007). . . . . . . . . . . . 10

*Richter v. United States,*
    551 F.2d 1177 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Rigazio v. Archdiocese of Louisville,*
    853 S.W.2d 295 (Ky. App. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Robinson v. Ehrler,*
    691 S.W.2d 200 (Ky. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rock v. Voshell,*
    397 F. Supp. 2d 616 (E.D. Pa. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Roman Catholic Diocese of Covington v. Secter,*
    966 S.W.2d 286 (Ky. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,12,15,17,29

*Rufra v. U.S. Bankcorp, Inc.,*
    No. 3:05CV-594-H, 2006 WL 2178278 (W.D. Ky. July 28, 2006).. . . . . . . . . . . . . 36,37

*Simmons v. S. Cent. Skyworker's, Inc.,*
    936 F.2d 268 (6th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Skaggs v. Fyffe,*
    187 S.W.2d 281 (Ky. 1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Smith v. Bob Smith Chevrolet, Inc.,*
    275 F. Supp. 2d 808 (W.D. Ky. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12,20,23

*Sosa v. Alvarez-Machain,*
    542 U.S. 692 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*St. Clair v. Bardstown Transfer Line,*
    221 S.W.2d 679 (Ky. 1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Steinfeld v. Jefferson Cty. Fiscal Court,*
    229 S.W.2d 319 (Ky. 1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,23

*Sword v. Scott,*
    169 S.W.2d 825 (Ky. App. 1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Tenamee v. Schmukler,*
    438 F. Supp. 2d 438 (S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*3D Enter. Contracting Corp. v. Louisville & Jefferson County Metro. Sewer Dist.,*
    174 S.W.3d 440 (Ky. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Brown,*
    536 F.2d 117 (6th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Kubrick,*
    444 U.S. 111 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Thompson/Center Arms Co.,*
    504 U.S. 505 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Waddle v. Galen of Ky., Inc.,*
    131 S.W.3d 361 (Ky. App. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Whitley County Bd. of Educ. v. Meadors,*
    444 S.W.2d 890 (Ky. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wood v. Carpenter,*
    101 U.S. 135 (1879). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Woods v. Simpson,*
    46 F.3d 21 (6th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Young v. Carran,*
    289 S.W.3d 586 (Ky. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## STATUTES AND RULES

28 U.S.C. § 1605(a)(5)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

28 U.S.C. § 2680(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1964 KY. ACTS ch. 85. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,39 n.23

1964 KY. ACTS ch. 85, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,20,23,39

1964 KY. ACTS ch. 85, § 2(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,20,22

1964 KY. ACTS ch. 85, § 2(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1970 KY. ACTS ch. 270. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1972 KY. ACTS ch. 232, §§ 1-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1972 KY. ACTS ch. 232. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39 n.23

1972 KY. ACTS ch. 232(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

1972 KY. ACTS ch. 232(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,23

1976 KY. ACTS ch. 142 § 2(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

FED. R. CIV. P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 n.2

FED. R. CIV. P. 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 n.2,15,30,32

FED. R. CIV. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.1

FED. R. CIV. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FED. R. CIV. P. 12(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 n.4

FED. R. CIV. P. 12(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

KRS § 199.335.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

KRS § 403.720(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 n.15

KRS § 413.140(1)(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,17

KRS § 413.190(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,17,28,29

KRS § 446.070.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

KRS § 500.080(15). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 n.15

## OTHER AUTHORITIES

1983 CODE c.373. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26 n.18

1983 CODE c.377, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26 n.18

19 DEP'T ST. BULL. 751 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38 n.22

Adelson, *Slaughter of the Innocents – A Study of Forty-Six Homicides
    in Which the Victims Were Children*, 264 N.E. J. MED. 1345 (1961). . . . . . . . . . . 19 n.14

Barta & Smith, *Willful Trauma to Young Children – A Challenge
    to the Physician*, 2 CLINICAL PEDIATRICS 545 (1963). . . . . . . . . . . . . . . . . . . . . . 19 n.14

CHILDREN'S BUREAU, U.S. DEPT. OF HEALTH, EDUCATION AND WELFARE,
    THE ABUSED CHILD-PRINCIPLES AND SUGGESTED LANGUAGE FOR
    THE REPORTING OF THE PHYSICALLY ABUSED CHILD (1963). . . . . . . . . . . . . . . . . . . . 18

Daly, *Willful Child Abuse and State Reporting Statutes*,
    23 UNIV. MIAMI L.R. 283 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20,24

De Francis, *Child Abuse – The Legislative Response*,
    44 DENV. L.J. 3 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25 n.17

Fraser, *A Pragmatic Alternative to Current Legislative Approaches
    to Child Abuse*, 12 AM. CRIM. L. REV. 103 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Galdston, *Observations on Children Who Have Been Physically
    Abused and Their Parents*, 122 AM. J. OF PSYCHIATRY 440 (1965). . . . . . . . . . . . 19 n.14

Ganley, *The Battered Child: Logic in Search of Law*,
    8 SAN DIEGO L. REV. 364 (1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Harper, *The Physician, the Battered Child and the Law*,
    31 PEDIATRICS 899 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 n.14

Kempe, Silverman, Steele, Droegemueller & Silver,
    *The Battered Child Syndrome,* 181 J.A.M.A. 17 (1962). . . . . . . . . . . . . . . . . . . . . . 19

*Legislation – The Battered Child: Florida's Mandatory
    Reporting Statute*, 18 U. FLA. L. REV. 503 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

McHenry, Girdany & Elmer, *Unsuspected Trauma with Multiple Skeletal Injuries During Infancy and Childhood*, 31 Pediatrics 903 (1963). . . . . . . 19 n.14

Meriwether, *Child Abuse Reporting Laws: Time for a Change*, 20 Fam. L.Q. 141 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20,21,24

Paulsen, *Child Abuse Reporting Laws: The Shape of the Legislation*, 67 Colum. L. Rev. 1 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,21,25

Paulsen, *The Legal Framework for Child Protection*, 66 Colum. L. Rev. 679 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,24

Paulsen, *et al.*, *Child Abuse Reporting Laws – Some Legislative History*, 34 Geo. Wash. L. Rev. 482 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24,25

Redden, *The Federal and State Response to the Problem of Child Maltreatment in America: A Survey of the Reporting Statutes*, 2 Nova L.J. 13 (1978). . . . . . . . . . . . . 18

Sussman, *Reporting Child Abuse: A Review of the Literature*, 8 Fam. L.Q. 245 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,24

Woolley, *The Pediatrician and the Young Child Subjected to Repeated Physical Abuse*, 62 J. Pediatrics 628 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19 n.14

## I.      INTRODUCTION

Under this Court and the Sixth Circuit's decision, all of Plaintiffs' remaining claims depend upon a *respondeat superior* theory of liability.  As Plaintiffs' counsel have conceded, that narrowing of the Complaint effectively dismissed Plaintiff Michael J. Turner from the case.

With regard to the other two Plaintiffs, their claims are barred by Kentucky's one-year statute of limitations.  O'Bryan alleges abuse in the 1920s and Poppe alleges abuse in the early 1960s. Plaintiffs' sole theory of tolling depends upon the doctrine of fraudulent concealment set forth in *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. App. 1998) – a theory that requires a violation of Kentucky's child abuse reporting statute.  Given that there was no reporting statute at the time of O'Bryan's abuse, and that the reporting statute in force at the time of Poppe's abuse did not mandate that a bishop report sexual abuse of a minor by a priest, all of Plaintiffs' claims are barred as a matter of law under Kentucky's statute of limitations.

As set forth below, this is but one of several reasons why Plaintiffs failed to comply with Kentucky's statute of limitations.  Given the narrowing of the case to claims based upon a theory of *respondeat superior*, it is simply beyond cavil that the statute of limitations bars Plaintiffs' suit.

Even apart from the statute of limitations bar, Plaintiffs' claims fail on the face of the Complaint.  Plaintiffs never allege a key fact underlying their remaining claims – prior knowledge by the Archbishop of Louisville ("Archbishop") that the priests in question posed a danger to minors. And Plaintiffs' novel theories of liability – including, *inter alia*, invocation of the Convention for the Rights of the Child – fail as a matter of law.

After six years of litigation, this lawsuit must be dismissed.

## II.     SUMMARY OF ARGUMENT

The narrowing of the case to a theory of *respondeat superior* is fatal to Plaintiffs' claims. Given the sole remaining theory, all of the claims are subject to dismissal under Rule 12(b)(6).[1]

---

[1] The Holy See respectfully submits that the Court should adjudicate the Rule 12(b)(6) motion prior to reaching the factual Rule 12(b)(1) issues.  *See Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) (holding that federal courts "have discretion to address the sovereign-immunity defense and the merits in whichever order they prefer."); *see also*, *e.g.*, *Nat'l Parks Conserv. Ass'n v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007) (holding

Plaintiff Michael J. Turner is subject to dismissal for three reasons. First, and most simply, Turner does not allege a *respondeat superior* theory in the Complaint – indeed, that is the only difference between Turner's claims and those of the other two Plaintiffs. Second, Turner alleges that he released the Holy See's putative employee; under Kentucky law – and as conceded by Plaintiffs' counsel – such a release bars Turner's claims against the Holy See as putative employer. Third, the Jefferson Circuit Court dismissed with prejudice Turner's claims against the Archbishop. Under *res judicata*, the prior dismissal with prejudice bars Turner's claims against the Holy See.

Turner's acknowledged dismissal from this lawsuit profoundly impacts the Rule 12(b)(6) analysis. That is chiefly because the only tolling theory that Plaintiffs have identified relies upon *Secter*, which in turn requires a violation of the statutory duty to report child abuse under Kentucky law. There was no statutory duty to report at the time of O'Bryan's abuse in the 1920s; as a result, the statute of limitations for O'Bryan expired decades before he filed suit in 2004. As for Poppe, who alleges abuse in the early 1960s, Kentucky's first-generation child abuse reporting statute in 1964 only required reporting by physicians for serious physical abuse committed by parents. Kentucky law did not mandate reporting of sexual abuse by a priest until 1972 – again, years after the statute of limitations as to Poppe would have run. In the absence of a legally-sustainable theory of tolling, both O'Bryan and Poppe's claims are barred.

O'Bryan and Poppe have other major problems under Kentucky's one-year statute of limitations. First, there can be no tolling of the statute of limitations because there was no possible concealment of any vicarious liability cause of action beyond April 2002, when over 190 lawsuits were filed in state court against the Archbishop. Second, the FSIA tort exception's misrepresentation exclusion precludes Plaintiffs' attempt to rely upon a fraudulent concealment theory of tolling. Third, because the Holy See is not a "resident" of Kentucky, Plaintiffs cannot rely upon KRS 413.190(2)'s "indirect obstruction" theory of fraudulent concealment. Fourth, Plaintiffs do not allege with the requisite particularity facts sustaining their theory of fraudulent concealment. Finally, Plaintiffs did not, as a matter of law, comply with their duty of due diligence when they filed suit in

---

that district court had discretion, under *Nair*, to reach statute of limitations issue while "reserving adjudication of . . . immunity defense").

June 2004, long after over 190 cases were filed in state court against the putative employee and after judicially-noticeable widespread publicity in the local and national media.

Even if Plaintiffs could overcome all of these hurdles, their claims still would fail as a matter of law. Plaintiffs never allege that the Holy See's putative employee had prior knowledge that the priests in question posed a danger to children – a fact that courts have repeatedly held must be alleged to sustain the claims pled here. Moreover, Plaintiffs' international law claims fail because neither the Universal Declaration of Human Rights nor the Convention on the Rights of the Child creates a private right of action. Further, Plaintiffs abandoned their outrage claim and it is, in any event, insufficient as a matter of Kentucky law. Plaintiffs' failure to report claim fails because no such cause of action is cognizable under Kentucky law. And, finally, Plaintiffs' fiduciary duty claim fails because Kentucky law precludes the creation of civil duties based upon religious relationships, and because Plaintiffs have failed to allege any breach of fiduciary duty.

In short, the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

## III.   LEGAL STANDARD[2]

The Supreme Court has recently clarified the standard applicable to Rule 12(b)(6) challenges in federal court. *See Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 n.4 (6th Cir. 2009); *Assoc. of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). *Twombly* and *Iqbal* require courts to perform a two-part test. *Iqbal*, 129 S. Ct. at 1950. First, a court must identify the allegations in the complaint not entitled to the presumption of truth. Mere "conclusions" unsupported by additional factual allegations do not enjoy the presumption of truth. *Id.*; *see also id.* at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."); *Hensley Mfg.*, 579 F.3d at 611 ("conclusory" and

---

[2] This section is limited to the pleading requirements under Rule 8(a). Rule 9(b)'s requirements, which govern the analysis of whether Plaintiffs sufficiently allege fraudulent concealment for statute of limitations purposes, are discussed below. *See infra* at 15, 30-32.

"formulaic recitation" of elements of cause of action "insufficient to survive a motion to dismiss").[3] While Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.  A complaint is not sufficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 1949 (brackets in original).  In addition, required factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Second, a court must analyze the well-pleaded facts that survive under the first prong to determine whether the complaint "states a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.  A complaint has "facial plausibility" when the factual content pled allows a court to draw the "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A "mere possibility" that the defendant is liable is not enough.  *Id.* at 1950; *see also*, *e.g.*, *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir.2008) ("The court should not assume facts that could and should have been pled, but were not.").  Determining whether a complaint is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  Both factual and legal contexts are relevant.  *Id.* at 1952, 1954; *see also id.* at 1947-49.

## IV.   RELEVANT PROCEDURAL BACKGROUND

The procedural background of this case is lengthy and complex.  *See* Def. Holy See's Status Conf. Stmt., DN 138, at 3-11.  For purposes of this motion, however, the key procedural development is that only Plaintiffs' vicarious liability claims based upon the acts or omissions of putative employees in the United States remain under the jurisdictional ruling of the Sixth Circuit. The Sixth Circuit, like this Court, rejected Plaintiffs' direct theories of liability against the Holy See, holding that such claims were barred by the tort exception's requirement that the tortious act or omission occur entirely within the United States.  *See O'Bryan v. Holy See*, 556 F.3d 361, 382 (6th Cir. 2009) ("We join the Second and D.C. Circuits in concluding that in order to apply the tortious act exception, the 'entire tort' must occur in the United States . . . ."); *see also id.* at 385 ("[A]ny

---

[3] Emphasis is added, and citations and internal quotations are omitted, throughout this brief, except as otherwise indicated.

portion of plaintiffs' claims that relies upon acts committed by the Holy See abroad cannot survive."). Because the Sixth Circuit also determined that a vicarious liability claim based upon the priests' sexual abuse itself was barred under Kentucky law, *id.* at 385, the only claims that survived the Sixth Circuit's decision were those based upon a tortious act or omission of putative supervising employees in the United States. *See id.* at 386; *see also id.* at 387-88; Mem. Op., DN 82, at 7-9.

In addition, both this Court and the Sixth Circuit dismissed Plaintiffs' negligent failure to provide safe care/custody claim and misrepresentation/deceit claims. Op., DN 82, at 14-15, 17; *O'Bryan*, 556 F.3d at 387, 388. As a result, the only claims that survived were Plaintiffs' negligent failure to warn, negligent failure to report, breach of fiduciary duty, violation of international law, and outrage/intentional infliction of emotional distress claims – all based upon a *respondeat superior* theory of liability.

## V.    FACTUAL BACKGROUND[4]

### A.    The Complaint

Plaintiffs filed their putative class action against the Holy See on June 4, 2004. The Complaint is divided into two parts, each relating to a different putative class. Plaintiffs James O'Bryan and Donald Poppe seek to represent Class I, which consists of "all persons who have *not* previously brought claims against an agent or servant of the . . . Holy See in the United States . . . arising out of the childhood sexual abuse he or she suffered at the hands of a Roman Catholic priest," and who "have *not* released any agent, servant or instrumentality of the . . . Holy See from further liability." Class Action Complaint ("Complaint" or "Cmplt.") ¶ 53. Class I alleges *respondeat superior* liability. Cmplt. ¶¶ 68-69.

Plaintiff Michael Turner seeks to represent Class II, which consists of "all persons who have

---

[4] This factual background will address the Complaint and materials that are appropriate for the taking of judicial notice. *See* Def. Holy See's Request for Judicial Notice, filed herewith; *see also*, *e.g.*, *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."). To the extent that the Court denies the Holy See's request for judicial notice, or any portion thereof, the Court should exclude the relevant documents and not consider arguments that rely upon any excluded materials. *Cf.* FED. R. CIV. P. 12(d).

previously brought legal claims against an agent or servant of the . . . Holy See in the United States

. . . arising out of the childhood sexual abuse he or she suffered at the hands of a Roman Catholic

priest," who "have received compensation from an agent, servant or instrumentality of the . . . Holy

See in the United States, including the Commonwealth of Kentucky; and *who also have released that*

*agent, servant or instrumentality of the . . . Holy See from further liability.*"  Cmplt. ¶ 54.  Class II

does not allege *respondeat superior* liability.  *Compare* Cmplt. ¶¶ 68-69 *with* ¶¶ 54, 103-24; *see also*

Mem. Op., DN 82, at 3 ("Only the Class One Plaintiffs seek to hold the Holy See responsible under

the doctrine of *respondeat superior* for the conduct of its 'agents, servants, employees, and

ostensible agents' in the United States.").

Although Plaintiffs filed suit in 2004, the alleged tortious conduct occurred decades before.

In particular, O'Bryan alleges abuse in "the 1920s," Poppe in the "early 1960s," and Turner in the

"mid 1970s."  Cmplt. ¶¶ 63-64, 100.  Despite the long passage of time between the tortious conduct

and the filing of suit, and despite the Complaint's acknowledgment that Plaintiffs' injuries stretch

back to their childhood (Cmplt. ¶¶ 67, 102), the Complaint contains no explicit allegations regarding

the applicable statute of limitations.  The closest such allegation is that the Holy See's "directives,"

which "prohibited the reporting of child sexual abuse to law enforcement authorities, constitute an

act or acts of concealment or misleading or obstructive conduct under statutory law, common law,

and customary international law."  Cmplt. ¶ 51.  In that regard, Plaintiffs claim that the 1962

document (which Plaintiffs have identified as *Crimen sollicitationis* ("*Crimen*")) "was first

discovered and made public in July, 2003 by news media in the United States and throughout the

world."  Cmplt. ¶ 45.  Notably, the Complaint nowhere alleges that *Crimen* in particular had any role

in causing their injuries;[5] instead, the Complaint contains the formulaic recitation that the Holy See's

"directives . . . [were] a substantial factor in bringing about each [Plaintiffs'] abuse."  Cmplt. ¶ 48.

Finally, while the Complaint alleges negligent failure to warn, negligent failure to report,

---

[5] In fact, while the Complaint alleges that *Crimen* contained a set of "procedural norms"
(Cmplt. ¶ 45), it also concedes that "over at least the last sixty (60) years, there has never been
a single prosecution or official investigation of a priest or cleric within the Archdiocese of
Louisville or any diocese in the Commonwealth of Kentucky." Cmplt. ¶ 48.

breach of fiduciary duty, outrage, and violations of international law, the Complaint nowhere alleges a core element to each of those claims – that the Holy See's putative employee in the United States knew or had reason to know that the priests who abused Plaintiffs posed a danger to minors. Cmplt., *passim*.

### B.    State Court Action Against the Archbishop

In 2002, approximately 193 plaintiffs in Jefferson County, Kentucky, filed suit against the Archbishop – the Holy See's putative employee – alleging negligence based upon abuse by Catholic priests ("Jefferson County Archdiocese Litigation"). *See* Holy See's Request for Judicial Notice ("Req. Jud. Not.") at 2-3; *see also* Declaration of Byron H. Done in Support of Request for Judicial Notice ("Done Decl."), Exh. B; *id.* ¶ 5.[6]  Plaintiffs' counsel William McMurry represented Michael Turner in the Jefferson County Archdiocese Litigation. Done Decl., Exh. A.

In contrast to the federal Complaint, Turner's state court complaint set forth the following allegations regarding statute of limitations:

> During the 1960s and 1970s, the Defendant Church had in their employ a priest, Louis E. Miller, who served the Defendant Church by providing management to various churches and schools in both Louisville, Jefferson County, Kentucky and Pewee Valley, Oldham County, Kentucky, including but not limited to Holy Spirit, St. Athanasius, St. Elizabeth of Hungary, and St. Aloysius.

> During the 1960s and 1970s, Miller engaged in a pattern and course of conduct of sexually abusing children under the age of 18, including adolescent altar boys, which conduct was known by agents, servants and employees of the Defendant Church, creating a duty pursuant to KRS 199.335 [now KRS 620.030], to report said child abuse to law enforcement authorities.

> At all times material hereto, the Defendant Church's failure to report said child abuse to law enforcement authorities constitutes an act of concealment under KRS 413.190(2) and/or misleading or obstructive conduct, thereby tolling the statute of limitations. . . .

> On Sunday, April 14, 2002, the Plaintiff, Michael J. Turner, first learned from an article published in the Louisville *Courier-Journal* that Miller had been "transferred out of two parishes because of alleged [sexual] misconduct. Those were St. Athanasius in the 1960s and St. Aloysius in the 1970s." Until the publication of this

---

[6] The Court may take judicial notice of matters of public record, including court documents, without converting the motion into one for summary judgment. *See, e.g., Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1266 n.8 (D. Kan. 2008) ("On the motion to dismiss, the Court may take judicial notice of matters of public record – including court documents – without converting the motion into one for summary judgment.").

article on April 14, 2002, the Plaintiff had no information to support a belief that the Defendant Church had prior knowledge of Miller's sexually abusive propensities.

First Amended Complaint in *Turner v. Roman Catholic Bishop of Louisville*, filed June 14, 2002, ¶¶ 3-5, 9 ("Turner State Court Cmplt."), Done Decl., Exh. A.

After reaching settlement, the Jefferson County Archdiocese Litigation – including the case brought by Turner against the Archbishop – was dismissed with prejudice. *See* Order, Aug. 25, 2003, at 22, Done Decl., Exh. B ("IT IS HEREBY ORDERED AND ADJUDGED that each of the above captioned cases be and the same *are hereby dismissed with prejudice* as settled.").

### C.     News Media Coverage

From 2002 to 2003, the Jefferson County Archdiocese Litigation received widespread media coverage in Kentucky and nationally. *See* Done Decl., Exhs. K-L, P, T-U, W, AA-BB, DD-HHHH.[7] In addition, the period between January 1, 2002 and June 1, 2003 was marked by an extraordinary level of national media coverage regarding clergy sexual abuse, with a particular focus on the Boston Archdiocese. *Id.*, Exh. C-CC.

## VI.   ARGUMENT

### A.     As Plaintiffs' Counsel Have Acknowledged, Turner's Claims are Subject to Dismissal Given the Ruling of this Court and the Sixth Circuit that Jurisdiction Can Only Lie Over Vicarious Liability Claims

As set forth above, this Court and the Sixth Circuit permitted only Plaintiffs' claims based upon a *respondeat superior* theory of liability to proceed. Under the terms of the Complaint, and as Plaintiffs' counsel have repeatedly conceded, that decision effectively dismissed Turner from this action.

### 1.     Turner Fails to State a Claim Because He Does Not Allege a *Respondeat Superior* Theory of Liability Based Upon the Acts or Omissions of Putative Employees in the United States

Given the dismissal by this Court and the Sixth Circuit of all of Plaintiffs' direct liability

---

[7] As stated in the Holy See's request for judicial notice, the news media articles – which are being introduced simply to show that the articles exist, rather than for the truth of any matter asserted therein – are properly the subject of judicial notice. *See* Req. Jud. Not. at 3-5; *see also*, *e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, No. 03 CV 4080(MP), 2004 WL 305809, at *4 n.3 (S.D.N.Y. Feb. 18, 2004) (stating that a court "may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment").

claims, Turner fails to state a claim for the simple reason that he does not allege a *respondeat superior* theory of liability based upon the acts or omissions of putative Holy See employees in the United States.  Op., DN 82, at 3.  In fact, Turner's failure to allege a *respondeat superior* theory of liability is a central feature of the Complaint – it marks the only difference between the allegations of Class I and Class II.   *Compare* Cmplt. ¶¶ 68-69 *with* ¶¶ 54, 103-24.  Because Turner does not allege a *respondeat superior* theory of liability, and because only such a theory is possible under the jurisdictional holdings of this Court and the Sixth Circuit, Turner fails to state a claim.

> **2.     As Plaintiffs Have Conceded, Turner's Claims are Subject to Dismissal Given His Prior Release of the Holy See's Putative Employee in the United States**

Because the Complaint affirmatively alleges that Turner released the Holy See's putative employee in the United States, Turner's claims are subject to dismissal as a matter of Kentucky law.

The defense of release can be considered on a Rule 12(b)(6) motion when the plaintiff has affirmatively alleged the release in the Complaint.  *See*, *e.g.*, *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978) ("[T]he prevailing rule is that a complaint showing on its face that relief is barred by an affirmative defense is properly subject to a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."); *Rock v. Voshell*, 397 F. Supp. 2d 616, 626 (E.D. Pa. 2005) ("A release can be asserted as a basis for [a] motion to dismiss when it has been incorporated into the complaint.").   Here, the Complaint affirmatively alleges that Turner has "previously brought legal claims against an agent or servant of the . . . Holy See, in the United States, including the Commonwealth of Kentucky, arising out of the childhood sexual abuse he . . . suffered at the hands of a Roman Catholic priest," that he has "received compensation from an agent, servant or instrumentality of the . . . Holy See, in the United States, including the Commonwealth of Kentucky," and that he has "*released that agent, servant or instrumtentality of the . . . Holy See from further liability.*"  Cmplt. ¶ 54.

Under established Kentucky law, the release of an employee from liability operates as against the employer.  *See*, *e.g.*, *Waddle v. Galen of Ky., Inc.*, 131 S.W.3d 361, 366 (Ky. App. 2004) ("[S]ince the alleged primary tortfeasor, [the employee], was discharged from further liability, the alleged secondary tortfeasor, [the employer], must also be deemed to be released from further

responsibility."); *see also*, *e.g.*, *Copeland v. Humana of Ky., Inc.*, 769 S.W.2d 67, 69 (Ky. App. 1989); *Richardson v. DLC, Inc.*, No. 2005-CA-001635-MR, 2007 WL 490911, at *1 (Ky. App. Feb. 16, 2007). As a result, given that only a vicarious liability theory based upon the acts or omissions of the Holy See's putative employee in the United States remains, and given that Turner has released said putative employee, Turner fails to state a claim upon which relief can be granted.

There does not appear to be any dispute between the parties on this issue. In fact, Plaintiffs' counsel have conceded as much on a number of occasions:

> What Judge Heyburn did was to say that . . . our claims for direct liability against the Vatican would not be allowed to proceed, only vicarious liability for what the bishops did. The problem with that analysis is that it guts – it takes – it takes half . . . of the people who have already been involved in litigation, who may have settled with a bishop. . . they will be forever forbidden from going after the master. *If you settle with the mas – the – the servant, you cannot go after the master if all you have is vicarious liability.* . . .

Sixth Circuit Oral Argument Transcript at 30; *see also* Transcript of Motion Hearing, Dec. 6, 2006, DN 74, at 5 (stating that "*there is no vicarious liability if you have already settled with the agent of the Pope*"). Indeed, after the Holy See recently raised this issue (DN 138, at 13), Plaintiffs' counsel stated that "I think we all understand your ruling and that of the Sixth Circuit and its implications on the claims made by the Turner class. I think we can agree on certain things, and one would be that yes, the release is broad enough to encompass the Holy See." Transcript of Tel. Status Conf., Feb. 11, 2010, DN 140, at 10.[8]

In short, based on the Complaint, on Kentucky law, and on the repeated concessions of Plaintiffs' counsel, Turner is subject to dismissal because he previously released the Holy See's putative employee and therefore can no longer sustain a *respondeat superior* theory of liability.

### 3.     Turner's Claims Must be Dismissed under the Doctrine of *Res Judicata*

Because Turner's lawsuit against the Holy See's putative employee in Jefferson Circuit Court was dismissed with prejudice, Turner's claims here are barred by the doctrine of *res judicata*.

The defense of *res judicata* is properly raised by a Rule 12(b)(6) motion to dismiss. *See*, *e.g.*,

---

[8] A party's concessions are properly considered on a facial motion to dismiss. *Arturet Velez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 (1st Cir. 2005); *see also O'Bryan*, 556 F.3d at 388 n.15 (relying upon Plaintiffs' concession regarding certain claims no longer being at issue).

*City of Canton v. Maynard*, 766 F.2d 236, 239 (6th Cir. 1985) (per curiam) (affirming district court's rule 12(b)(6) dismissal on *res judicata* grounds); *DeNune v. Consol. Capital of N. Am., Inc.*, 288 F. Supp. 2d 844, 852 (N.D. Ohio 2003) (stating that there is "overwhelming case law" allowing *res judicata* to be adjudicated on a Rule 12(b)(6) motion to dismiss). The Jefferson Circuit Court dismissed with prejudice Turner's lawsuit against the Archbishop on August 28, 2003. *See* Order, Aug. 25, 2003, at 22, Done Decl., Exh. B; *see also, e.g.*, *Jackson v. City of Columbus*, 194 F.3d 737, 745-46 (6th Cir. 1999) (holding that a district court can properly consider state court records without converting a Rule 12(b)(6) motion to a Rule 56 motion).

The doctrine of *res judicata* "provides that a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in a prior action." *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 813 (W.D. Ky. 2003). Under Kentucky law, there are three requirements to apply *res judicata*: "First, there must be identity of the parties. Second, there must be identity of the two causes of action. Third, the action must be decided on its merits." *Id.* All three requirements are met here.

First, there is identity of the parties. Plaintiff Turner is, of course, the same plaintiff who filed suit in the Jefferson Circuit Court action and was the subject of the same court's dismissal with prejudice. Done Decl., Exhs. A and B; *see also* Complaint ¶ 54. Moreover, given that any *respondeat superior* theory of liability against the Holy See presupposes an employment relationship with the Archbishop,[9] there exists identity of parties as between the Holy See in this action and the defendant in the Jefferson Circuit Court. *See Overstreet v. Thomas*, 239 S.W.2d 939, 941 (Ky. 1951) ("[T]he rule is general and well settled that where the liability, if any, of a principal or master to a third person is purely derivative and dependent entirely on the principle of *respondeat superior*, a judgment on the merits in favor of the agent or servant . . . is *res judicata* in favor of the principal or master though he was not a party to the action."); *see also, e.g.*, *Divita v. Ziegler*, No. 2005-CA-001343-MR, 2007 WL 29390, at *9 (Ky. App. Jan. 5, 2007); *Mooney v. Cent. Motor Lines*, 222 F.2d 572, 573 (6th Cir. 1955).

---

[9] For purposes of this section, it is assumed *arguendo* that Turner alleges a *respondeat superior* theory of liability. *See supra* at 8-9.

Second, there is identity of the two causes of action.  Under Kentucky law, courts "look beyond the legal theories asserted to see if the two claims stem from the same underlying factual circumstances." *Smith*, 275 F. Supp. 2d at 813.  The Kentucky courts' approach "requires the Court to look at a 'claim' in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories or variant forms of relief flowing from these theories, that may be available to the plaintiff." *Id.*  Although Plaintiffs' counsel have crafted new claims for the federal complaint, the case against the Holy See – like that against the Archbishop – is based upon Turner's abuse, and upon the failure to warn of and report the abusive priest's propensities. *Compare* Cmplt. ¶¶ 100, 102-22 *with* Turner State Court Cmplt. ¶¶ 8, 11-13, Done Decl., Exh. A.  In other words, particularly given that the only possible claims are those based upon a theory of vicarious liability (*see supra* at 4-5), the "factual circumstances" underlying the federal and state claims are identical.

Third, as a matter of Kentucky law, dismissal with prejudice "has the effect of a judgment on the merits constituting the cause *res judicata*." *Polk v. Wimsatt*, 689 S.W.2d 363, 364 (Ky. App. 1985); *see also, e.g.*, *3D Enter. Contracting Corp. v. Louisville & Jefferson County Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005); *cf. Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534-35 (4th Cir. 1991).

All three of the requirements for *res judicata* are therefore met.  Given the dismissal with prejudice of Turner's state court action against the Archbishop – the Holy See's putative employee – Turner's current action against the Holy See, as limited by this Court and the Sixth Circuit, is squarely barred.

Just as the limitation of the case to *respondeat superior* effectively dismissed Turner from the case, the dismissal of Turner has a major impact for purposes of Rule 12(b)(6).  Turner is the only one of the three plaintiffs who alleges abuse in the mid-1970s or later – a time when sexual abuse of a minor by a priest was required to be reported in Kentucky.  As will be shown below, sexual abuse by a priest was not required to be reported during the 1920s (O'Bryan) or the early 1960s (Poppe).  The result is that there cannot be, for O'Bryan and Poppe, any tolling of the statute of limitations under *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. App.

1998) – Plaintiffs' only known theory of tolling.[10]

### B.     O'Bryan and Poppe's Claims Must be Dismissed for Failure to Comply with Kentucky's One-Year Statute of Limitations

According to the Complaint, O'Bryan waited over seventy years after the alleged abuse to file suit, while Poppe waited forty years.  Because neither complied with Kentucky's one-year statute of limitations, and because no theory of tolling applies, O'Bryan and Poppe's claims are barred.

### 1.     Neither O'Bryan Nor Poppe Complied with Kentucky's One-Year Statute of Limitations

Statutes of limitations "are vital to the welfare of society and are favored in the law." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975).  The statutes, which "are found and approved in all systems of enlightened jurisprudence," represent "a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117 (1979).  Statutes of limitations "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Id.*; *see also Dayco Corp.*, 523 F.3d at 394 ("Stale conflicts should be allowed to rest undisturbed after the passage of time has made their origins obscure and the evidence uncertain."); *Hazel v. Gen. Motors Corp.*, 863 F. Supp. 435, 438 (W.D. Ky. 1994) ("Limitations are designed chiefly to bring a finality to the legal process.").

In light of the important policies underlying statutes of limitations, such statutes "should not be lightly evaded." *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573 (Ky. 2009); *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992) (same); *Miller v. Thacker*, 481 S.W.2d 19, 21-22 (Ky. 1972) (stating that Kentucky "is among the strictest jurisdictions" in regarding the statute of limitations for personal injury claims); *Reese v. Gen. Am. Door Co.*, 6 S.W.3d 380, 383 (Ky. App. 1998) ("[T]he statutory duty to develop and file one's case diligently has been interpreted as absolute

---

[10] In light of the fact that the dismissal of Turner appears unopposed, the rest of this brief will focus on O'Bryan and Poppe for the sake of clarity.  However, with the exception of arguments related to the failure to report abuse, all of the arguments below apply to Turner as well.

except in the most compelling of circumstances."); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 590 (6th Cir. 2004) ("The courts do not . . . , unless compelled by the force of former decisions, give a strained construction to evade the effect of those statutes.  By requiring those who complain of injuries to seek redress by action at law, within a reasonable time, a salutary vigilance is imposed, and an end is put to litigation.").

If "the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Rauch*, 576 F.2d at 702 ("[I]t is uniformly held that the defense of limitations may be raised by a Rule 12 motion to dismiss when . . . the time alleged in the complaint shows that the action was not brought within the statutory period."); *Simmons v. S. Cent. Skyworker's, Inc.*, 936 F.2d 268, 269-70 (6th Cir. 1991) (affirming dismissal under Rule 12(b)(6) for failure to comply with Kentucky's one-year statute of limitations); FED. R. CIV. P. 12(f) ("An allegation of time or place is material when testing the sufficiency of a pleading.").

The Complaint, filed on June 4, 2004, alleges that O'Bryan "was sexually abused, molested and assaulted by a Roman Catholic priest in the 1920s" and that Poppe "was sexually abused, molested and assaulted by a Roman Catholic priest in the early 1960s."  Cmplt. ¶¶ 63-64.  Under Kentucky law, the applicable statute of limitation is one year.  KRS § 413.140(1)(a); *Simmons*, 936 F.2d at 269; *Anderson v. Bd. of Educ. of Fayette County*, 616 F. Supp. 2d 662, 668 (E.D. Ky. 2009). Given that O'Bryan and Poppe's claims accrued decades ago,[11] the claims must be dismissed "unless some circumstance of record may be said to have tolled the statute." *Louisville Safety Council, Inc. v. Hack*, 414 S.W.2d 877, 879 (Ky. 1966).

### 2. For O'Bryan and Poppe, Kentucky's One-Year Statute of Limitations Cannot Be Tolled for Fraudulent Concealment as a Matter of Law

While the Complaint contains no express allegations regarding Kentucky's statute of limitations, it generally alleges that the Holy See's "directives" constitute "acts of concealment or misleading or obstructive conduct under statutory law, common law, and customary international

---

[11] *See, e.g., Caudill v. Arnett*,  481 S.W.2d 668, 669 (Ky. 1972) (stating that the plaintiff's "cause of action came into existence or accrued on the day he was injured"); *see also* Cmplt. ¶¶ 67, 102 (alleging that Plaintiffs suffered injuries "from their childhood to the present").

law." Cmplt. ¶ 51.  In response to the Holy See's discussion of the statute of limitations in its brief in opposition in the Supreme Court proceeding, Plaintiffs relied on *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286 (Ky. App. 1998), calling it "the controlling case in Kentucky." Pltfs' Reply Brief in *O'Bryan v. Holy See*, at 2, Done Decl., Exh. IIII.  Plaintiffs stated that *Secter* "ruled that 'where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct.'" *Id.*[12]

A plaintiff who relies "on equitable tolling through fraudulent concealment ha[s] the burden of demonstrating its applicability." *Hill v. Dep't of Labor*, 65 F.3d 1331, 1336 (6th Cir. 1995).  To toll the statute, the plaintiff "must allege in the complaint" that: (1) the defendant wrongfully concealed the conduct that constitutes the cause of action; (2) the defendant's concealment prevented plaintiff from discovering the cause of action within the limitations period; and (3) until discovery plaintiff exercised due diligence in trying to find out the cause of action.  *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988); *see also*, *e.g.*, *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1002 (6th Cir. 1994).  It is "settled that equitable tolling based on fraudulent concealment is to be narrowly applied." *Hill*, 65 F.3d at 1336; *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 233 (6th Cir. 1974) ("All presumptions are against [the plaintiff], since his claim to exemption is against the current of the law and is founded on exceptions."). Moreover, a plaintiff's fraudulent concealment allegations must comply with the "particularity" requirements of Rule 9(b).  *See* FED. R. CIV. P. 9(b); *see also*, *e.g.*, *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126 (6th Cir. 1982).[13]

---

[12] Turner, represented by Plaintiffs' counsel, had also previously alleged tolling in the Jefferson Circuit Court proceeding for failure to comply with Kentucky's reporting requirement. *See* Turner State Court Cmplt. ¶ 5, Done Decl., Exh. A ("At all times material hereto, the Defendant Church's failure to report said child abuse to law enforcement authorities constitutes an act of concealment under KRS 413.190(2) and/or misleading or obstructive conduct, thereby tolling the statute of limitations.").

[13] It is worth noting that the Sixth Circuit previously held that dismissal for failure to comply with the statute of limitations is proper "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002) (emphasis in original).  That statement was based upon

   **a.**   **O'Bryan and Poppe Cannot Invoke the *Secter* Tolling Rule Because There was No Statutory Duty to Report Child Sexual Abuse by Priests Until Years After the Alleged Abuse**

      **i.**   **The *Secter* Rule Applies Only Where There is a Violation of a Statutory Duty to Report Sexual Abuse**

Kentucky's fraudulent concealment tolling statute provides that when a personal injury cause of action "accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced." KRS § 413.190(2). As the Kentucky Supreme Court has stated, "this tolling statute has been on our books for many years and is essentially a recognition in law of an equitable estoppel or estoppel in pais to prevent a fraudulent or inequitable resort to a plea of limitations." *Emberton*, 299 S.W.3d at 573.

The *Emberton* court recently reaffirmed that "in order to toll the limitations period, the concealment envisioned by KRS 413.190(2) must represent an affirmative act and cannot be assumed – *i.e.*, it must be active, not passive." *Id.* As a result, "mere silence . . . is insufficient and cannot support its application." *Id.* There is, however, a recognized exception under Kentucky law: if a statute requires a duty to disclose, and a party fails to comply with the statute's requirements, section 413.190(2)'s requirements are met. Kentucky courts have applied this exception in a variety of circumstances. *See, e.g.*, *Munday*, 831 S.W.2d at 915 (applying section 413.190(2) where the defendant had failed to comply with the statutory requirement of filing a certificate of assumed name); *St. Clair v. Bardstown Transfer Line*, 221 S.W.2d 679, 680-81 (Ky. 1949) (statute of limitations tolled because defendant failed to comply with statute requiring the making of a report at the scene of an automobile accident).

In *Secter*, the Kentucky Court of Appeals held that the exception applied where a diocese failed to report abuse as required by Kentucky's child abuse reporting statute. The plaintiff in *Secter* attended a school operated by the diocese from 1972 until 1976, during which time he was abused

---

*Conley v. Gibson*, 355 U.S. 41, 45 (1957). *See, e.g.*, *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975). The *Conley* standard was, of course, recently overturned by the Supreme Court. *Twombly*, 550 U.S. at 562-63.

by a teacher. *Secter*, 966 S.W.3d at 287. The diocese knew of other incidents of abuse both before and during the time of the abuse of the plaintiff. *Id.* at 290. Relying on *Munday*, the *Secter* court held that "where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct." *Id.* at 291. The *Secter* court held that "KRS 199.335, the statute in effect when these incidents occurred, imposed a legal duty on any person to report child abuse to law enforcement authorities." *Id.*; *see also Emberton*, 299 S.W.3d at 574 ("[I]n *Secter*, . . . legal duty was imposed by statute to disclose acts of child abuse to law enforcement authorities."). The court held that the diocese "failed to comply with this duty" and concluded that "such failure constitutes evidence of concealment under KRS 413.190(2)." *Id.*; *see also Anderson*, 616 F. Supp. 2d at 671 ("The *Secter* court stated that where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct.").

### ii. There was No Statutory Duty to Report at the Time of O'Bryan's Abuse in the 1920s

Kentucky's first child abuse reporting statute was enacted on March 19, 1964. 1964 KY. ACTS ch. 85, codified at KRS § 199.335. O'Bryan alleges sexual abuse in the 1920s, when there was no statutory duty to report. Cmplt. ¶ 63. Since there could be no statutory violation, there can be no tolling under the *Secter* rule and the statute has long since run for O'Bryan. KRS § 413.140(1)(a).

### iii. There was No Statutory Duty Requiring Bishops to Report Child Sexual Abuse by Priests at the Time of Poppe's Abuse in the Early 1960s

Plaintiffs have long assumed that there was a statutory duty to report sexual abuse by priests under Kentucky's first child abuse reporting statute. That position, adopted by the Plaintiffs in the Complaint and elsewhere, is deeply mistaken. It reflects a basic misunderstanding of the history of child abuse reporting laws in the United States.

The original Kentucky reporting statute provided that "[a]ny *physician, osteopathic physician, or other person* having reasonable cause to suspect that a child under the age of 18 brought to his attention has had *serious physical injury or injuries* inflicted upon him other than by accidental means *by a parent or other person responsible for his care*, shall report or cause reports

to be made in accordance with the provisions of this Act."  1964 KY. ACTS ch. 85, § 2(1); *see also* 1964 KY. ACTS ch. 85, § 1 ("*Physicians* who become aware of such cases shall report them to the appropriate police authority").  The Kentucky legislature amended the statute in 1970, to require reporting where a minor "appears to be endangered from malnutrition." 1970 KY. ACTS ch. 270.  In 1972, the legislature again amended the statute, this time adding "*sexual abuse*" to the list of reportable events.  1972 KY. ACTS ch. 232(2).  The 1972 amendment also added a "nurse, teacher, school administrator, social worker, coroner [and] medical examiner" to the list of reporters, and removed the limitation that the abuse be inflicted "by a parent or other person responsible for his care." *Id.*

For Poppe, who was abused in the "early 1960s," the question is whether a bishop or other diocesan official was required to report sexual abuse by a priest under the 1964 version of the statute. Such an issue is purely one of law.  *City of Somerset v. Bell*, 156 S.W.3d 321, 326 (Ky. App. 2005); *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

Determining the scope of Kentucky's first child abuse reporting statute requires a proper understanding of its historical context.  *See Bell*, 156 S.W.3d at 326 ("When interpreting a statute, it is appropriate to consider the contemporaneous facts and circumstances which shed intelligible light on the intention of the legislative body."); *Krugh v. Miehle Co.*, 503 F.2d 121, 125 (6th Cir. 1974) (stating that a "glance at the past will (often) reveal the considerations that led to the enactment of the legislation before us").

That historical context reveals a clear fact: the first generation of reporting statutes, in Kentucky and elsewhere, targeted the specific problem of non-reporting by physicians of severe physical abuse of children by their parents.  They did not cover the conduct alleged here.

> **(a)     First-Generation Child Abuse Reporting Statutes: Background**

In the 1940s and 1950s, scientific literature – based upon increasingly sophisticated x-ray technology – sparked the attention of the medical community regarding "unrecognized trauma" described as "subdural hematomas and multiple bone abnormalities" in children.  Redden, *The Federal and State Response to the Problem of Child Maltreatment in America: A Survey of the*

*Reporting Statutes*, 2 NOVA L.J. 13, 20-21 (1978).  In 1962, five physicians published the classic paper *The Battered Child Syndrome*, which identified parental physical abuse as the cause of the previously-unrecognized trauma.  *Id.* at 21; *see also* Kempe, Silverman, Steele, Droegemueller & Silver, *The Battered Child Syndrome,* 181 J.A.M.A. 17 (1962) (defining the battered child syndrome as a term characterizing "a clinical condition in young children who have received serious physical abuse, generally from a parent or foster parent").[14]  The discovery led to a national media outcry and to the development of draft child abuse reporting legislation by the Children's Bureau of the United States Department of Health, Education and Welfare.  Daly, *Willful Child Abuse and State Reporting Statutes*, 23 UNIV. MIAMI L.R. 283, 284-85 (1969); Paulsen, *Child Abuse Reporting Laws: The Shape of the Legislation*, 67 COLUM. L. REV. 1, 1 (1967); CHILDREN'S BUREAU, U.S. DEPT. OF HEALTH, EDUCATION AND WELFARE, THE ABUSED CHILD-PRINCIPLES AND SUGGESTED LANGUAGE FOR THE REPORTING OF THE PHYSICALLY ABUSED CHILD (1963).  The draft legislation "served as the general model for similar statutes rapidly enacted into law in twenty states by 1964 and in a total of 49 states by 1966."  Sussman, *Reporting Child Abuse: A Review of the Literature*, 8 FAM. L.Q. 245, 246-47 (1974); *see also* Paulsen, *The Legal Framework for Child Protection*, 66 COLUM. L. REV. 679, 711 (1966) ("In the history of the United States, few legislative proposals have been so widely adopted in so little time.").  Kentucky was one of the many states that adopted the first-generation child abuse reporting statute.

While the speed of the enactments was impressive, the "first generation of reporting statutes was narrow in scope[,]" focused on the problem that had been identified in the literature: physicians' failure to report severe physical abuse inflicted on children by their parents.  Meriwether, *Child*

---

[14] The *Battered Child Syndrome* was the most famous of many medical journal articles that discussed the problem of severe parental physical abuse. *See, e.g.*, Galdston, *Observations on Children Who Have Been Physically Abused and Their Parents*, 122 AM. J. OF PSYCHIATRY 440 (1965); Woolley, *The Pediatrician and the Young Child Subjected to Repeated Physical Abuse*, 62 J. PEDIATRICS 628 (1963); McHenry, Girdany & Elmer, *Unsuspected Trauma with Multiple Skeletal Injuries During Infancy and Childhood*, 31 Pediatrics 903 (1963); Harper, *The Physician, the Battered Child and the Law*, 31 PEDIATRICS 899 (1963); Adelson, *Slaughter of the Innocents – A Study of Forty-Six Homicides in Which the Victims Were Children*, 264 N.E. J. MED. 1345 (1961); Barta & Smith, *Willful Trauma to Young Children – A Challenge to the Physician*, 2 CLINICAL PEDIATRICS 545 (1963).

*Abuse Reporting Laws: Time for a Change*, 20 FAM. L.Q. 141,142 (1986); *Legislation – The Battered Child: Florida's Mandatory Reporting Statute*, 18 U. FLA. L. REV. 503, 503 (1965). Over the next decade, commentators and legislators determined that the first-generation reporting statutes were not broad enough, both in terms of the categories of reporters and in the types of abuse to be reported. *See, e.g.*, Daly, *supra*, at 303 ("While these hastily enacted statutes have supplied a starting point, it is clear that a number of them are in need of revision to reflect the lessons learned over the last five years."); Meriwether, *supra*, at 142 ("As clinical literature and experience accrued, states refined the statutes, generally broadening both the class of persons required to report and the requirements governing the reporting of child abuse cases."). That led to changes such as those found in the 1970 and 1972 amendments of the Kentucky statute, including the addition of "sexual abuse" and the expansion of the list of mandatory reporters. Those changes did not, however, occur until years after Poppe's abuse – by which time the statute of limitations had already run.

### (b)     The 1964 Kentucky Statute Did Not Mandate the Reporting of Child Sexual Abuse

The 1964 Kentucky statute required only the reporting of "serious physical injury or injuries." 1964 KY. ACTS ch. 85, § 2(1); *see also* 1964 KY. ACTS ch. 85, § 2(2) (requiring the report to contain "the nature and extent of the child's injuries (including any evidence of previous injuries)"); 1964 KY. ACTS ch. 85, § 1 ("The purpose of this Act is to provide for the protection of children who had had physical injury inflicted upon them . . . .").

"We presume when interpreting a statute that the legislature intended for it to mean exactly what it says." *Chrysalis House, Inc. v. Tackett*, 283 S.W.3d 671, 674 (Ky. 2009). A "statute should be read and construed as a whole." *Smith*, 275 F. Supp. 2d at 817. Moreover, given that the reporting statute was a penal provision, the term "serious physical injury" must be narrowly construed. *See, e.g.*, *Godby v. Commonwealth*, 187 S.W.3d 857, 861 (Ky. App. 2005) ("Penal statutes are not to be extended by construction, but must be limited to cases clearly within the language used."); *see also Krugh*, 503 F.2d at 125 (applying rule of strict construction of criminal statute in civil case); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 518 (1992) (same).

Kentucky law did not deem "sexual abuse" to be "serious physical injury."[15]  As set forth above, the term derived from the type of parental physical abuse that the first-generation reporting statutes was intended to address.  *See supra* at 18-20; *see also*, *e.g.*, Ganley, *The Battered Child: Logic in Search of Law*, 8 SAN DIEGO L. REV. 364, 366 (1971) (stating that battered children suffered from broken bones, damage to internal organs, brain damage, and brain hemorrhages).  The term "serious physical injury," as used in the original reporting statute, was intended as a limiting factor that preserved the privacy of the family sphere.  Meriwether, *supra*, at 156 ("Supporters of the 'serious' requirement argue that the limitation is justified by the state's limited resources and the family's privacy right against unwarranted intrusions by the state."); *see also* Paulsen (1967), *supra*, at 12.

The clearest indication that "serious physical injury" did not include sexual abuse under Kentucky law is found in the 1972 amendment, which added "sexual abuse" to the list of reportable acts.  1972 KY. ACTS ch. 232, §§ 1-3.  Kentucky's amendment to include sexual abuse was part of a national trend in the early 1970s, which followed a major study in 1969 that "persuasively argued that sexual abuse may be as prevalent and may present as great a problem as the more traditional physical abuse of children."  Fraser, *A Pragmatic Alternative to Current Legislative Approaches to Child Abuse*, 12 AM. CRIM. L. REV. 103, 107 n.11 (1974); *see also* Redden, *supra*, at 36 (stating that "[t]he trend nationally has been in the direction of broadening the definition" of abuse to include, *inter alia*, sexual abuse).  As a matter of statutory interpretation under Kentucky law, the amendment is strongly presumed to have effected a change in the law.  *See Brown v. Sammons*, 743 S.W.2d 23, 24 (Ky. 1988) ("It is beyond dispute that whenever a statute is amended, courts must presume that the Legislature intended to effect a change in the law."); *see also Whitley County Bd. of Educ. v.*

---

[15] Kentucky law has defined "serious physical injury" to mean "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ."  KRS § 500.080(15); *see also Luttrell v. Commonwealth*, 554 S.W.2d 75, 79 (Ky. 1977).  To this day, Kentucky statutes distinguish "serious physical injury" from "sexual abuse."  *See* KRS § 403.720(1).  Moreover, while it is true that certain types of sexual abuse can result in serious physical injury, no such acts are alleged in the Complaint.  Cmplt., *passim*; *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

*Meadors*, 444 S.W.2d 890, 891 (Ky. 1969) ("[T]here is no presumption from the amendment that such is what the statute meant originally. On the contrary, the presumption is that the legislature, by the amendment, intended to change the law.").

In short, at the time of Poppe's abuse in the early 1960s, sexual abuse was not required to be reported under the original version of Kentucky's reporting statute. Because the statute's requirements were not met, there was no tolling of the statute of limitations for Poppe.

        **(c)**      **The 1964 Kentucky Statute Did Not Mandate Reporting by Bishops or Diocesan Personnel**

The 1964 Kentucky statute only mandated reporting by "*[a]ny physician, osteopathic physician, or other person*." 1964 KY. ACTS ch. 85, § 2(1). Under accepted principles of statutory construction, only physicians or other similar persons – and not bishops – had a duty to report under the original version of the Kentucky law.

The rule of *ejusdem generis* yields this result. "Under that rule, when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows." *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008). As explained by the Kentucky Supreme Court:

> The rule of *ejusdem generis* (of the same kind) is that where, in a statute, general words follow . . . a designation of particular . . . classes of persons, the meaning of the general words ordinarily will be presumed to be restricted by the particular designation, and to include only . . . persons of the same kind, class, or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose.

*Steinfeld v. Jefferson Cty. Fiscal Court*, 229 S.W.2d 319, 321 (Ky. 1950); *see also*, *e.g.*, *Robinson v. Ehrler*, 691 S.W.2d 200, 204 (Ky. 1985) (stating that "general words" are "not to be construed in their widest extent, but to be held as applying only to things of the same general kind or class as those specifically mentioned"). Courts have repeatedly applied the rule to precisely the same type of language as that found in the 1964 Kentucky reporting statute. *See*, *e.g.*, *Garcia v. Commonwealth*, 185 S.W.3d 658, 664 (Ky. App. 2006) (relying on *ejusdem generis* to limit term "other nuisance" to include only those similar to that previously designated); *Barren River State Boat Dock, Inc. v. K&R Mfg. Co.*, 167 S.W.3d 676, 679 (Ky. App. 2005) (applying *ejusdem generis* to limit statutory term "other structure" to types of buildings previously enumerated); *Loose Leaf*

*Warehouse v. Howard,* 305 Ky. 500, 504 (Ky. 1947) (applying *ejusdem generis* to limit term "other disposition" to that similar to enumerated term of a "sale"); *Woods v. Simpson*, 46 F.3d 21, 23 (6th Cir. 1995) ("The general term, 'other income,' should be understood in light of the specific terms that surround it."); *United States v. Brown*, 536 F.2d 117, 121 (6th Cir. 1976) (interpreting the statutory term "other data" to be limited to only objects of the same kind as that specifically enumerated); *Assoc. of Bituminous Contractors, Inc. v. Andrus*, 581 F.2d 853, 861 (D.C. Cir. 1978) ("[S]ince the statute employs the general words 'other person,' following the specific words 'owner, lessee,' the words 'other person' are to be read *ejusdem generis* to refer to other persons of the same class as those enumerated by the specific words."); *see also City of Lexington v. Edgerton*, 159 S.W.2d 1015, 1017 (Ky. App. 1941) (stating that the rule of *ejusdem generis* "teaches us that broad and comprehensive expressions in an act such as, 'and all others,' or 'any others,' are usually to be restricted to persons or things of the same kind or class with those specifically named in the preceding words").

There is, moreover, no "clear manifestation of a contrary purpose" in the 1964 Act.  *Cf. Steinfeld*, 229 S.W.2d at 321.  Indeed, all other factors *support* the limitation of the class of reporters to physicians and other similar persons.  First, the law was a criminal statute – where the rule of *ejusdem generis* applies with particular force, and which the court must strictly construe.  *See Krugh*, 503 F.3d at 125 (stating that *ejusdem generis* is "especially applicable to penal statutes"); *see also supra* at 20.   Second, the remainder of the statute supports the limitation to physicians and similar persons.  *See* 1964 KY. ACTS ch. 85, § 1 (purpose clause of the act stating that "*[p]hysicians* who become aware of such cases shall report them to the appropriate police authority"); *see also, e.g.*, *Smith*, 275 F. Supp. 2d at 817 (stating that a statute "should be read and construed as a whole"). Third, the General Assembly repeatedly amended the statute to expand the list of mandatory reporters, until the current version of the statute requires "any person" to require abuse.  *See* 1972 KY. ACTS ch. 232, § 2 (adding "nurse, teacher, school administrator, social worker, coroner [and] medical examiner" to list reporters); 1976 KY. ACTS ch. 142, § 2(2) (adding "child caring personnel, resident, intern, chiropractor, dentist, optometrist, health professional, peace officer, [and] mental health professional" to list of mandatory reporters).  Given the amendments, it should be presumed

that all persons were not required to report under the 1964 Act.  *Brown*, 743 S.W.2d at 24.

Finally, the historical context reveals that physicians were the targets of the first-generation child abuse reporting statutes.  Studies in the early 1960s had demonstrated "that medical doctors and hospital personnel were often reluctant to report cases of suspected child abuse."  Sussman, *Reporting Child Abuse: A Review of the Literature*, 8 FAM. L.Q. 245, 269-70 (1974); *see also* Daly, *supra*, at 288.  Those studies, combined with belief that physicians "alone are qualified to diagnose abuse cases that are hidden from others," led to the designation of physicians alone as mandatory reporters in the first-generation child abuse reporting statutes.  Paulsen, *et al.*, *Child Abuse Reporting Laws – Some Legislative History*, 34 GEO. WASH. L. REV. 482, 485 (1966); Paulsen, *The Legal Framework for Child Protection*, 66 COLUM. L. REV. 679, 711, 713 (1966).

In short, under established principles of statutory construction, only physicians and similar persons were required to report under the 1964 Act.  Given that bishops were not mandatory reporters, there could be no criminal violation of the statute during the 1960s, and the time consequently ran with regard to the statute of limitations applicable to Poppe.

**(d)    The 1964 Kentucky Statute Did Not Mandate Reporting of Abuse by Priests**

Consistent with its origins, the 1964 Kentucky reporting statute was limited to abuse committed "by a parent or other person responsible for his care."  1964 KY. ACTS ch. 85, § 2(1).  Given that priests did not meet that requirement, there could be no violation of the 1964 Act for failing to report abuse by a priest.

Pursuant to the same principles discussed above – including the narrow construction of criminal statutes and the rule of *ejusdem generis* – the term "other person responsible for his care" should be interpreted to mean a person similar to a parent (such as a foster parent or a step-parent).[16]  When the first-generation reporting statutes were enacted, the belief was that "reporting of abuse by persons other than parents or caretakers [was] unnecessary because the parent will protect the child from torts occurring outside the family setting."  Daly, *supra*, at 317; *see also* Meriwether, *supra*,

---

[16] The principle of *noscitur a sociis* also yields this result.  *See, e.g.*, *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1092 (6th Cir. 1981).

at 155 (same).  Moreover, studies had shown that parents were responsible for the vast majority of abuse.  Paulsen, *et al.*, *supra*, at 484.  While this limitation was criticized in the late 1960s,[17] and removed from the Kentucky statute in 1972, the first-generation statutes did not require reporting of abuse "outside the family setting."  Paulsen (1967), *supra*, at 11.

Because abuse by a person outside the family was not required to be reported prior to 1972, the statute of limitations was not tolled under *Secter* for Poppe's claims.

> **b.**     **Plaintiffs Cannot Toll the Statute of Limitations Because There was No Possible Concealment of Any Cause of Action Beyond April 2002**

O'Bryan and Poppe's remaining claims depend on a vicarious liability theory, *i.e.*, on the underlying tortious conduct of the bishop and the putative employment relationship between the bishop and the Holy See.  *See supra* at 4-5.  Given the numerous lawsuits filed against the Archbishop in 2002, and given that Plaintiffs allege that the putative employer-employee relationship between the Holy See and the bishop was known at that time, there can be no tolling for fraudulent concealment of any of the remaining claims.

"[T]he essence of fraudulent concealment requires concealment as well as fraud." *Hazel*, 863 F. Supp. at 439; *see also*, *e.g.*, *Cole v. Kelley*, 438 F. Supp. 129, 138-39 (C.D. Cal. 1977) ("The statute is tolled only for so long as the concealment endures.").  "[C]oncealment sufficient to toll a statute of limitations is concealment of the cause of action itself." *Hazel*, 863 F. Supp. at 439; *see also Dodd v. Dyke Indus., Inc.*, 518 F. Supp. 2d 970, 973 n.5 (W.D. Ky. 2007) ("[I]f no element of liability is concealed, the statute of limitations should not be tolled."); *Knaus v. Great Crossings Baptist Church*, No. 2009-CA-000141-MR, 2010 WL 476046, at *4 (Ky. App. Feb. 12, 2010) (finding no fraudulent concealment where the basis for cause of action "was no longer 'concealed'"); *Cole*, 438 F. Supp. at 138 ("The tolling . . . by fraudulent concealment ends when the plaintiff acquires knowledge . . . that he may have a potential claim.").  Plaintiffs have the burden to allege

---

[17] *See*, *e.g.*, De Francis, *Child Abuse – The Legislative Response*, 44 DENV. L.J. 3, 18 (1967); *see also* Paulsen (1967), *supra*, at 10 ("Physicians and others who are required or encouraged to report ought not to be asked to play detective.  It is certainly beyond a physician's competence to determine who inflicted injuries on a child.").

facts "that would prove their failure to discover the basis for their cause of action." *Noble*, 32 F.3d at 1002.

With regard to the remaining claims – vicarious liability for the tortious conduct of bishops – the Complaint identifies *nothing* to show that such claims were "concealed" from Plaintiffs.  As stated above, at least 193 lawsuits were filed against the Archbishop in 2002.  Req. Jud. Not., at 3; Done Decl., Exh. B; *id.* ¶ 5.  The complaints alleged tortious conduct by the Archbishop with regard to priests, including negligent supervision, negligent hiring, failure to warn and failure to report.  *See*, *e.g.*, Turner State Court Cmplt. ¶¶ 11-12, Done Decl., Exh. A.  Moreover, the Complaint alleges that the supposed "absolute power of the . . . Holy See over its bishops in the United States" – the allegation identified as central to the putative employment relationship (Op., DN 82, at 10) – "was demonstrated *in 2002*."  Cmplt. ¶ 42;[18] *see also Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000) (plaintiffs are "bound by admissions in their pleadings").

The Complaint, in other words, reveals the *antithesis* of concealment of their claims. According to the Complaint, the putative employment relationship was known years before Plaintiffs filed suit.  And according to matters subject to judicial notice – and referred to in the Complaint (Cmplt. ¶ 54) – the putative employee's tortious conduct was known by 2002, two years before Plaintiffs filed their action.  Given that the information underlying Plaintiffs' remaining claims was available to the public in 2002, there could be no tolling thereafter for fraudulent concealment.  *See*, *e.g.*, *Browning v. Levy*, 283 F.3d 761, 770-71 (6th Cir. 2002) (stating that concealment was "not possible, even if it had been attempted," where the information was available to the public); *Campbell*, 676 F.2d at 1127-28 (finding no fraudulent concealment where acts "did not conceal from the plaintiff the means of discovering his cause of action"); *Gomez v. Great Lakes Steel Div.*, 803 F.2d 250, 255 (6th Cir. 1986) ("[T]he essential element in stating a cause for fraudulent concealment is concealment of the existence of the claim, as contrasted with concealment of the evidence

---

[18] Other "employment" allegations in the Complaint – including that the Pope creates dioceses and appoints bishops (Cmplt. ¶¶ 30, 32) – reflect matters long established under canon law. *See* 1983 CODE c.377, § 1 ("The Supreme Pontiff freely appoints bishops or confirms those legitimately elected."); 1983 CODE c.373 ("It is only for the supreme authority to erect particular churches; those legitimately erected possess juridic personality by the law itself.").

necessary to prove such a claim."); *Phillips Petroleum Co. v. Johnson*, 155 F.2d 185, 191 (5th Cir. 1946) ("A concealment which no longer conceals the cause of action will not continue to toll the statute, though the full facts may not yet have been disclosed."); *Hazel*, 863 F. Supp. at 439 n.9 (potential liability not a "secret" where at least a hundred similar lawsuits had previously been filed); *see also Azerot v. Roman Catholic Bishop of Louisville*, No. 2004-CA-000666-MR, 2005 WL 2899483, at *4 (Ky. App. Nov. 4, 2005) ("[T]he entire theory of the case need not be immediately apparent . . . . [A]s soon as [the plaintiffs] became aware of the alleged abuse, they should also have been aware that the [defendants], as the priests' employers, were potentially liable for that abuse."); *cf. Kelly v. Marcantonio*, 187 F.3d 192, 201 (1st Cir. 1999) (no fraudulent concealment where plaintiffs aware of underlying tort and should have been aware that employers could be liable).

> c.   **The Tort Exception's Misrepresentation Exclusion Prohibits Plaintiffs' Attempt to Toll the Statute of Limitations Based Upon Fraudulent Concealment**

The misrepresentation exclusion to the FSIA's tort exception prohibits Plaintiffs' attempt to toll the statute of limitations based upon fraudulent concealment.

The FSIA tort exception's misrepresentation exclusion bars "any claim" against a foreign sovereign "arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 1605(a)(5)(B). Courts interpret the term "arising out of" broadly. *See Metz v. United States*, 788 F.2d 1528, 1533 (11th Cir. 1986), *citing Kosak v. United States*, 465 U.S. 848 (1984) ("[T]he Supreme Court . . . has indicated that the phrase 'arising out of' should be broadly construed."); *see also*, *e.g.*, *Renteria v. United States*, 452 F. Supp. 2d 910, 914 (D. Ariz. 2006) ("The § 2680(h) misrepresentation exception is broadly construed."); *cf. O'Bryan*, 556 F.3d at 385 (courts "generally have looked to the definition of misrepresentation in the FTCA as a guide for defining the term under the FSIA"). "The misrepresentation exclusion covers both acts of affirmative misrepresentation and failure to warn." *Doe v. Holy See*, 557 F.3d 1066, 1084 n.10 (9th Cir. 2009).

As courts have held under the analogous provision of the FTCA, the misrepresentation exclusion bars reliance on a theory of fraudulent concealment to toll the statute of limitations:

> Even if the continued failure of the Government to uncover the report was deliberate, constituting fraud as the plaintiff avers, the concealment did not intermit the limitation's accrual. The Federal Tort Claims Act, in section 2680(h), Title 28,

> U.S.C., reserves to the United States its immunity from suit for deceit. The evident purpose of the exception is to exempt the United States from responsibility for deception on the part of any of its employees, servants or agents. To toll the limitation of the Act by reason of any lack of frankness of the [government employee] here, would be to open the Government to suit because of his deceit . . . . Of course, if the silence of the [employee] amounts to misrepresentation, the claim is not remediable under the Act. 28 U.S.C.A. § 2680(h). The very spirit and intent of these exceptive provisions of the Act are violated if the maintenance of an action is in any degree whatsoever dependent upon the assertion of fraud.

*Kilduff v. United States*, 248 F. Supp. 310, 313-14 (E.D. Va. 1960); *Hammond v. United States*, 388 F. Supp. 928, 934 (E.D.N.Y. 1975) (same); *Richter v. United States*, 551 F.2d 1177 (9th Cir. 1977) (following *Hammond*); *see also Goodman v. United States*, 324 F. Supp. 167, 172 (M.D. Fla. 1971) ("Even if a claim purports to be grounded in theories other than misrepresentation the exception set out in 28 U.S.C. § 2680(h) would bar the action if deceit or misrepresentation were a factor relied upon to maintain a suit."); *cf., e.g., Ball v. Union Carbide Corp.*, 385 F.3d 713, 723-24 (6th Cir. 2004) (considering fraudulent concealment argument involving government-defendants, without analyzing whether such a theory would be barred under the FTCA's misrepresentation exclusion); *Diminnie v. United States*, 728 F.2d 301, 305 (6th Cir. 1984) (same).

There is every reason to apply the misrepresentation exclusion in this case. Plaintiffs' theory, after all, is that an "official legislative text" of the Holy See, a foreign sovereign, constituted "fraudulent concealment" of their claims. Cmplt. ¶ 45. It is problematic, to say the least, for a United States court to hold that "an official legislative text" of a foreign sovereign, approved by the foreign head of state, constituted fraud that tolls the statute of limitations. The FSIA's misrepresentation exclusion exists to preclude such conclusions, and it should be applied to bar Plaintiffs' novel "fraudulent concealment" theory here.

### d. Because the Holy See is Not a "Resident" of Kentucky, Plaintiffs Cannot Rely Upon KRS 413.190(2)'s "Indirect Obstruction" Theory of Fraudulent Concealment

Because the Holy See is not a "resident" of Kentucky, Plaintiffs cannot rely upon KRS section 413.190(2)'s "indirect obstruction" theory of fraudulent concealment.

KRS section 413.190(2) provides for tolling "[w]hen a cause of action mentioned in KRS 413.090 to 413.160 accrues *against a resident of this state*, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action." KRS § 413.190(2).

By its plain terms, and according to established precedent, section 413.190(2) applies only when the defendant is a "resident" of the State of Kentucky. *Skaggs v. Fyffe*, 187 S.W.2d 281, 282 (Ky. 1945); *Sword v. Scott*, 169 S.W.2d 825, 827 (Ky. App. 1943); *Bybee's Ex'r v. Poynter*, 77 S.W. 698, 700 (Ky. App. 1903); *see also*, *e.g.*, *Munday*, 831 S.W.2d at 914 ("Long ago a tolling statute was enacted which provides that *a resident of this State* who . . . 'by any other indirect means obstructs the prosecution of the action' shall not have benefit of the statute of limitation so long as the obstruction continues."); *Doe v. Suroor*, No. 3:05CV-728-H, 2007 WL 1467143, at *1 (W.D. Ky. May 17, 2007) ("Since Defendant is not a resident of Kentucky, the tolling statute cannot apply to him.").

The Kentucky Supreme Court has recognized that "[u]nder some circumstances" the terms of section 413.190(2) "may be more favorable to the injured party than equitable estoppel." *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952). That is particularly true with regard to the statute's tolling for obstruction "by any other indirect means." *Id.* The *Secter* rule – and, in general, the Kentucky rule that silence can be sufficient if the law provides a duty to speak – relies upon the "other indirect means" portion of section 413.190(2). *See Secter*, 966 S.W.2d at 290 (stating that the diocese "clearly obstructed" the plaintiff's cause of action); *Munday*, 831 S.W.2d at 914 (stating that the Kentucky Supreme Court, in case involving failure to disclose, "emphasized the language in KRS 413.190 [of obstruction] 'by any other indirect means'").

The Holy See is a *foreign* sovereign; it is not, by definition, a "resident" of Kentucky. Mem. Op., DN 39, at 3; *see also*, *e.g.*, Cmplt. ¶ 10 (invoking diversity jurisdiction). The fact that the Holy See is not a resident means that only the common law doctrine of fraudulent concealment – and not section 413.190(2) – can be applied. Under the common law doctrine of fraudulent concealment, a defendant must take "active steps to prevent the plaintiff from suing in time . . . ." *EEOC v. Ky. State Police Dept.*, 80 F.3d 1086, 1095 (6th Cir. 1996); *see also*, *e.g.*, *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (fraudulent concealment "focuses primarily on *actions* taken by the defendant to prevent a plaintiff from filing suit"); *Issa v. Provident Funding Group, Inc.*, No. 09-12595, 2010 WL 538298, at *2 (E.D. Mich. Feb. 10, 2010) ("[F]raudulent concealment . . . necessarily entails conduct *affirmatively* directed at deflecting litigation."); *Johnson Controls, Inc. v. Exide Corp.*, 136 F. Supp. 2d 945, 947 (N.D. Ill. 2001) (fraudulent concealment

requires "the active steps of concealment must be directed *at the plaintiff*") (emphasis in original).[19]

The Complaint nowhere alleges that the Holy See took any affirmative steps directed at Plaintiffs and at deflecting litigation.  Absent such allegations against this non-resident, there can be no tolling of the statute of limitations under the common law doctrine of fraudulent concealment.

### e.   O'Bryan and Poppe Do Not Allege the Required Facts Under Rule 9(b) Supporting a Theory of Fraudulent Concealment

O'Bryan and Poppe cannot rely on tolling based upon fraudulent concealment because their allegations do not meet Rule 9(b)'s heightened pleading requirements.

The Federal Rules of Civil Procedure "require that fraudulent concealment be pleaded with particularity." *Herm v. Stafford*, 663 F.2d 669, 683 (6th Cir. 1981); *Dayco Corp.*, 523 F.2d at 394; FED. R. CIV. P. 9(b).  To toll the statute of limitations for fraudulent concealment, Plaintiffs "must allege," *inter alia*, that "defendants concealed the conduct that constitutes the cause of action" and that "defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009).

Plaintiffs' implicit statute of limitations allegation contains none of the particular allegations required by Rule 9(b).  *Cf.* Cmplt. ¶ 51 ("At all times material hereto, the Defendant, Holy See's directives, which, among other things, prohibited the reporting of child sexual abuse to law enforcement authorities, constitute an act or acts of concealment or misleading or obstructive conduct under statutory law, common law, and customary international law.").  The Complaint's *Crimen* allegations do not help, since the Complaint fails to allege with any particularity that *Crimen* was ever used in Kentucky or caused Plaintiffs' injuries. *See* Cmplt. ¶¶ 45 (stating only that *Crimen* was "privately circulated" to persons never identified in the Complaint); ¶¶ 45-46 (alleging that *Crimen* sets forth "procedural norms," yet also alleging that there had not been an "official investigation or prosecution" in Kentucky for "at least" 60 years); ¶ 48 (conclusorily alleging that "[t]he Defendant's directives to conceal the sexual abuse of children committed by its clerics, agents, and employees in order to maximize revenue by avoiding scandal was a substantial factor in bringing

---

[19] By contrast, in *Secter*, the diocese did nothing to actively prevent the plaintiff from filing suit; instead, the diocese failed to comply with Kentucky's reporting requirement, the *indirect* result of which was to prevent plaintiff from discovering that he had a cause of action.

about each Class Member's abuse"); *see also Ball*, 385 F.3d at 724 (plaintiffs "needed to present to this court with sufficient clarity and 'particularity' what they claim was fraudulently concealed by [the defendants] and how that affected their case."); *Adams*, 249 S.W.2d at 792 (action must have "in point of fact" misled or deceived the plaintiff); *Emberton*, 299 S.W.3d at 573 (same); *Adams v. Cooper Indus., Inc.*, No. Civ.A. 03-476-JBC, 2006 WL 897234, at *3 (E.D. Ky. Arp. 4, 2006) ("The defendant's conduct must also have been the reason the plaintiff did not proceed with legal action."); *Hazel*, 863 F. Supp. at 439 ("To constitute fraudulent concealment Defendant's action must have prevented Plaintiff from inquiring into the action, or eluded Plaintiff's investigation, or otherwise mislead the Plaintiff"); *Midland Mgmt. Corp. v. Computer Consoles Inc.*, 837 F. Supp. 886, 888 (N.D. Ill. 1993) ("[T]he fraudulent concealment tolling provision cannot be invoked unless concealment proximately causes a plaintiff to miss the deadline imposed by the otherwise applicable limitations period.")

Plaintiffs also fail to make a critical allegation required under the *Secter* rule – that there was a prior reportable incident with regard to the priests who abused them.  *See, e.g.*, *Knaus*, 2010 WL 476046, at *3 (no tolling where nothing showed that church "had knowledge or reason to believe that [the abuser] had behaved inappropriately with the church's youth or that he had any propensities to sexually abuse the youth"); *McGinnis v. Roman Catholic Diocese of Covington*, No. 2002-CA-001610-MR, 2003 WL 22111094, at *2 (Ky. App. Sept. 12, 2003) (no tolling where "[i]n contrast to the facts in *Secter,* here there is no evidence that the Diocese concealed or had knowledge of abuse of children by [the priest]"); *Floyd v. Roman Catholic Diocese Of Owensboro*, No. 2007-CA-002011-MR, 2008 WL 2550661, at *3 (Ky. App. June 27, 2008) (no tolling under *Secter* where the plaintiff "has not alleged and no evidence supports any claim that the Diocese obstructed the prosecution of this action by concealing other acts of sexual abuse").

In sum, because the Complaint's allegations do not meet the requirements of Rule 9(b) with respect to tolling, the motion to dismiss should be granted.

> **f.     O'Bryan and Poppe Cannot Avail Themselves of the Doctrine of Fraudulent Concealment Because They Did Not Act with Due Diligence as a Matter of Law**

Where a plaintiff invokes the doctrine of fraudulent concealment, he "is always under the

duty to exercise reasonable care and diligence to discover whether he has a viable legal claim, and any fact that should arouse his suspicion is equivalent to actual knowledge of his entire claim." *Anderson*, 616 F. Supp. 2d at 670; *see also*, *e.g.*, *Emberton*, 299 S.W.3d at 575 (statute begins to run when the plaintiff "should have discovered his cause of action by reasonable diligence").

### i. The Complaint Nowhere Alleges Any Facts Showing that O'Bryan and Poppe Acted with Diligence in Filing Suit

Plaintiffs were required to plead due diligence with particularity under Rule 9(b). *See Dayco Corp.*, 523 F.2d at 394 ("If the plaintiff has delayed beyond the limitations period, he must *fully plead the facts and circumstances* surrounding his belated discovery and the delay which has occurred must be shown to be consistent with the requisite diligence."). Because the Complaint is silent as to Plaintiffs' diligence – in stark contrast to Turner's complaint in the Jefferson County Archdiocese Litigation (Turner State Court Cmplt. ¶¶ 3-5, 9, Done Decl., Exh. A) – Plaintiffs cannot avail themselves of the doctrine of fraudulent concealment. *See Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006) (stating that the district court properly dismissed plaintiff's claims where she "failed to plead that she exercised any due diligence"); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1160 (6th Cir. 1991) ("[P]laintiffs have failed to plead their own due diligence with the requisite particularity demanded by Rule 9(b)."); *Dayco Corp.*, 523 F.2d at 394 (dismissing action because the plaintiff "failed to plead its own due diligence with the requisite particularity demanded by Rule 9(b)."); *see also*, *e.g.*, *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("[I]t is not true, when the face of the complaint affirmatively indicates that the time limit for bringing the claim has passed, that plaintiff may escape the statute by saying nothing.").

### ii. In Light of the 193 Cases Filed in the Jefferson Circuit Court Against the Archbishop of Louisville in 2002, O'Bryan and Poppe Did Not Act With Diligence in Failing to File Suit Against the Archbishop's Putative Employer Until More Than a Year Later

This case provides a highly unusual fact pattern. Two years before the filing of the federal lawsuit, at least 193 plaintiffs filed suit in state court against the Archbishop, the putative employee. Given the number of lawsuits in the public domain, and that the facts alleged to support an employment relationship were known at the time (*see supra* at 26), Plaintiffs' failure to file suit until

June 2004 was not due diligence as a matter of law.  *See Dayco Corp.*, 523 F.2d at 394 ("[A]n injured party has a positive duty to use diligence in discovering his cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of his entire claim. Indeed, the means of knowledge are the same thing in effect as knowledge itself."); *Wood v. Carpenter*, 101 U.S. 135, 141 (1879) ("[I]f [a party] he had the means of discovery in his power, he will be held to have known it."); *Gailor v. Alsabi*, 990 S.W.2d 597, 604 (Ky. 1999) (rejecting tolling claim where the facts "could have been readily ascertained by examination of public records"); *Azerot*, 2005 WL 2899483 at *1 (holding, in abuse case involving the Archbishop, that the plaintiff "was still under a legal duty to pursue his cause of action when facts or circumstances gave him, or at least would provide a reasonable person standing in his shoes, notice that a claim may exist"); *Moyers v. Roman Catholic Bishop of Louisville*, No. 2004-CA-001886-MR, 2005 WL 3116116, at *1 (Ky. App. Nov. 23, 2005) ("Because we agree with the circuit court that as a matter of law [plaintiff] should reasonably have known that she had a cause of action over one year prior to the filing of her complaint, we affirm."); *cf. Hazel*, 863 F. Supp. at 440 ("In effect, Plaintiff asks the Court to ignore the fact that he did little, if anything, to pursue his rights.  The Court does not believe that Kentucky courts either should or would jettison this important component of the fraudulent concealment test.").

### iii.   In Light of the Media Attention Surrounding the Louisville Archdiocese Case in Particular and Clergy Sex Abuse in General, O'Bryan and Poppe Did Not Act With Diligence

The period between January 2002 and May 2003 saw widespread media attention regarding the Louisville archdiocese case and the clergy sexual abuse crisis in general.  *See* Req. Jud. Not. at 1, 3-5; Done Decl., Exhs. C-HHHH.  Whether a plaintiff satisfies the due diligence requirement by waiting in the face of intensive media attention is an objective test.  *Hughes*, 215 F.3d at 548; *Moyers*, 2005 WL 3116116, at *5.

Based upon the widespread publicity, Kentucky courts have repeatedly held that plaintiffs who failed to file suit within this period did not meet the diligence requirement demanded by Kentucky law.  *See, e.g., Moyers*, 2005 WL 3116116, at *5 ("Based upon the widespread publicity

Case 3:04-cv-00338-JGH   Document 154-1   Filed 05/17/10   Page 48 of 56

surrounding the abuse scandal and lawsuits, coupled with her claim to have been a victim of abuse, as a matter of law Moyers should reasonably have discovered the facts of the Church's concealment during mid- to late-April 2002. Therefore, her complaint was untimely filed in May 2003."); *Azerot*, 2005 WL 2899483 at *2 (discussing media attention upon Louisville archdiocese cases and regarding "the alleged cover-up engaged in by the Catholic church[,]" and holding that "it would be reasonable to conclude that with an ordinary exercise of due diligence, Mr. Azerot should have filed this action well within the year following April, 2002."); *Francis v. Roman Catholic Bishop of Louisville*, No. 03-CI-004331, slip op. (Nov. 26, 2003), at 3-4 ("[T]he Court finds as a matter of law that [the plaintiff] could have, in the exercise of due diligence, discovered that she had a right to bring suit against the Archdiocese within a year of the widespread publicity occurring throughout the month of April, 2002, concerning the Archdiocese's coverup of sexual abuse by its priests."); *see also Hughes*, 215 F.3d at 548 ("Where events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence."); *Ball*, 385 F.3d at 722 (same).

Given that O'Bryan and Poppe did not file suit against the Holy See until over a year after widespread media attention regarding the tortious conduct of putative Holy See employees in the United States, they failed to comply with the diligence requirement as a matter of law.

> ### iv.    Plaintiffs Cannot Rely on *Crimen* to Show Due Diligence and, In Any Event, Plaintiffs Did Not Act With Diligence Given that They Allege that They Did Not File Suit Until Eleven Months After *Crimen* Was Reported in the Media

Plaintiffs allege that *Crimen* "was first discovered and made public in July, 2003 by news media in the United States." Cmplt. ¶ 45.  Given that Plaintiffs filed suit eleven months later, it appears that Plaintiffs may argue based upon *Crimen* that they exercised due diligence.  Plaintiffs would be wrong.

First, given that only claims based on vicarious liability remain, the relevant inquiry is when Plaintiffs should reasonably have filed suit on a vicarious liability theory.  The answer is well before June 2004.  *See supra* at 25-27.

Second, Plaintiffs never allege with particularity the relationship between *Crimen* and their injuries; indeed, the Complaint's allegations contradict the notion that *Crimen* was ever used in

Kentucky. *See supra* at 30-31.

Third, even assuming *arguendo* that Plaintiffs could overcome the other problems with their reliance on *Crimen*'s alleged discovery and release in July 2003 – including the lack of a mandatory reporting requirement at the time of their alleged abuse (*see supra* at 27-35) – Plaintiffs *still* would not have exercised reasonable diligence by waiting eleven months to file suit. *See Miller*, 481 S.W.2d at 23 (holding that the plaintiff was justified in delaying institution of the cause of action for "a reasonable time"); *Azerot*, 2005 WL 2899483, at *5 ("[I]t would be reasonable to conclude that with an ordinary exercise of due diligence, [the plaintiff] should have filed this action *well within the year*" after discovery of the cause of action.); *Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 445 (S.D.N.Y. 2006) ("Even if plaintiff establishes that he was prevented from bringing a suit by defendant's fraudulent misrepresentation or concealment, he must further demonstrate that he commenced his suit within a reasonable time after the fraud has ceased to be operational."); *Billups v. Kinsella*, No. 08-CV-3365, 2009 WL 4679947, at *4 (N.D. Ill. Dec. 4, 2009) (stating that a plaintiff could not benefit from equitable tolling where she "did not move to amend her complaint . . . as soon as she could, but rather waited almost six months to do so."); *City of E. Chicago v. E. Chicago Second Century, Inc.*, 908 N.E.2d 611, 622 (Ind. 2009) (stating that the doctrine of fraudulent concealment "does not establish a new date for the running of the statute, but rather works an equitable exception. Instead of a full statutory limitation period within which to act, a plaintiff must exercise due diligence in commencing her action after the equitable grounds cease to operate as a valid basis for causing delay.").[20]

### C.    All of Plaintiffs' Claims Fail as a Matter of Law

Plaintiffs' failure to warn, international law, outrage, fiduciary duty and failure to report claims are all subject to dismissal as a matter of law.[21]

---

[20] The eleven-month wait is in stark contrast to the actions of Plaintiffs' counsel in 2002; in the *Turner* case, for example, Plaintiffs' counsel filed suit only days following the release of the information to the public.  Done Decl., Exh. A.

[21] As noted above, Plaintiffs' direct liability, failure to maintain safe premises and misrepresentation/deceit claims have already been dismissed.

1.   **Plaintiffs' Claims Must be Dismissed Because the Complaint Does Not Allege that the Holy See's Putative Employees in the United States Knew or Had Reason to Know of the Priests' Propensities to Commit Sexual Abuse**

Plaintiffs' claims must be dismissed because the Complaint does not allege that the Holy See's putative supervising employees in the United States knew or had reason to know of the priests' propensities to commit sexual abuse.

All of Plaintiffs' remaining claims require that putative Holy See supervising employees in the United States knew or had reason to know of the relevant priests' propensities to commit sexual abuse.  *See O'Bryan*, 556 F.3d at 388 (holding that all of Plaintiffs' remaining claims are "akin to claims of negligent supervision as employees of the Holy See are alleged to have provided inadequate supervision over those under its care"); *McDonald's Corp. v. Ogborn*, — S.W.3d —, 2009 WL 3877533, at *11 (Ky. App. Nov. 20, 2009) ("[A]n employer may be held liable for negligent supervision only if he or she knew or had reason to know of the risk that the employment created."); *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (same); *Buckminster v. Arnold*, No. 3:08CV-131-H, 2008 WL 2168882, at *2 (W.D. Ky. May 23, 2008) (stating that to sustain a negligent supervision claim a "plaintiff must first allege either direct or inferential allegations that the employer knew or should have known of the danger that employment created"); *Rufra v. U.S. Bancorp, Inc.*, No. 3:05CV-594-H, 2006 WL 2178278, at *7 (W.D. Ky. July 28, 2006) ("An employer may be held liable for negligent supervision and training only if he or she knew or had reason to know of the risk that the employment created."); *see also* Cmplt. ¶ 70 (alleging violation of international law for "prohibiting the disclosure of the identity and existence of pedophiles and sexual predators under [the Holy See's] control"); ¶ 75(a)-(b) (alleging negligent violation of duty to warn and report regarding "known pedophiles, sexual predators and perpetrators of childhood sexual abuse"); ¶ 80(a)-(b) (alleging breach of fiduciary duty for failing to warn and report regarding "known pedophiles, sexual predators and perpetrators of childhood sexual abuse"); ¶ 82 (alleging tort of outrage based on failure to disclose policy of concealment, "thereby placing children in a position of peril").

Courts have repeatedly held that claims are subject to dismissal if such knowledge is not

affirmatively alleged in a complaint. *See*, *e.g.*, *Booker*, 350 F.3d at 517 (affirming dismissal of negligent supervision claim where complaint "failed to allege that [the defendant] knew or should have known that the employee . . . would act as he or she did" and holding that while the complaint alleged that the defendant "had a duty to supervise its employees and that it failed to satisfy this duty, this Court is not bound to accept bare legal conclusions unsupported by factual allegations"); *Buckminster*, 2008 WL 2168882, at *2 (dismissing claim where the plaintiff "makes no allegations whatsoever concerning whether [the tortfeasor's] actions were at all foreseeable to [the defendant]"); *Rufra*, 2006 WL 2178278, at *7 (dismissing claims where the complaint "fail[ed] to allege that the [defendant] knew or should have known" regarding danger posed law enforcement personnel); *Osborne*, 31 S.W.3d at 915 (no negligence claim against diocese where plaintiff "failed to present any evidence in the record that [the priest] had a history of sexual misconduct involving parishioners or that the diocese had any knowledge that [the priest] might conceivably engage in such misconduct"); *cf. Iqbal*, 129 S. Ct. at 1949 (complaint is not sufficient "if it tenders naked assertion[s] devoid of further factual enhancement" and that the factual content pled must allow a court to draw the "reasonable inference that  the defendant is liable for the misconduct alleged").

The Complaint alleges no facts demonstrating that the Holy See's putative employees knew or had reason to know of the dangers posed by the priests who abused O'Bryan, Poppe and Turner. Cmplt., *passim*.  In the absence of such allegations, Plaintiffs' remaining claims are insufficient as a matter of law.

### 2.     Plaintiffs' International Law Claims Fail as a Matter of Law Because Neither the Universal Declaration of Human Rights nor the Convention on the Rights of the Child Creates a Private Right of Action

Plaintiffs base their international law claims on the Universal Declaration of Human Rights ("UDHR") and the Convention on the Rights of the Child ("CRC").  Cmplt. ¶¶ 71-73, 104-06. However, as the Supreme Court has recently held, the UDHR "does not of its own force impose obligations as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004); *see also*, *e.g.*, *Aslani v. Sparrow Health Sys.*, No. 1:08-cv-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (dismissing UDHR claim under Rule 12(b)(6) because it creates no legal rights

for individuals).[22]  As for the CRC, it does not have the force of domestic law, and likewise creates no rights enforceable by individuals in United States courts either as a treaty or as customary international law.  *Payne-Barahona v. Gonzales*, 474 F.3d 1, 4 (1st Cir. 2007); *Cisneros v. Aragon*, 485 F.3d 1226, 1231 (10th Cir. 2007) (holding that the CRC fails to describe customary international law sufficient to create a private right of action under the Alien Tort Statute), quoting *Sosa*, 542 U.S. at 725; *see also Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 258-59 (2d Cir. 2003) (holding that CRC "is extremely vague, clearly aspirational in nature, and does not even purport to reflect the actual customs and practices of States"); *see also Renkel v. United States*, 456 F.3d 640, 643 (6th Cir. 2006) ("[C]ourts *presume* that the rights created by an international treaty belong to a state and that a private individual cannot enforce them.") (emphasis in original).

### 3. Plaintiffs Have Abandoned Their Outrage Claim, Which, in Any Event, Fails as a Matter of Law

Plaintiffs' outrage claim should be dismissed because, as the Sixth Circuit noted, it has been expressly abandoned by Plaintiffs.  *See* Pltfs' Resp. to HS Rule 12(b)(1) Mtn. to Dismiss, DN 61, at 6 n.9 ("The Plaintiffs' complaint also identifies claims for intentional infliction of emotional distress. . . . The Plaintiffs are no longer pursuing those claims."); *O'Bryan*, 556 F.3d at 388 n.14. Moreover – and as Plaintiffs' counsel no doubt recognized when they abandoned the claims – the outrage claims are subject to dismissal as a matter of Kentucky law.  *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993) ("[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie."); *see also Cissell v. KFC Corp.*, No. 2006-CA-001596-MR, 2007 WL 3227571, at *2 (Ky. App. Nov. 2, 2007).

### 4. Plaintiffs' Failure to Report Claim Fails

Plaintiffs' negligent failure to report claim appears to be based on a negligence *per se* theory.

---

[22] Notably, the UDHR is not even a treaty.  *See* 19 DEP'T ST. BULL., 751 (1948) (UDHR "is not a treaty; it is not an international agreement.  It is not and does not purport to be a statement of law or of legal obligation.") (remarks of U.S. representative to U.N. General Assembly).

Cmplt. ¶¶ 75(c), 108(c).[23] Negligence *per se* "is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran*, 289 S.W.3d 586, 588-89 (Ky. App. 2008); *see also* KRS § 446.070.  "It applies only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99-100 (Ky. 2000).  Moreover, a plaintiff's injury must "be proximately caused by the violation of the statute." *Ky. Laborers Dist. Health & Welfare Trust v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 773 n.9 (W.D. Ky. 1998); *see Hargis v. Baize*, 168 S.W.3d 36, 46 (Ky. 2005) ("The violation of a statute does not necessarily create liability. The statute must have been specifically intended to prevent the type of occurrence that took place, and the violation must have been a substantial factor in causing the result.").

Plaintiffs' claim meets none of these requirements.  First, there is no indication that the Archbishop violated any reporting requirement.  *See supra* at 36-37 (no allegation of Archbishop's prior knowledge of any sexual abuse); *see also supra* at 17-25 (with regard to O'Bryan and Poppe, no statutory duty by Archbishop to report sexual abuse by priest during relevant period).

Second, at the time in question, the Kentucky reporting statute provided protection only to children who had already been abused and who faced further harm; it did not have a broader intent to protect future potential victims.  *See* 1964 Ky. Acts ch. 85(1) ("The purpose of this Act is to provide for the protection of children who *have had* physical injury inflicted upon them and who are *further* threatened by the conduct of those responsible for their care."); 1972 Ky. Acts ch. 232(1) (same).

Third, Plaintiffs do not meet the proximate causation requirement.  A "reporting statute by definition places a *fourth* party between the defendant and the plaintiff: the person or agency to whom the defendant is required to make the report." *Perry v. S.N.*, 973 S.W.2d 301, 309 (Tex. 1998)

---

[23] The Complaint nowhere alleges that the Kentucky reporting statute itself created a private right of action. Cmplt., *passim*.  Any such reading of the relevant Kentucky statutes would be, in any event, untenable.  *See* 1964 Ky. Acts ch. 85; 1972 Ky. Acts ch. 232; *see also, e.g.*,  *Fischer v. Metcalf*, 543 So.2d 785 (Fla. Dist. Ct. App. 1989) (finding no cause of action under similar Florida reporting statute); *Kansas State Bank & Tr. Co. v. Specialized Transp. Serv., Inc.*, 819 P.2d 587 (Kan. 1991) (no cause of action under Kansas reporting statute); *Marquay v. Eno*, 662 A.2d 272, 278 (N.H. 1995) (finding no cause of action under New Hampshire reporting statute).

(emphasis in original).  As a result, causation is "significantly more attenuated" than it is with regard to other statutory violations for which negligence *per se* is imposed.  *Id.*; *see also*, *e.g.*, *Arbaugh v. Bd. of Educ.*, 591 S.E.2d 235, 240 (W. Va. 2003) (no private cause of action for non-reporting "since substantial questions of causation are raised and the failure to report would not in the direct sense be a proximate cause of the injury to the child"); *Borne v. N.W. Allen County Sch. Corp.*, 532 N.E.2d 1196, 1203 (Ind. App. 1989) (same).

Because Plaintiffs' claims for failure to report fail to meet any of the requirements for negligence *per se*, they should be dismissed.

### 5.     Plaintiffs' Fiduciary Duty Claims Fail as a Matter of Law

Plaintiffs' fiduciary duty claims fail for two reasons.

First, as a matter of Kentucky law, the bishops or other supervising clergy did not owe a fiduciary duty to Plaintiffs.  *See Arlinghaus v. Gallenstein*, 115 S.W.3d 351, 353 (Ky. App. 2003) (holding that "the relationship between parishioner and clergyman is essentially religious; its duties are not those of the civil law"); *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1062 (N.D. Iowa 1999) (no fiduciary duty alleged where no direct prior relationship between bishop and parishioner); *see also Combs*, 354 F.3d at 578 (federal courts "should be extremely cautious about adopting 'substantive innovation' in state law").

Second, there is no allegation of prior knowledge that the priests in question posed a danger to children.  *See supra* at 36-37.  Absent such an allegation, Plaintiffs have failed to state a claim for breach of fiduciary duty.  Cmplt. ¶¶ 80(a)-(b), 113(a)-(b) (fiduciary duty claims based upon failure to warn and report); *cf. Doe v. Brouillette*, 906 N.E.2d 105, 123 (Ill. App. 2009) (no breach of fiduciary duty where plaintiff failed to allege prior knowledge of cleric's sexual propensities).

## VII.   CONCLUSION

Based upon the foregoing, the Complaint must be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

LAW OFFICE OF JEFFREY S. LENA
Jeffrey S. Lena

_____/s/ Jeffrey S. Lena_____
1152 Keith Avenue
Berkeley, California 94708
(510) 665-1713


LAW OFFICE OF ALEXIS HALLER
Alexis Haller

_____/s/ Alexis Haller_____
1079 Euclid Avenue
Berkeley, California 94708
(510) 898-1210


LAW OFFICE OF BYRON H. DONE
Byron H. Done

_____/s/ Byron H. Done_____
1990 N. California Blvd., 8th Floor
Walnut Creek, CA 94597
(925) 932-7009


FULTZ, MADDOX, HOVIOUS & DICKENS PLC
R. Gregg Hovious
John David Dyche

_____/s/ R. Gregg Hovious_____
2700 National City Tower
101 S. Fifth Street
Louisville, Kentucky 40202
(502) 588-2000

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served in compliance with the ECF guidelines of this Court on May 17, 2010, upon: William F. McMurry, McMurry & Associates, 1211 Herr Lane, Suite 205, Louisville , KY 40222; and Douglas H. Morris and Lea A. Player, Morris & Player, PLLC, 1211 Herr Lane, Suite 205, Louisville , KY 40222.

_____/s/ Alexis Haller_____
Alexis Haller